UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
CHALAMO KAIKOV,

                                      Plaintiff,

                 -against-

ARIHAY KAIKOV, DUSTIN BOWMAN, SHIRYAK,
BOWMAN, ANDERSON, GILL & KADOCHNIKOV
LLP, PACIFIC 2340 CORP., ROYAL A&K REALTY
GROUP INC., A&E.R.E. MANAGEMENT CORP., NY
PRIME HOLDING LLC, AG REALTY BRONX
CORP., JOHN and JANE DOE 1-19, and XYZ
CORPORATION 1-10,

                                      Defendants.
------------------------------------------------------------------ X

Docket No.: 19-CV-2521

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS ARIHAY KAIKOV, PACIFIC 2340 CORP., ROYAL A&K REALTY GROUP INC., A&E.R.E. MANAGEMENT CORP., NY PRIME HOLDING LLC, AND AG REALTY BRONX CORP.'S MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(B)(6) AND 9(B)

**THE RUSSELL FRIEDMAN LAW GROUP, LLP**
3000 Marcus Avenue, Suite 2E03
Lake Success, New York 11042
Tel.: 516.355.9696
Fax: 516.355.9697

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................i

PRELIMINARY STATEMENT ..........................................................................................1

STATEMENT OF FACTS ...................................................................................................2

STANDARD OF REVIEW...................................................................................................8

I.    MOTION TO DISMISS.............................................................................................8

II.   RICO..........................................................................................................................9

ARGUMENT.......................................................................................................................10

I.    PLAINTIFF'S COMPLAINT MUST BE DISMISSED AS THE
      ALLEGED CONTRACT IS IN DIRECT VIOLATION OF
      NEW YORK STATE'S STATUTE OF FRAUDS...............................................10

II.   PLAINTIFF'S RICO CLAIMS ARE TIME-BARRED......................................11

III.  PLAINTIFF'S CLAIMS FOR RELIEF PURSUANT TO
      18 U.S.C. 1962(a)-(d) MUST BE DISMISSED FOR
      LACK OF STANDING............................................................................................12

IV.   PLAINTIFF'S CLAIMS FOR RELIEF PURSUAN TO
      18 U.S.C. 1962(a)- (d) MUST BE DISMISSED FOR
      LACK OF SPECIFICITY........................................................................................13

V.    PLAINTIFF'S RICO ACTIONS MUST BE DISMISSED
      SINCE PLAINTIFF HAS FAILED TO PLEAD CONTINUITY............................14

VI.   PLAINTIFF'S CLAM FOR RELIEF PURSUANT TO 18 U.S.C. 1962(a)
      FAILS TO STATE A CAUSE OF ACTION...........................................................16

VII.  PLAINTIFF'S CLAM FOR RELIEF PURSUANT TO
      18 U.S.C. 1962(b) FAILS TO STATE A CAUSE OF ACTION............................16

VIII. PLAINTIFF'S CLAM FOR RELIEF PURSUANT TO
      18 U.S.C. 1962(c) FAILS TO STATE A CAUSE OF ACTION............................17

      A.  Conduct and Enterprise.................................................................................18

      B.  Pattern.............................................................................................................20

C.  Racketeering Activity ................................................................................ 21

IX.   PLAINTIFF'S CLAM FOR RELIEF PURSUANT TO
18 U.S.C. 1962(d) FAILS TO STATE A CAUSE OF ACTION ................................ 22

X.   PLAINTIFF'S CLAIM FOR RELIEF BASED ON COMMON
LAW FRAUD FAILS AS A MATTER OF LAW ......................................... 23

XI.   PLAINTIFF'S STATE LAW CLAIMS FAIL TO
STATE A CAUSE OF ACTION ......................................................... 24

CONCLUSION ................................................................................................. 26

# TABLE OF AUTHORITIES

**Cases**

*4 K & D Corp. v. Concierge Auctions, LLC*,
    2 F.Supp.3d 525 (S.D.N.Y. Mar. 10, 2014) ............................................................19

*Abbott Labs. v. Adelphia Supply USA*,
    No. 15CV5826CBALB, 2017 WL 57802, at *9 (E.D.N.Y. Jan. 4, 2017)..................22

*Albright v. Oliver*,
    510 U.S. 266 (1994)..................................................................................................8

*Anatian v. Coutts Bank (Switz.) Ltd.*,
    193 F.3d 85 (2d Cir. 1999)........................................................................................9

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ......................................8, 9

*Baisch v. Gallina*,
    346 F.3d 366 (2d Cir. 2003)....................................................................................22

*Bankers Trust Co. v. Rhoades*,
    859 F.2d 1096 (2d Cir.1988)...................................................................................11

*Bascunan v. Daniel Yarur ELS Amended ComplaintA*,
    2016 WL 5475998, at *4–6 (S.D.N.Y. Sept. 28, 2016).........................................13

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ......................................8, 9

*Billard v. Rockwell Int'l Corp.*,
    683 F.2d 51 (2d Cir. 1982).........................................................................................9

*Boccardi Capital Sys., Inc. v. D.E. Shaw Laminar Portfolios, L.L.C.*,
    No. 05-cv-6882 (GBD), 2009 WL 362118, at *7 (S.D.N.Y. Feb. 9, 2009)............24

*Breslin Realty Dev. Corp. v. Schackner*,
    397 F. Supp. 2d 390 (E.D.N.Y. 2005) ....................................................................17

*Burnette v. Carothers*,
    192 F.3d 52 (2d Cir. 1999)........................................................................................8

*Castellotti v. Free*,
    138 A.D.3d 198, 27 N.Y.S.3d 507 (1ˢᵗ Dep't 2016) ..............................................24

*Citadel Mgmt., Inc. v. Telesis Tr., Inc.*,
    123 F.Supp.2d 133 (S.D.N.Y. 2000).......................................................................25

*City of Almaty, Kazakhstan v. Ablyazov*,
    226 F. Supp. 3d 272 (S.D.N.Y. 2016).....................................................................13

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*,
    187 F.3d 229 (2d Cir. 1999)..............................................................................20, 23

*Corsello v. Verizon N.Y., Inc.*,
    18 N.Y.3d 777, 790, 944 N.Y.S.2d 732, 967 N.E.2d 1177 (2012) .........................25

*D. Penguin Bros. v. City Nat. Bank*,
    587 F. App'x 663 (2d Cir. 2014) ......................................................................13, 21

*DeFalco v. Bernas*,
    244 F.3d 286 (2d Cir. 2001)....................................................................................18

*DeMuro v. E.F. Hutton*,
    643 F.Supp. 63 (S.D.N.Y.1986)..............................................................................16

*Deutsche Zentral–Genossenchaftsbank AG v. HSBC N. Am. Holdings, Inc.*,
 2013 WL 6667601, at *5 (S.D.N.Y. Dec. 17, 2013)...................................................................13
*DLJ Mortg. Capital, Inc. v. Kontogiannis*,
 726 F. Supp. 2d 225 (E.D.N.Y. 2010) .......................................................................................10
*Discon, Inc.v. NYNEX Corp.*,
 93 F.3d 1055 (2d Cir.1996)........................................................................................................17
*DiVittorio v. Equidyne Extractive Indus., Inc.*,
 822 F.2d 1242 (2d Cir.1987).....................................................................................................21
*EBC I, Inc. v. Goldman Sachs & Co.*,
 5 N.Y.3d 11 (N.Y. 2005) ...........................................................................................................24
*Eurycleia Partners, LP v. Seward & Kissel, LLP*,
 12 N.Y.3d 553 (2009)................................................................................................................23
*Facebook, Inc. v. DLA Piper LLP (US)*,
 134 A.D.3d 610 (1st Dept. 2015)...............................................................................................24
*Figueroa Ruiz v. Alegria*,
 896 F.2d 645 (1st Cir.1990).......................................................................................................10
*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
 385 F.3d 159 (2d Cir. 2004).........................................................................................18, 21, 22
*Flexborrow LLC v. TD Auto Fin. LLC*,
 255 F. Supp. 3d 406 (E.D.N.Y. 2017) .........................................................................14, 15, 25
*GICC Capital Corp. v. Tech. Fin. Grp., Inc.*,
 67 F.3d 463 (2d Cir. 1995).........................................................................................................15
*Guptill Holding Corp. v. State*,
 33 A.D.2d 362, 307 N.Y.S.2d 970 (3d Dept. 1970) ..................................................................25
*Hecht v. Commerce Clearing House, Inc.*,
 897 F.2d 21 (2d Cir. 1990).........................................................................................................23
*H.J. Inc. v. Northwestern Bell Tel. Co.*,
 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) .....................................................15, 21
*Hollingsworth v. Perry*,
 570 U.S. 693 (2013) ...................................................................................................................12
*In re Chateaugay Corp.*,
 10 F.3d 944 (2d Cir. 1993).........................................................................................................25
*In re First Central Financial Corporation*,
 377 F.3d 209 (2d Cir.2004)...................................................................................................24, 25
*Karmel v. Claiborne, Inc.*,
 No. 99-CV-3608 (WK), 2002 WL 1561126, at *4 (S.D.N.Y. July 15, 2002)..........................25
*Katzman v. Victoria's Secret Catalogue*,
 167 F.R.D. 649 (S.D.N.Y. 1996)..................................................................................9, 10, 16, 19
*Katzman v. Victoria's Secret Catalogue, Div. of The Ltd., Inc.*,
 113 F.3d 1229 (2d Cir. 1997).....................................................................................................19
*Kim v. Kimm*,
 884 F.3d 98 (2d Cir. 2018).................................................................................................10, 16
*Koch v. Christie's Int'l PLC*,
 785 F. Supp. 2d 105 (S.D.N.Y. 2011) ........................................................................................11
*Krys v. Butt*,
 486 F. App'x 153 (2d Cir. 2012) ...............................................................................................24

*Lynch v. Amoruso,*
  232 F.Supp.3d 460, 2017 WL 543232, at *6 (S.D.N.Y. Feb. 8, 2017)......................................14
*Mathon v. Marine Midland Bank, N.A.,*
  875 F. Supp. 986 (E.D.N.Y. 1995) ........................................................................................10
*McLaughlin v. Anderson,*
  962 F.2d 187  (2d Cir. 1992)................................................................................................13
*Messner Vetere Berger McNamee Scmetterer EURO RSCG Inc. v. Aegis Grp. PLC,*
  974 F. Supp. 270 (S.D.N.Y. 1997)...................................................................................10, 11
*Miranda v. Ponce Fed. Bank,*
  948 F.2d 41 (1st Cir.1991) ..................................................................................................10
*Morrow v. Black,*
  742 F. Supp. 1199 (E.D.N.Y. 1990) ......................................................................................9
*Nasik Breeding & Research Farm 175 Ltd. v. Merck & Co.,*
  165 F.Supp.2d 514 (S.D.N.Y.2001)......................................................................................19
*Ozbakir v. Scotti,*
  764 F.Supp.2d 556 (W.D.N.Y. 2011) ....................................................................................14
*Reves v. Ernst & Young,*
  507 U.S. 170, 113 S. Ct. 1163, 122 L. Ed. 2d 525 (1993) ..................................................18, 20
*Riverwoods Chappaqua Corp. v. Marine Midland Bank,*
  30 F.3d 339 (2d Cir.1994).................................................................................................19
*Rotella v. Wood,*
  528 U.S. 549, 120 S. Ct. 1075, 145 L. Ed. 2d 1047 (2000) ......................................................11
*Schmidt v. Fleet Bank,*
  16 F. Supp. 2d 340 (S.D.N.Y. 1998)......................................................................................10
*Sedima, S.P.R.L. v. Imrex Co.,*
  473 U.S. 479, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985) ....................................................17, 18
*Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.,*
  17 F. Supp. 3d 207 (E.D.N.Y. 2014) (Bianco, J.).........................................................9, 20, 23
*Solomatina v. Mikelic,*
  370 F. Supp. 3d 420 (S.D.N.Y. 2019)...............................................................................11, 24
*Spool v. World Child Int'l Adoption Agency,*
  520 F.3d 178 (2d Cir. 2008)................................................................................................14
*Sykes v. Mel Harris & Assocs., LLC,*
  757 F. Supp. 2d 413 (S.D.N.Y. 2010)....................................................................................20
*Three Crown Ltd. Partnership v. Caxton Corp.,*
  817 F. Supp. 1033 (S.D.N.Y.1993)........................................................................................19
*United States v. Coonan,*
  938 F.2d 1553 (2d Cir.1991).................................................................................................19
*United States v. Turkette,*
  452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981) ............................................................18
*Viacom Int'l, Inc. v. Kearney,*
  212 F.3d 721, 725 (2d Cir. 2000).............................................................................................6
*Vista Co. v. Columbia Pictures Indus., Inc.,*
  725 F.Supp. 1286 (S.D.N.Y.1989)..........................................................................................16
*World Wrestling Entertainment, Inc. v. Jakks Pacific, Inc.*
  328 Fed.Appx. 695 (2d Cir.2009) ..........................................................................................11

*Wynn v. AC Rochester*,
   273 F.3d 153 (2d Cir. 2001)................................................................................23

**Statutes**

18 U.S.C. § 1962 ............................................................................ *passim*
18 U.S.C. § 1961 ............................................................................ *passim*
FRCP § 12....................................................................................... *passim*
FRCP § 9......................................................................................... *passim*
N.Y. Gen. Obligations Law § 5–703 ..........................................................11

## PRELIMINARY STATEMENT

The instant matter is before the Court on the Defendants' motion to dismiss the Plaintiff's Complaint for failure to state a claim, pursuant to FRCP 12(b)(6) and FRCP 9(b), as against Defendants Arihay Kaikov (hereinafter "Arihay"), Pacific 2340 Corp. (hereinafter "Pacific 2340"), Royal A&K Realty Group, Inc. (hereinafter "Royal A&K), A&E.R.E. Management Corp. (hereinafter "A&E.R.E"), NY Prime Holding, LLC (hereinafter "NY Prime"), and AG Realty Bronx Corp. (hereinafter "AG Realty") (collectively the "Moving Defendants").[1]  Specifically, as against the Moving Defendants, the Complaint alleges a RICO enterprise dealing with the buying and selling of real estate and sweeping allegations of conspiracy and fraud to substantiate same as well as pendent state claims premised on the same facts.

The Complaint is fatally flawed in a myriad of ways.  As a threshold issue, the Plaintiff alleges that his damages stem from the proceeds of the sale of real property for which he admittedly had no written contract. In addition, the Complaint fails to plead with specificity details of the alleged real estate purchases, which he readily admits he had never discussed with any of the Defendants. Further, Plaintiff claims that the proceeds of the aforementioned real estate transactions were to be deposited in 911 Realty, Corp. (hereinafter "911 Realty"), a company that Plaintiff did not own.

Notwithstanding, the Complaint is also inadequately pled, let alone with the requisite specificity for allegations of fraud. A notable example is the obtuse description of Plaintiff's damages.  Specifically, Plaintiff claims he contributed $300,000 in capital funds.  However, the Complaint assigns damages in the amount of $2 million, without providing any facts for same. Further, the Complaint is replete with allegations which are not actionable by the Plaintiff.  By way of example, Plaintiff seeks damages

---

[1] All of the Causes of Action in the Complaint are asserted against one or more of the Moving Defendants, sans Count X, which is solely asserted against the law firm of Shiryak Bowman, Anderson, Gil & Kadochnikov, LLP ("SBAGK") and, as such, shall not be addressed herein.

CH/D203541/FL2552

stemming from capital contributions paid by a third party.  Plaintiff also attempts substantiate claims based on allegations of events, which on their face bear no relation to any of the causes of action.

Finally, the RICO causes of actions are time-barred. According to the Complaint, as of April 29, 2014, the Plaintiff no longer trusted Defendant(s) and demanded a "formal relationship be made."  As such, it is beyond dispute that as of the filing of the instant Complaint on April 29, 2019, over five years had passed since Plaintiff could claim he "justifiable relied" on any representation of any of the Defendants.  As such, it is respectfully submitted that the Complaint is deficiently pled and begs for dismissal in its entirety.

**STATEMENT OF FACTS**

Joint Venture Agreement

According to the Complaint, it is the Plaintiff's contention that he individually entered into a "joint venture" with Defendant, Arihay "to purchase real estate properties in foreclosure, renovate them, and clear titles with the intent to resell the properties for profit." (Complaint ¶3) According to the Complaint, this "joint real estate venture" began in December 2012 with an initial investment of $100,000. (Complaint ¶35) Specifically, it is alleged that "(t)he parties entered into a verbal agreement wherein Arihay would also contribute 50% of monetary capital to the joint venture; will find investment properties in foreclosure for renovation; and will manage the venture." (Complaint ¶36) The Complaint acknowledges that there was no writing between the parties herein that memorialized any aspect of the "joint real estate venture" or which set forth a single term or understanding relating to same.[2]

Within the Complaint the Plaintiff alleges that in addition to the initial $100,000 contribution into the "joint real estate venture" in December 2012, he made a subsequent $200,000 capital contribution to the venture in October 2013. (Complaint ¶41) However, Plaintiff admits that at the time of both of these capital contributions, that there was no discussion between the parties which specifically

---

[2] *See* Complaint, generally

identified a single piece of real estate that would be purchased with his capital contributions. (Complaint ¶41)

As early as April 2014 Plaintiff claimed that he "no longer felt comfortable to operate on a verbal promise and have corporate Defendants formally own the properties, so he requested that some formal relationship be made." (Complaint ¶47) To address this discomfort, it is alleged by the Plaintiff that:

> The parties decided to form a joint corporation 911 Realty Corp., ("911 Realty") where Chalamo and Arihay would be de facto 50-50 % owners, Chalamo's son Khanan would hold a position of President, and which would hold the tiles and/or deeds for the invested properties and account for joint expenses. (Complaint ¶49)

Notwithstanding the Complaint's assertion that Plaintiff desired "some formal relationship be made; the Complaint does not allege—nor could it—that the terms of this "joint real estate venture" were ever memorialized in writing. Further, in this regard, the Complaint does not identify the "invested properties" which 911 Realty was to hold title. Finally, as noted above, the only assertion of the Plaintiff as to his ownership in 911 Realty is that it was understood that Plaintiff would have a "de facto" partial ownership interest. (Complaint ¶49) The Complaint is devoid of any allegation that Plaintiff had any actual ownership in 911 Realty.

The Complaint goes on to state that for two years after the formation of 911 Realty, Defendant Arihay refused to transfer any deeds from the Investment Properties to 911 Realty. (Complaint ¶47) Noticeably, the Complaint does not deign to provide any elucidation as to which "Investment Properties" Plaintiff is claiming were supposed to be transferred to 911 Realty as of 2016.  Thereafter, the Complaint cites a meeting between Plaintiff and Defendant, Arihay, which is alleged to have taken place in November of 2016. (Complaint ¶52) According to the Plaintiff, it was at this meeting in November of 2016, that Arihay identified previously purchased properties, which according to the Plaintiff, Arihay agreed to transfer into 911 Realty. (Complaint ¶57)  Once again, the Plaintiff does not claim—nor could he—that there is any writing to support the allegation that Arihay provided any written list. Rather,

CH/D203541/FL2552

Plaintiff claims that family members of his took notes of this meeting. (Complaint ¶55) Further, Plaintiff claims there are text messages which identify addresses of the subject properties. (Complaint ¶56) Neither these "notes" nor texts are cited directly or annexed to the Complaint.[3] The Complaint goes on to assert that "(t)he parties again agreed that all titles and/or deeds for the invested properties would be transferred to 911 Realty for joint ownership," a company, to which by Plaintiff's own admission, he had no actual ownership. (Complaint ¶¶49 and 57)

The Plaintiff thereafter alleges Defendant, "Arihay, subsequently only transferred deeds to two (2) properties, but failed to transfer the deeds to other eight (8) properties to the 911 Realty, in violation of the agreement." (Complaint ¶59) Nowhere in the Complaint does the Plaintiff identify the addresses of the two deeds which are alleged to have been transferred to 911 Realty, an entity Plaintiff did not own any portion of, nor the other eight properties which were not transferred.  The only fact that is clear from the Complaint is that all of the ten properties listed in paragraph 54 of the Complaint were "purchased by Arihay" prior to the alleged November 2016 meeting between the parties. (Complaint ¶53)

Notwithstanding Plaintiff's assertion that ten properties, which he claims were supposed to have been transferred to 911 Realty, the portion of the Complaint entitled "The Frauds" lists only five properties for which the Plaintiff claims he provided funds for the purchases "pursuant to the joint venture agreement."[4] The Complaint is devoid of any details as to the Plaintiff's alleged capital contribution for the other five properties articulated in paragraph 54 of the Complaint.[5]  In addition to the omission of five of the ten properties to which the Plaintiff asserts some rights, it should be noted that the Complaint utilized obtuse verbiage as it pertains to the alleged details of each property that actually are identified in the body of the Complaint.

---

[3] *See* Complaint, generally
[4] Complaint ¶¶60-108
[5] There is not information aside from the conclusory claim of partial ownership for 567 Jerome Avenue Brooklyn, NY 11207, 317 East 31st Street Brooklyn NY 11226, 188-36 220th Street Jamaica NY 11411, 280 West 127th Street, NY, NY 10027, 905 Mother Gaston Boulevard, Brooklyn, NY 11212

CH/D203541/FL2552

As to 406 East 94th Street, while claiming it was sold "with the knowledge and consent of the Plaintiff," Plaintiff alleges that Defendant, "Arihay failed to pay Plaintiff his full share of profit on the 406 East 94th Street Property." (Complaint ¶117)  The Complaint does not articulate what his share of the profits were, especially after expenses and other costs were factored in.

<u>Allegations of Threats by Defendant Arihay</u>

The Complaint alleges that the Plaintiff "confronted Arihay regarding transferring the property titles to the 911 Realty." (Complaint ¶109) To which properties the Plaintiff is referring is undefined in the Complaint.  According to the Complaint, during this confrontation, Arihay, threatened Plaintiff. Specifically, Plaintiff first cites an alleged conditional threat made by Arihay via text message (not provided for context).  Specifically, the Complaint in this regard reads as follows:

> If there is one more attempt to harm me I will get so scared that I will f* you up!
> Or will bar you entry to the USA. Or your eagles will be held up by my men. If
> my accounts are not unfrozen by Monday, then on Tuesday you will have to wire
> me $1,000,000. So prey to God that doesn't happen…(Complaint ¶111)

In sum, it is alleged that if Plaintiff attempts to harm Arihay one more time, Arihay would retaliate. Further, it is worthy of note that this email clearly addresses an occurrence not discussed in the Complaint, i.e. the freezing of Defendants bank accounts.  Notwithstanding, the obvious fact that this text message relates to an occurrence outside the allegations in the Complaint, Plaintiff nonetheless cites this as an example of a predicate act to support its claims for wire fraud and a Hobbs Act violation. (Complaint ¶¶132 and 142)

Similarly, the Complaint cites a "message to Plaintiff threatening if [Plaintiff] does not pay Arihay 10 million dollars, Arihay "will call his men in the Russian Police."  Initially, even if true, this allegation on its face has nothing to do with the allegations in the Complaint. Further, there is no indication that Plaintiff was damaged in any way as a result of this alleged threat.  Finally, and not inconsequentially, this threat is alleged to have been made on August 2, 2018, years after Plaintiff alleges he made his last payment to Defendant, Arihay.  Nowhere in the Complaint does Plaintiff even try to

CH/D203541/FL2552

link this with any of the allegations in the Complaint. This factual assertion is also cited as an example of a predicate act to support its claims for wire fraud and violation of the Hobbs Act.

Additionally, the Complaint cites nine text messages (not provided for context) in which the Plaintiff alleges that expletives were used by Arihay. Absent from the Complaint in this regard is whether these text messages were in any way related to the allegations in the Complaint; the impact same had on Plaintiff, or whether the messages were in response to communications from the Plaintiff, similar in tone and content. These text messages are also cited as support its claims for wire fraud and violation of the Hobbs Act.

Finally, the Plaintiff claims that Arihay sent a Youtube "video of an arrest by Russian police of a suspect." (Complaint ¶114) According to Plaintiff, this transmittal occurred on August 8, 2019 <sic>, after Defendant, Arihay, had already "reneged on this promises." (Complaint ¶110) Plaintiff goes on to claim that "upon information and belief, the video was sent as a threat in order to prevent [Plaintiff] to seek return of his invested monies." (Complaint ¶110) The video and Plaintiff's speculation regarding same are the final facts cited in support of its claims for wire fraud and violation of the Hobbs Act.

In addition to the aforementioned "threats" and in particularly odd fashion, the Plaintiff attempts to bolster its claims of predicate acts constituting Wire Fraud, with the following allegations:

- On December 6, 2016, a wire from Khanan in the amount of $90,000 to deposit to 911 Realty Chase Bank account representing Chalamo's investment funds;

- On December 6, 2016, a wire from Khanan in the amount of $220,000 to deposit to 911 Realty Chase Bank account representing Chalamo's investment funds.[6]

The Complaint fails to provide any articulation as to: (1) how monies paid by a third party constitute conduct actionable by the Plaintiff; (2) why Khanan Kaikov[7] was not named as a party herein, as he was

---

[6] Complaint ¶133(c)

[7] The case should be dismissed pursuant to FRCP 19(a) since Khanan Kaikov is a necessary party, who was conveniently omitted from this action. *See Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 725 (2d Cir. 2000).

CH/D203541/FL2552

alleged to be the President of 911 Realty, and whether what, if any property, these monies were utilized to purchase.

Allegations of Bank Fraud

The Complaint proffers three examples of actions which are purported to be predicate acts of Bank Fraud. Specifically, the Complaint alleges the following:

> In June, 2018, Arihay, traveled to Florida, where he, without authorization, made a series of withdrawals from the business account of 911 Realty in Chase Bank, totaling $116,650 in funds, falsely representing to the bank that he was an authorized signatory on the account, when he was not, as follows:

> - Fraudulent withdrawal of $110,000 in the form of Cashier's check for the benefit of Defendant A&E.R.E. Management on June 29, 2018;

> - Fraudulent withdrawal of $3,000 falsely holding himself as representative of 911 Realty on June 29, 2018 <sic>;

> - Fraudulent withdrawal of $650 falsely holding himself as representative of 911 Realty on July 2, 2018 <sic>. (Complaint ¶135)

In regards to this allegation, the Complaint does not, nor could it, allege that Plaintiff was a signatory to the "the business account of 911 Realty Chase Bank." Nor does the Complaint in any way shape or manner claim that the alleged withdrawals from the Chase Bank account required two signatures, and if so, the identity of the second signature that was required. Finally, the Complaint is devoid of even an intimation that the Plaintiff was named on the subject Chase Account. Aside from the conclusory assertions about the propriety of the alleged withdrawals, Plaintiff provides no indication how the alleged transactions are actionable by the Plaintiff aside from the assertion that "(t)hese monies belong to Plaintiff and represented partial profit from Plaintiff's investment in the 406 East 94th Street Property received at closing in April 2018." (Complaint ¶110) This assertion is made notwithstanding the fact that (1) whose "authorization was required for the subject withdrawal; (2) that there is no written contract to which the Plaintiff is a signatory for this real estate transaction; (3) the Plaintiff does not even allege he was an actual or record owner of 911 Realty, and (4) how Plaintiff in good faith can allege that he

knows that the withdraw monies were from the closing of 206 East 94th Street since according to the Complaint, NY Prime had title to 206 East 94th Street. (Complaint ¶64) Finally, and not inconsequentially, Plaintiff specifically denies knowledge as to the expenses related to sales of the properties to which he claims some entitlement to monies.  As such, the Complaint does not address whether the aforementioned withdrawals were executed to satisfy legitimate expenses of 911 Realty, a company to which Plaintiff tacitly admits that he has not actual ownership.

Finally, and blatantly out of sheer necessity, the Complaint names Dustin Bowman (hereinafter "Bowman") and Shiryak, Bowman, Anderson, Gill and Kadochnikov (hereinafter "SBAGK") SBAGK[8], as additional RICO Defendants in an attempt to adequately plead a RICO enterprise. However, there are no specific allegations as to how these Defendants were part of a RICO enterprise aside from handling the legal aspects with respect to the buying and selling of properties and getting a commission for same. (Complaint ¶¶81, 90, 91, 98, 102, 124)

## STANDARD OF REVIEW

### I.      MOTION TO DISMISS

In reviewing a motion to dismiss brought under Rule 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences from those allegations in the light most favorable to the plaintiff. *See Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999). However, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

---

[8] SBAGK was not formed until June 4, 2018 and, therefore, the allegations in the Complaint, which predate the firm's existence, fail to state a cause of action and is certainly probative of the baseless allegations lodged throughout the Complaint. *See* Hallak Decl., Exhibit "F".

CH/D203541/FL2552

*Twombly*, 550 U.S. at 555. "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft,* 556 U.S. at 679. Moreover, factual allegations must be plausible. *Twombly*, 550 U.S. at 570; *see also Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*, 17 F. Supp. 3d 207, 219 (E.D.N.Y. 2014) (Bianco, J.)

Plaintiffs such as Chalamo who raise claims involving allegations of fraud must also satisfy the stringent pleading burden set forth in FRCP 9(b), which requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." This requirement governs civil RICO complaints alleging predicate acts of mail fraud, wire fraud and bank fraud. *Morrow v. Black*, 742 F. Supp. 1199, 1203 (E.D.N.Y. 1990) (discussing pleading requirements for predicate acts of mail fraud and wire fraud).

In order to satisfy the particularity standard set forth in Rule 9(b), a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Anatian v. Coutts Bank (Switz.) Ltd.*, 193 F.3d 85, 88 (2d Cir. 1999) (citations omitted). Rule 9(b) is construed "strictly in order to minimize strike suits, to protect defendants . . . from harm to their reputation resulting from ungrounded actions, and to give defendants notice of the precise conduct in issue." *Billard v. Rockwell Int'l Corp.*, 683 F.2d 51, 57 (2d Cir. 1982). Allegations of fraud which fail to conform to this standard must be dismissed. *Anatian*, 193 F.3d at 88-89.

## II.    RICO CLAIMS

Courts have become increasingly skeptical of civil RICO cases that, in actuality, boil down to business disputes that are more appropriate for state law actions premised on fraud. In so doing, the Courts have recognized that the civil RICO statute is "an unusually potent weapon—the litigation

CH/D203541/FL2552

equivalent of a thermonuclear device," wherein the "mere assertion of a RICO claim ... has an almost inevitable stigmatizing effect on those named as defendants." *See Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) (quoting *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir.1991) and *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir.1990)); *see also DLJ Mortg. Capital, Inc. v. Kontogiannis*, 726 F. Supp. 2d 225, 236 (E.D.N.Y. 2010) ("[P]laintiffs have often been overzealous in pursuing RICO claims, flooding federal courts by dressing up run-of-the-mill fraud claims as RICO violations."). In addition, alleged RICO violations "must be reviewed with appreciation of the extreme sanctions it provides, so that actions traditionally brought in state courts do not gain access to treble damages and attorneys' fees in federal court simply because they are cast in terms of RICO violations."[9] *Mathon v. Marine Midland Bank, N.A.*, 875 F. Supp. 986, 1001 (E.D.N.Y. 1995); *see also Schmidt v. Fleet Bank*, 16 F. Supp. 2d 340, 346 (S.D.N.Y. 1998).

## ARGUMENT

### I.
### PLAINTIFF'S COMPLAINT MUST BE DISMISSED AS THE ALLEGED CONTRACT IS IN DIRECT VIOLATION OF NEW YORK STATE'S STATUTE OF FRAUDS

Under New York State's Statute of Frauds, "an interest in real property cannot be created or transferred except by a writing expressing the consideration, signed by the party against whom enforcement is sought." *Messner Vetere Berger McNamee Scmetterer EURO RSCG Inc. v. Aegis Grp. PLC,* 974 F. Supp. 270, 273 (S.D.N.Y. 1997), *aff'd sub nom.*, 186 F.3d 135 (2d Cir. 1999). N.Y. Gen. Obligations Law § 5–703, provides in pertinent part that:

---

[9] It should be noted that Plaintiff's son, Khanan Kaikov, *see* Complaint ¶26, has filed three lawsuits in the New York State Supreme Court, which contain similar allegations regarding the properties that are the subject of this Complaint. *See* Hallak Decl., Exhibits "B"-"D". Two of these Complaints were filed by 911 Realty Corp., prior to the commencement of the instant action. *See* Hallak Decl., Exhibits "B" and "C". Additionally, Arihay has filed a Complaint in the New York State Supreme Court, Queens County, in September 2018, on behalf of 911 Realty Corp., against Plaintiff's son, Khanan Kaikov, *See* Hallak Decl., Exhibit "E". It is clear that Plaintiff has commenced the instant action against the Moving Defendants in retaliation for filing the state matter against his son, who is not a party to this lawsuit. Since commencing litigation is not considered a predicate act in accordance with the RICO statute, Moving Defendants request that this case be dismiss pursuant to Rule 12(b)(6), Rule 9(b) and in the interest of justice. *See Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018).

CH/D203541/FL2552

1.      An estate or interest in real property… or any trust or power, over or concerning real property, or in any manner relating thereto, cannot be created, granted, assigned, surrendered or declared ... unless by a deed or conveyance in writing, subscribed by the person…or by his lawful agent, thereunto authorized by writing...

2.      A contract for…the sale of any real property, or an interest therein, is void unless the contract or some note or memorandum thereof, expressing the consideration, is in writing, subscribed by the party to be charged…

*Messner Vetere Berger McNamee Scmetterer EURO RSCG Inc.,* 974 F. Supp. at 273 (S.D.N.Y. 1997).

Here, Plaintiff has conceded that the only alleged agreement that exists between the Plaintiff and Arihay is a verbal agreement to purchase and sell properties. (Complaint ¶36). Therefore, the Complaint should be dismissed in its entirety since the alleged transactions all deal with conveyances and contracts concerning real property, which are expressly barred by the Statute of Frauds absent a written agreement.[10]

## II.
## PLAINTIFF'S RICO CLAIMS ARE TIME-BARRED

A civil action under RICO is subject to a four-year statute of limitations. *Rotella v. Wood*, 528 U.S. 549, 553, 120 S. Ct. 1075, 1079, 145 L. Ed. 2d 1047 (2000), 18 U.S.C.A. § 1961 et seq.   "The clock begins to run when the plaintiff has "inquiry notice" of his injury, namely when he discovers or reasonably should have discovered the RICO injury." *Koch v. Christie's Int'l PLC*, 785 F. Supp. 2d 105, 114 (S.D.N.Y. 2011), *aff'd*, 699 F.3d 141 (2d Cir. 2012)(citing *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1102 (2d Cir.1988)).   Specifically, the Second Circuit has further clarified this issue stating, "the RICO statute of limitations ... runs even where the full extent of the RICO scheme is not discovered until a later date, so long are there were 'storm warnings' that should have prompted an inquiry." *World Wrestling Entertainment, Inc. v. Jakks Pacific, Inc.* 328 Fed.Appx. 695, 697 (2d Cir.2009).

---

[10] Plaintiff also cannot claim partial performance as an exception to the Statute of Frauds requirement. Plaintiff's Complaint is one for money damages, to which the partial performance exception to the Statute of Frauds does not apply. *See Solomatina v. Mikelic*, 370 F. Supp. 3d 420, 429–30 (S.D.N.Y. 2019) (stating that partial performance only overcomes the defense of the statute of frauds in an action for specific performance but does not save claims for money damages.)

CH/D203541/FL2552

Here, it is clear that Plaintiff's RICO claims are time-barred. The Complaint alleges knowledge of the RICO activities as early as October 2013. For example, Plaintiff alleges that in 2013, Arihay would not disclose the profits from each property while at the same time inducing Plaintiff to reinvest his money to purchase other properties. (Complaint ¶41-42). Additionally, in April 2014, Plaintiff alleges that Arihay "continued to refuse to release books or records or any information related to the Investment Properties," and in turn,"[Plaintiff] no longer felt comfortable to operate on a verbal promise and have corporate Defendants formally own the properties, so he requested that some formal relationship be made." (Complaint ¶¶45-47). 911 Realty Corp. was then opened on April 29, 2014, to prevent any fraudulent transfers or conveyances. (Complaint ¶¶48-50). By admission, it is clear that Plaintiff had, at the very least, "inquiry notice" and "storm warnings" of his alleged injury between October 2013 and April 2014. Therefore, since the Complaint was filed on April 29, 2019, more than four years after Plaintiff had notice of his alleged injury, the RICO causes of action should be dismissed in their entirety as time-barred.

## III.
## PLAINTIFF'S CLAIMS FOR RELIEF PURSUANT TO 18 U.S.C. 1962(a)-(d) MUST BE DISMISSED FOR LACK OF STANDING

Plaintiff lacks standing for damages from the sale of property that is alleged to be owned by 911 Realty Corp., a corporation in which he is not a shareholder or owner.[11] *See* Hallak Decl., Exhibits "B"- "E". "To have standing, a litigant must seek relief for an injury that affects him in a personal and individual way. He must possess a direct stake in the outcome of the case." *Hollingsworth*, 570 U.S. 693 705 (2013)(internal quotations and citation omitted).

Plaintiff admits that in actuality, 911 Realty is a corporation for which he has no tangible interest in. (Complaint ¶49) Additionally, the Complaint alleges that Khanan Kaikov is the President of 911 Realty. (Complaint ¶49). Plaintiff is neither a shareholder or an agent of 911 Realty and, therefore, he

---

[11] Plaintiff, in conclusory fashion, alleges that he was a *de facto* owner of 911 Realty Corp. (Complaint ¶¶48-50).

CH/D203541/FL2552

has no standing to sue on behalf of a corporation that he has no interest in. Rather, any lawsuit concerning any impropriety related to 911 Realty would have to be commenced by Khanan Kaikov, actions which have already been filed in New York State Supreme Court. *See* Hallak Decl. Exhibits "B"-"D".

Notwithstanding, Plaintiff does not have standing because he has not—and cannot—allege any domestic injury. When determining whether a foreign national suffers a domestic injury, Courts will focus not on where the alleged predicate acts occurred but, rather, where the impact of the injury was ultimately felt. *See City of Almaty, Kazakhstan v. Ablyazov*, 226 F. Supp. 3d 272, 282 (S.D.N.Y. 2016) (citing *Bascunan v. Daniel Yarur ELS Amended ComplaintA*, 2016 WL 5475998, at *4–6 (S.D.N.Y. Sept. 28, 2016)). Here, Plaintiff fails to allege that he owns any property in the United States that suffered harm due to the allegations in the Complaint. Rather, it is clear that Plaintiff, who is a resident of Moscow, Russia, with only familial ties to the United States, has not sustained a domestic injury to seek redress in this Court. *Id.* at 283 ("In cases involving economic harm, [the place of injury] is normally the state of plaintiff's residence," and foreign corporations are recognized to "reside either in their principal place of business or their place of incorporation.") (citing *Deutsche Zentral–Genossenchaftsbank AG v. HSBC N. Am. Holdings, Inc.*, 2013 WL 6667601, at *5 (S.D.N.Y. Dec. 17, 2013)).

## IV.
## PLAINTIFF'S CLAIMS FOR RELIEF BASED ON 18 U.S.C. 1962(a)-(d) MUST BE DISMISSED FOR LACK OF SPECIFICITY

FRCP 9(b)'s heightened pleading standard applies to the elements of RICO relating to claims of fraud or mistake. *See generally, D. Penguin Bros. v. City Nat. Bank*, 587 F. App'x 663, 668 (2d Cir. 2014). Specifically, FRCP 9(b) requires a RICO plaintiff to "specify the statements claimed to be false or misleading, give particulars as to the respect in which the plaintiff contend the statement were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *McLaughlin v. Anderson*, 962 F.2d 187, 190 (2d Cir. 1992) (quoting 18 U.S.C. 1962(c)).

CH/D203541/FL2552

Here, Plaintiff's RICO claims under 18 U.S.C. 1962(a)-(d) are grounded in Plaintiffs' core allegation that Arihay made misrepresentations concerning the business, including where the deeds to the numerous properties were to be recorded. (Complaint ¶164). In addition, Plaintiff utterly fails to plead with particularity the monies he was due from the arrangement. For example, the Complaint alleges the following:

> During the meeting, where Chalamo's sons, Khanan and Ariel, and brother Rakhmine and his sister-in-law Elena were also present, the parties made notes, based on Arihay's representations of how much was already invested in each property, and what anticipated expenses and resale value would be. (Complaint ¶55)

> On or about April 16, 2018, the 406 East 94th Street Property was sold with the knowledge and consent of the Plaintiff for $990,000. (Complaint ¶65)

> Arihay failed to pay Plaintiff his full share of profit on the 406 East 94th Street Property. (Complaint ¶66)

Plaintiff fails to plead with particularity any specified amount of money that Plaintiff was entitled to from the sale of each of the properties. Rather, the Complaint alleges, without any particularity whatsoever, that Plaintiff did not receive his <u>full share</u> of the profits and requests $2 million in damages, without providing any computation or facts for same. Nowhere does the Complaint specify any concrete amount of damages to which Plaintiff believes he is entitled. (Complaint ¶66) Therefore, it is abundantly clear that Plaintiff's claim for relief is wholly speculative and fails to comport with the specificity requirement under FRCP 9(b), despite admittedly having knowledge of same. (Complaint ¶55)

## V.
### PLAINTIFF'S RICO ACTIONS MUST BE DISMISSED SINCE PLAINTIFF HAS FAILED TO PLEAD CONTINUITY

The Second Circuit explicitly cautioned that RICO actions cannot be sustained where '[t]he activities alleged involved only a handful of participants' and do not involve a 'complex, multi-faceted conspiracy.'" *Flexborrow LLC v. TD Auto Fin. LLC*, 255 F. Supp. 3d 406, 419 (E.D.N.Y. 2017) (citing *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178 (2d Cir. 2008). As a result, "[c]ourts have refused to find a RICO violation in cases like this, where the plaintiffs 'attempt to transform [a] single

CH/D203541/FL2552

scheme of limited duration into a RICO enterprise.'" *Lynch v. Amoruso*, No. 16-CV-1270 (AJN), 232 F.Supp.3d 460, 468, 2017 WL 543232, at *6 (S.D.N.Y. Feb. 8, 2017) (quoting *Ozbakir v. Scotti*, 764 F.Supp.2d 556, 570 (W.D.N.Y. 2011).

Here, the Complaint fails to allege any complex, multi-faceted conspiracy that is typically found in viable RICO actions. Rather, the Complaint lists Arihay, Arihay's companies, his attorney, and his attorney's law firm, which was not in existence during any of the alleged predicate acts, as members of the RICO enterprise. More importantly, the Complaint only identifies one victim and is based upon one facet; fraudulent real estate transactions.[12] As such, the Complaint lacks closed-ended continuity and should be dismissed. *See Flexborrow LLC v. TD Auto Fin. LLC*, 255 F. Supp. 3d 406, 420 (E.D.N.Y. 2017) (wherein the Court dismissed the RICO causes of action because the allegations were "narrow in scope because it had one facet—fraudulent automobile transactions.")

In addition to pleading at least two predicate acts, Plaintiff "must show that the predicate acts are related and that they amount to, or pose a threat of, continuing criminal activity." *GICC Capital Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 465–66 (2d Cir. 1995), *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989). Here, Plaintiff alleges a series of predicate acts dealing with threats and other salacious conduct that fail rise to the level of a RICO action, as discussed above.

Further, Plaintiff fails to allege either an "open-ended" pattern of racketeering activity (*i.e.,* past criminal conduct coupled with a threat of future criminal conduct) or a "closed-ended" pattern of racketeering activity (*i.e.,* past criminal conduct "extending over a substantial period of time")." *GICC Capital Corp.,* 67 F.3d at 466 (2d Cir. 1995). Here, the text messages, transmittal of a Youtube video and verbal threats all occurred after the alleged fraudulent activity occurred. In addition, there are no

---

[12] To the extent that Plaintiff relies on the allegations in the Faziyev lawsuit, these allegations are based upon information and belief and are completely separate and distinct from any of the Plaintiff's allegations. (Complaint ¶¶ 120-123)

CH/D203541/FL2552

allegations of continuing acts of bank fraud that occurred, at the latest, after July 2018. (Complaint ¶135). As such, Plaintiff has failed to state any specific threat of ongoing racketeering activity, outside of Arihay's filing of a lawsuit against Plaintiff's son, Khanan Kaikov, in September 2018[13]. *See* Hallak Decl., Exhibit "E".

**VI.**

**PLAINTIFF'S CLAM FOR RELIEF PURSUANT TO 18 U.S.C. 1962(a) FAILS TO STATE A CAUSE OF ACTION**

Plaintiff's sole allegation under this cause of action is the conclusory statement that "Plaintiff was directly and proximately harmed by these financial losses caused by the pattern of racketeering activity, including the predicate acts described above." (Complaint ¶147). Plaintiff's bare bones recital of "predicate acts" are wholly insufficient to plead a viable RICO cause of action, as discussed above.

Notwithstanding, "Courts have repeatedly held that the injury causation requirement of § 1962(a) is not satisfied by allegations that a defendant, which is also the enterprise, invested the racketeering income in its general operations, thereby permitting it to continue its pattern of racketeering and cause further injury." *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 657 (S.D.N.Y. 1996)(citing *Vista Co. v. Columbia Pictures Indus., Inc.*, 725 F.Supp. 1286, 1299–1300 (S.D.N.Y.1989) and *DeMuro v. E.F. Hutton*, 643 F.Supp. 63, 67 (S.D.N.Y.1986)) (rejecting such an argument as "a vast and unwarranted extension of the boundaries of civil RICO"). The only damages that Plaintiff is claiming is that he was not fully compensated as a result of his alleged real estate investment. Rather, this is simply a matter of Plaintiff's belief that he has not gotten the full return on his investment, the amount of which is admittedly unknown.  This wholly speculative claim does not rise to the level of establishing that he was defrauded due to a "pattern of racketeering".  Plaintiff therefore fails to state a claim under 18 U.S.C. § 1962(a).

**VII.**

---

[13] Commencing litigation is not considered a predicate act in accordance with the RICO statute. *See Kim v. Kimm*, 884 F.3d 98, 104 n.5 (2d Cir. 2018).

**PLAINTIFF'S CLAM FOR RELIEF PURSUANT TO 18 U.S.C. 1962(b) FAILS TO STATE A CAUSE OF ACTION**

Plaintiff's claims pursuant to 18 U.S.C. § 1962(b) fail to satisfy the "Interest in or Control of an Enterprise" requirement.  Pursuant to 18 U.S.C. § 1962(b), it is unlawful for any person "through a pattern of racketeering activity ... to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(b). "Standing to redress a violation of Section 1962(b) exists only where plaintiff can show injury stemming from the acquisition or maintenance of any interest in, or control of, an enterprise. Such an injury must be separate and distinct from injuries stemming from the predicate acts alleged." *Breslin Realty Dev. Corp. v. Schackner*, 397 F. Supp. 2d 390, 399 (E.D.N.Y. 2005); *Discon, Inc.v. NYNEX Corp.*, 93 F.3d 1055, 1063 (2d Cir.1996), vacated on other grounds, 525 U.S. 128, 140, 119 S.Ct. 493, 142 L.Ed.2d 510 (1998). Here, the only assertion of the Plaintiff as to his ownership in 911 Realty is that it was understood that Plaintiff would have a "<u>de facto</u>" partial ownership interest in 911 Realty. (Complaint ¶49) The Complaint is devoid of any allegation that Plaintiff had any <u>actual</u> ownership in 911 Realty and, therefore, his alleged injury is speculative and devoid of any factual assertions to show that he sustained an injury due to Defendants control of 911 Realty, to which Plaintiff's son is the President, *see* Complaint ¶49. *Breslin Realty Dev. Corp.*, 397 F. Supp. 2d at 399 (E.D.N.Y. 2005) ("Failure to allege a distinct acquisition injury requires dismissal of a claim pursuant to Section 1962(b).")

## VIII.
## PLAINTIFF'S CLAM FOR RELIEF PURSUANT TO 18 U.S.C. 1962(c) FAILS TO STATE A CAUSE OF ACTION

Plaintiff's claims pursuant to 18 U.S.C. § 1962(c) fail to satisfy the distinctness requirement. Plaintiff alleges that the Corporate Defendants were solely operated and managed by Arihay.  (Complaint ¶46).  Plaintiff alleges that the Corporate Defendants were solely operated and managed by Arihay. (Complaint ¶46). To establish a violation of 18 U.S.C. § 1962(c), a plaintiff must show "(1) conduct (2)

CH/D203541/FL2552

of an enterprise (3) through a pattern (4) of racketeering activity" *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S. Ct. 3275, 3285, 87 L. Ed. 2d 346 (1985). Herein, Plaintiffs have failed to substantiate <u>any</u> of the four elements of a claim under 18 U.S.C. § 1962(c).

### A.  Conduct and Enterprise

"The requirements of section 1962(c) must be established as to each individual defendant. The focus of section 1962(c) is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise, which are proscribed by section 1962(d)." *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001). 18 U.S.C. § 1962(c) makes it unlawful "for any person employed by or associated with [an interstate] enterprise... to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity..." *Reves v. Ernst & Young*, 507 U.S. 170, 170, 113 S. Ct. 1163, 1165, 122 L. Ed. 2d 525 (1993).

The Supreme Court has explained that a RICO enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct," the existence of which is proven "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). The Second Circuit has declared conclusory allegations of an "enterprise" are insufficient as a matter of law. In a nearly identical matter, the Second Circuit dismissed the plaintiff's RICO complaint for failing to substantiate an "enterprise" when the plaintiff:

> "[Plaintiff] failed to allege a nexus between the (Enterprise) and the alleged RICO predicates and failed to explain each participant's role in the alleged course of fraudulent or illegal conduct. The indifferent attempts to plead the existence of an enterprise fall short of their goal in that they frustrate assiduous efforts to identify its membership, its structure (formal or informal), or its functional unity. **Plaintiffs' "conclusory naming of a string of entities does not adequately allege an enterprise.**" *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 175 (2d Cir. 2004) (internal quotation marks omitted)<*emphasis added*>

CH/D203541/FL2552

Plaintiff merely lump together all the Defendants in some of their conclusory allegations, which constitute nothing more than a regurgitation of the legal elements of 18 U.S.C § 1962(c).

Moreover, Plaintiffs have failed to provide any solid information regarding the "hierarchy, organization, and activities" of this alleged association-in-fact enterprise, *United States v. Coonan,* 938 F.2d 1553, 1560–61 (2d Cir.1991), from which this Court could fairly conclude that its "members functioned as a unit". *Nasik Breeding & Research Farm 175 Ltd. v. Merck & Co.,* 165 F.Supp.2d 514, 539 (S.D.N.Y.2001). Furthermore, Subsection 1962(c) prohibits "any person employed by or associated with any enterprise ... to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity." *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 657–58 (S.D.N.Y. 1996), *aff'd sub nom.*, *Katzman v. Victoria's Secret Catalogue*, Div. of The Ltd., Inc., 113 F.3d 1229 (2d Cir. 1997). Plaintiff's claims under § 1962(c) "fails because it alleges that Defendants and the "enterprise" are identical." *Katzman,* 167 F.R.D. at 657 (S.D.N.Y. 1996). Under § 1962(c), the culpable "person" (defendant(s)) and the "enterprise" must be distinct. *Id.* See *Riverwoods Chappaqua Corp. v. Marine Midland Bank*, 30 F.3d 339, 344 (2d Cir.1994); *Three Crown Ltd. Partnership v. Caxton Corp.*, 817 F. Supp. 1033, 1045 (S.D.N.Y.1993).

Here, Plaintiff describes the enterprise as consisting of Arihay, the Corporate Defendants to which he is the sole owner and agent, Bowman, and Bowman's law firm. [14] (Complaint ¶124). Thus, Plaintiff's attempt to allege an "association in fact" enterprise consisting of the Corporate Defendants and Arihay, in which he has a controlling interest. *See* 18 U.S.C. § 1961(4).

Plaintiff's claims pursuant to 18 U.S.C. § 1962(c) fail to satisfy the distinctness requirement. Plaintiff alleges that the Corporate Defendants were solely operated and managed by Arihay. (Complaint ¶46). Accordingly, Plaintiff has not plead sufficient distinctness which requires that "a corporate entity may not be both the RICO person [who is held liable] and the RICO enterprise undersection 1962(c)."

---

[14] This is especially evident given that Defendant SBAGK was not formed until June 4, 2018.

CH/D203541/FL2552

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir.1994); *4 K & D Corp. v. Concierge Auctions, LLC*, 2 F.Supp.3d 525, 536 (S.D.N.Y. Mar. 10, 2014) ("Courts have repeatedly dismissed § 1962(c) claims alleging that a corporation was simultaneously a RICO 'person' and a RICO 'enterprise' (or part of a RICO 'enterprise' from which the corporation is not distinct).") (collecting cases). *Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*, 17 F. Supp. 3d at 223–24.

Additionally, Plaintiff claims that Arihay and the Corporate Defendants hiring and use of attorneys, i.e., Bowman and SBAGK, for the purposes of transferring property establishes the conduct and enterprise requirements.  However, the Supreme Court has previously determined that one is not liable under RICO "unless one has participated in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 183, 113 S. Ct. 1163, 1172, 122 L. Ed. 2d 525 (1993).  Courts have dismissed RICO actions against Defendants wherein the Complaint only alleges that they were "associated" with the enterprise and fails to allege that they directed or controlled the racketeering activity in any way. *Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413, 427 (S.D.N.Y. 2010). As such, the Complaint is silent as to any conduct that would demonstrate Bowman and SBAGK knowledge, direction or control of any enterprise.  As such, Plaintiff has failed to articulate a viable enterprise under 18 USC. § 1962(c).

**B. Pattern**

18 U.S.C. § 1962(c) and the governing case law define "pattern of racketeering activity' as requiring 'at least two acts of racketeering activity' committed in a ten year period. To establish a pattern, a plaintiff must also make a showing that the predicate acts of racketeering activity by a defendant are 'related, and that they amount to or pose a threat of continued criminal activity.'" *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999). Section 1961(5) concerns only the minimum number of predicates necessary to establish a pattern; and it assumes that there is something to a RICO pattern beyond simply the number of predicate acts involved..." It is not the number of

CH/D203541/FL2552

predicates but the relationship that they bear to each other or to some external organizing principle that

renders them "ordered" or "arranged." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237–38, 109 S. Ct.

2893, 2900, 106 L. Ed. 2d 195 (1989).

      In stark contrast to the pleading requirement, the Complaint fails to establish a pattern as a matter

of law.  Plaintiff provides alleged predicate acts in the Complaint; however, Plaintiff fails to indicate the

relationship between the alleged predicate acts or any "external organizing principle" that renders these

alleged activities "ordered" or "arranged", as discussed above.  *Id.* By way of example, Plaintiff's

allegations of bank fraud provides no indication how the alleged transactions are actionable by the

Plaintiff aside from the assertion that "(t)hese monies belong to Plaintiff and represented partial profit

from Plaintiff's investment in the 406 East 94th Street Property received at closing in April 2018."

(Complaint ¶110)  Therefore, Plaintiff has failed to articulate a viable pattern under 18 USC. § 1962(c).

(Complaint ¶¶110, 111, 114, 132-142).

**C.  Racketeering Activity**

      "In the RICO context, a plaintiff must plead predicate acts sounding in fraud or mistake according

to the particularity requirement of Rule 9(b)" *D. Penguin Bros. v. City Nat' Bank*, 587 F. App'x 663, 666

(2d Cir. 2014).  "In addition to alleging the particular details of a fraud, "the plaintiffs must allege facts

that give rise to a *strong* inference of fraudulent intent." *First Capital Asset Mgmt., Inc. v. Satinwood,

Inc.*, 385 F.3d at 179.  Although it is true that matters peculiarly within a defendant's knowledge may be

pled "on information and belief," this does not mean that those matters may be pled lacking any detail

at all. *See DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987).

      Here, the Complaint does not contain a scintilla of verbiage specific to the Moving Defendants

intent to commit any fraudulent conduct. For example, Paragraph 25 of the Complaint states:

   Upon information and belief, during the relevant times Arihay used the proceeds derived
from defrauding Plaintiff and other investors to invest in Corporate Defendants and other
businesses and to wire funds to places unknown with intent to conceal and disguise the
nature and control of the money. (Complaint ¶137).

These allegations on their face are vague, conclusory, and a far cry from the particularity which is required. More importantly, as pled, the Complaint does not even set forth any cognizable facts as against any of the Moving Defendants which would even constitute a "racketeering activity" and, as such, Plaintiff has failed to articulate a viable cause of action under 18 U.S.C. § 1962(c).

## IX.
## PLAINTIFF'S CLAM FOR RELIEF PURSUANT TO 18 U.S.C. 1962(d) FAILS TO STATE A CAUSE OF ACTION

As a threshold issue, Plaintiff's pleading deficits in regards to 18 U.S.C. § 1962(c) impact the viability of its 18 U.S.C. § 1962(d) or "conspiracy" claim. Specifically, "(w)here a complaint does not adequately plead a substantive RICO violation, the conspiracy claim under § 1962(d) also fails." *Abbott Labs. v. Adelphia Supply USA*, No. 15CV5826CBALB, 2017 WL 57802, at *9 (E.D.N.Y. Jan. 4, 2017) (citing *First Capital*, 385 F.3d at 182).

"To establish a violation of § 1962(d), a plaintiff must show that the defendant agreed with at least one other entity to commit a substantive RICO offense." *Abbott Labs. v. Adelphia Supply USA*, No. 15CV5826CBALB, 2017 WL 57802, at (E.D.N.Y. Jan. 4, 2017). Further, "a plaintiff must allege that the defendant "knew about and agreed to facilitate the scheme" *Baisch v. Gallina*, 346 F.3d 366, 377 (2d Cir. 2003). And while a charge of conspiracy does not require commission of a predicate act, the Complaint herein does not specify what predicate acts any of the Moving Defendants might have even agreed to commit. Nor does the Complaint allege facts that establish these Defendants understood that their actions (which are also never enunciated) were part of a pattern of racketeering activity. As such, the Complaint is deficient. Additionally, the Complaint is devoid of any factual allegations regarding: (1) any of the Moving Defendants entering into <u>any</u> agreement; (2) the terms of any agreement to commit a substantive RICO offense; (3) the Moving Defendants' specific knowledge of any scheme; or (4) any agreement regarding any Moving Defendants' role in any scheme. It is respectfully submitted that

CH/D203541/FL2552

Plaintiffs' ambiguous and conclusory language is insufficient as a matter of law to sustain a RICO conspiracy and civil conspiracy to commit tort causes of action.

Further, "(b)ecause the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement." *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990). Herein, the Complaint does not reference an agreement to commit predicate acts with any specificity, rather, the only predicate acts alleged are charged to Defendant Arihay and are, therefore, insufficient to state a conspiracy.

Additionally, "a plaintiff must prove that (i) the defendants agreed to form and associate themselves with a RICO enterprise; (ii) the defendants agreed to commit two predicate acts in furtherance of a pattern of racketeering activity in connection with the enterprise; and (iii) if the agreed-upon predicate acts had been carried out, they would have constituted a pattern of racketeering activity." *Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*, 17 F. Supp. 3d at 230 (citing *Cofacredit*, 187 F.3d 229, 244–45 (2d Cir.1999). The Complaint is silent in this regard and, as such, fatally defective.

## X.
## PLAINTIFF'S CLAIM FOR RELIEF BASED ON COMMON LAW FRAUD FAILS AS A MATTER OF LAW

"Under New York law, to state a claim for fraud a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001). More specifically, the Complaint does not allege any of the required elements for a common law fraud claim as against the Moving Defendants.

The allegations must be stated with particularity to satisfy CPLR 3016(b). *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 558 (2009). Here, Plaintiff has failed to provide sufficient facts to support a "reasonable inference" that the allegations of fraud are true. *Eurycleia Partners, LP*,

CH/D203541/FL2552

12 N.Y.3d at 559-60. Conclusory allegations will not suffice. *Id*. Neither will allegations based on information and belief, which is replete throughout the Complaint. *See Facebook, Inc. v. DLA Piper LLP (US)*, 134 A.D.3d 610, 615 (1st Dept. 2015) ("Statements made in pleadings upon information and belief are not sufficient to establish the necessary quantum of proof to sustain allegations of fraud."). Moreover, Plaintiff's claims of justifiable reliance are belied by the allegations in the Complaint. (Complaint ¶¶47-49).

## XI.
## PLAINTIFF'S STATE LAW CLAIMS FAIL TO STATE A CAUSE OF ACTION

Under New York law, "[a] fiduciary relationship exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *EBC I, Inc. v. Goldman Sachs & Co.*, 5 N.Y.3d 11, 19 (N.Y. 2005); *Krys v. Butt*, 486 F. App'x 153, 155 (2d Cir. 2012). Moreover, "courts will not impose fiduciary obligations on either contracting party" in a "purely commercial relationship" where the parties negotiate at arms-length. *Boccardi Capital Sys., Inc. v. D.E. Shaw Laminar Portfolios, L.L.C.*, No. 05-cv-6882 (GBD), 2009 WL 362118, at *7 (S.D.N.Y. Feb. 9, 2009), *aff'd*, 355 F. App'x 516 (2d Cir. 2009). Here, the Complaint alleges nothing more than an ordinary commercial relationship to buy and sell properties and, therefore, Plaintiff has not pleaded a valid fiduciary duty which would require the imposition of a constructive trust. *See In re First Central Financial Corporation*, 377 F.3d 209, 212 (2d Cir. 2004).

In addition, Plaintiff cannot claim that his reliance on Arihay's alleged assertions formed a fiduciary duty, separate and apart of the alleged verbal agreement that the parties entered into. (Complaint ¶¶34-36). "Plaintiff's subjective trust in Defendant does not provide the basis for the Court to find a fiduciary relationship existed prior to the alleged breach." *See Solomatina v. Mikelic*, 370 F. Supp. 3d 420, 434 (S.D.N.Y. 2019); *see also Castellotti v. Free*, 138 A.D.3d 198, 209, 27 N.Y.S.3d 507 (1st Dep't 2016). Accordingly, since Plaintiff has failed to plead that a fiduciary duty existed between

the parties, the cause of action seeking the imposition of a constructive trust must also be denied. *In re First Central Financial Corporation,* 377 F.3d at 212.

Likewise, Plaintiff does not have a valid claim for conversion, because he cannot show any entitlement to any of the properties and business for which he has no interest in. In addition, Plaintiff cannot sustain an action for conversion based upon the nonperformance of an alleged contract. *Citadel Mgmt., Inc. v. Telesis Tr., Inc.*, 123 F.Supp.2d 133, 148 (S.D.N.Y. 2000).[15] Therefore, since Plaintiff is essentially suing for the benefit of his bargain, the conversion action must be dismissed. *In re Chateaugay Corp.*, 10 F.3d 944, 958 (2d Cir. 1993).

Moreover, Plaintiff has utterly failed to plead any facts that would require this Court to pierce the corporate veil. Nowhere in the Complaint does Plaintiff cite a single example or authority that would allow Plaintiff to pierce the corporate veil of the Corporate Defendants. Merely alluding to fraud without specificity does not rise to the level necessary to disregard any of the Corporate Defendants. *See Guptill Holding Corp. v. State*, 33 A.D.2d 362, 365, 307 N.Y.S.2d 970, 973 (1970), *aff'd,* 31 N.Y.2d 897, 292 N.E.2d 782 (1972).

Lastly, this Court should not exercise supplemental jurisdiction over this matter. Here, Plaintiff's son and Defendant Arihay have already filed actions in state court that concern various properties that are at issue in this Complaint. As such, since it is clear that there is no adequately pled federal action, this Court should deny exercising supplemental jurisdiction and remand the state law claims to state court, where the allegations that form the basis of this Complaint originated. *Flexborrow LLC v. TD Auto Fin. LLC*, 255 F. Supp. 3d 406, 426 (E.D.N.Y. 2017) (quoting *Karmel v. Claiborne, Inc.*, No. 99-CV-3608 (WK), 2002 WL 1561126, at *4 (S.D.N.Y. July 15, 2002).

---

[15] Likewise, Plaintiff's claim for unjust enrichment, based upon an alleged contractual agreement, fails to state a cause of action. *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790, 944 N.Y.S.2d 732, 967 N.E.2d 1177 (2012),

CH/D203541/FL2552

## CONCLUSION

For all the foregoing reasons, Plaintiff's claims against the Moving Defendants must be dismissed with prejudice; together with such other and further relief as to this Court seems just and proper.

Dated:  Lake Success, New York
       July 30, 2019

                    Respectfully submitted,
                    THE RUSSELL FRIEDMAN LAW GROUP, LLP
                    *Attorneys for Moving Defendants*

                By: /s/ Daniel S. Hallak
                   Daniel S. Hallak
                   3000 Marcus Avenue, Suite 2E03
                   Lake Success, New York 11042
                   Tel.: 516-355-9694
                   Fax: 516.355.9697

CH/D203541/FL2552