Maria Temkin, Esq. (*pro hac vice*)
TEMKIN & ASSOCIATES, LLC
1700 Market Street, Suite 1005
Philadelphia, PA 19103
Tel. (215) 939-4181
maria@temkinlegal.com
*Attorneys for Plaintiff Chalamo Kaikov*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

**CHALAMO KAIKOV,**                                    19-cv-2521-JBW-RER

                **Plaintiff,**

    **-against-**

                                              **FIRST AMENDED**
                                              **COMPLAINT**

**ARIHAY KAIKOV, DUSTIN BOWMAN,**
**ANDERSON, BOWMAN & ZALEWSKI PLLC,**
**SHIRYAK BOWMAN, ANDERSON, GILL &**
**KADOCHNIKOV LLP, PACIFIC 2340 CORP.,**
**ROYAL A&K REALTY GROUP INC., A&E.R.E.**
**MANAGEMENT CORP., NY PRIME HOLDING**                 **JURY TRIAL DEMANDED**
**LLC, AG REALTY BRONX CORP., JOHN and**
**JANE DOE 1-19 and XYZ CORPORATION 1-10,**

                **Defendants,**
-------------------------------------------------------------------X

## <u>COMPLAINT</u>

    Plaintiff  CHALAMO KAIKOV  alleges against Defendants ARIHAY KAIKOV,

DUSTIN BOWMAN, ANDERSON, BOWMAN & ZALEWSKI PLLC,  SHIRYAK,

BOWMAN, SHIRYAK, BOWMAN, ANDERSON, GILL & KADOCHNIKOV LLP, PACIFIC

2340 CORP., ROYAL A&K REALTY GROUP INC., A&E.R.E. MANAGEMENT CORP., NY

PRIME HOLDING LLC, AG REALTY BRONX CORP, JOHN and JANE DOE 1-19 and XYZ

CORPORATION 1-10, collectively, "Defendants", upon information and belief, as follows:  as

follows:

## INTRODUCTION

1.      Defendants have engaged in a racketeering scheme conducted through various enterprises, the purpose of which was to defraud investors through a series of fraudulent real estate deals.

2.      Arihay Kaikov, pretending to have significant experience in real estate development, induced investors, including Plaintiff, to contribute hundreds of thousands of dollars to purchase and renovate foreclosed properties promising the return of over 300% on their investment.

3.      The scheme operated as follows:  Arihay would promise that he would open a 50-50 joint venture with each victim, including Plaintiff, and that newly created partners would each make an equal investment into such joint venture to share equally expenses to purchase real estate properties in foreclosure, renovate them, and clear and hold the titles with the intent to resell the properties for profit.

4.      Unbeknownst to his victims, including Plaintiff, Arihay never made  his 50% share of the investment contributions and illegally diverted profits he would make from the purchased properties to corporate Defendants through bank wires, claiming, among other things, inflated construction expenses for services by third-party contractors that Arihay made secret deals with.

5.      As set forth more fully below, each of the Defendants played a role, or otherwise conducted or participated in the conduct of the enterprise's affairs and/or fraudulent conduct perpetrated against Plaintiff.

6.      Dustin Bowman and Anderson, Bowman & Zalewski PLLC and its successor-in-interest  Shiryak, Bowman, Anderson, Gill, & Kadochnikov LLP profited from Arihay's scheme

by acting as the exclusive settlement and escrow agent for all of Arihay's deals They also were paid commissions and other unearned and unauthorized fees for all real estate deals in which Arihay participated.

7.      Other Defendant corporations acted as instruments to launder money and conceal deeds and profits related to the properties purchased and renovated using the monies of the defrauded investors.

8.      Plaintiff seeks compensatory damages in excess of $2 million, trebled in excess of $6 million, under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*. as well as punitive damages under various state law claims.

## THE PARTIES

9.      That at all times hereinafter mentioned, Plaintiff, Chalamo Kaikov, (hereinafter "**Chalamo**" or "**Plaintiff**") is a resident of Moscow, Russia.

10.      Upon information and belief, that at all time hereinafter mentioned Defendant, Arihay Kaikov a/k/a/ Arkady Kaikov, (hereinafter "**Arihay**") is an individual residing at 65-38 Booth St #2H, Rego Park, NY 11374.

11.      Upon information and belief, that at all times hereinafter mentioned Defendant, Dustin Bowman, (hereinafter "**Bowman**") is an attorney admitted to practice law in the State of New York and partner with the Defendant Shiryak, Bowman, Anderson, Gill, & Kadochnikov, LLP,  with an office located at 80-02 Kew Gardens Road, Suite 600, Kew Gardens, New York 11415.

12.      Upon information and belief, that at all times hereinafter mentioned Defendant, Anderson, Bowman & Zalewski PLLC, (hereinafter "**ABZ**") is a law firm with principal place of business at 80-02 Kew Gardens Road, Suite 600, Kew Gardens, New York 11415.

13.     Upon information and belief, that at all times hereinafter mentioned Defendant, Shiryak, Bowman, Anderson, Gill, & Kadochnikov LLP, (hereinafter "**SBAGK**") is a law firm with principal place of business at 80-02 Kew Gardens Road, Suite 600, Kew Gardens, New York 11415.

14.     Upon information and belief, in June 2018 ABZ reorganized and renamed itself SBAGK, which is a successor in interest to the ABZ.  ABZ continues to maintain its website where SBAGK displays its  logo and name stating that it is formerly known as ABZ.

15.      Upon information and belief, that at all time hereinafter mentioned Defendant Pacific 2340 Corp., (hereinafter "**Pacific 2340**") is a corporation duly organized and existing under the laws of the State of New York with a principal place of business at 204 Centre Island Road, Oyster Bay, New York 11771.

16.     Upon information and belief, that at all time hereinafter mentioned Defendant Royal A&K Realty Group Inc., (hereinafter "**Royal A&K**") is a corporation duly organized and existing under the laws of the State of New York with a principal place of business at 96-62 Queens Boulevard, Rego Park, New York 11374.

17.     Upon information and belief, that at all time hereinafter mentioned Defendant A&E.R.E. Management Corp., (hereinafter "**A&E.R.E. Management**") is a corporation duly organized and existing under the laws of the State of New York with a principal place of business at 382 I U Willets Road, Roslyn Heights NY 11577.

18.     Upon information and belief, that at all time hereinafter mentioned Defendant NY Prime Holding LLC, (hereinafter "**NY Prime**") is a corporation duly organized and existing under the laws of the State of New York with a principal place of business at 219-26 Peck Avenue, Queens Village, New York 11427.

4

19.     Upon information and belief, that at all time hereinafter mentioned Defendant AG Realty Bronx Corp., (hereinafter "**AG Realty**") is a corporation duly organized and existing under the laws of the State of New York with a principal place of business at 118-21 Queens Boulevard, Suite 418, Forest Hills, New York 11375.

20.     Defendants Pacific 2340, Royal A&K, A&E.R.E. Management, NY Prime, and AG Realty are hereafter referred to as the "**Corporate Defendants**."

21.     Upon information and belief, that at all time hereinafter mentioned Defendants, JOHN and JANE DOE 1-10 (hereinafter "JOHN DOE 1-10" and "JANE DOE 1-10") are and were individuals, subsidiaries, members and/or employees of the Defendants and are being sued in their individual and official capacities.

22.     Upon information and belief, that at all time hereinafter mentioned, Defendant XYZ CORPORATION 1-10 (hereinafter "XYZ 1-10") are and were individuals, corporations and subsidiaries residing within the State of New York.

23.     Upon information and belief, Arihay is an owner, officer, director and/or managing member and exercises full control of the Corporate Defendants.

## JURISDICTION AND VENUE

24.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (actions arising under the laws of the United States) and 18 U.S.C. § 1964(a), (b), (c), and (d) (jurisdiction over civil RICO actions).

25.     The Court also has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367.

26.     The Court has additionally subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a) because there is complete diversity of citizenship between Plaintiff and

Defendant and the amount in controversy exceeds $75,000.

27.    Venue is proper in this District under 18 U.S.C. § 1965 and 28 U.S.C. § 1391 because this is where Defendants can be found and transact their affairs and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTUAL ALLEGATIONS

28.    In or about December of 2012, Chalamo was visiting his son, Khanan Khaikov ("**Khanan**"), in New York when Defendant Arihay Kaikov, who is Chalamo's cousin, approached Chalamo to discuss a business venture.

29.    Arihay represented to Chalamo that he had significant experience in real estate development workings of the foreclosure procedures in the Brooklyn, New York and surrounding areas. He explained to Chalamo that he specialized in purchasing properties that were being foreclosed; renovating and managing the properties, and selling them for profit.

30.    Arihay then told Chalamo about how successful he had been in his previous real estate projects; that he had a trusted team of lawyers, including Defendants Bowman and law firm of ABZ (now SBAGK), and experienced contractors who worked with him, such that the expenses for renovation of properties and legal fees would be much lower than if outside professionals were hired.

31.    Arihay promised that he would be personally managing the business venture, would locate, negotiate contracts of sale, and acquire the properties on their behalf and timely inform Chalamo about the properties which would be purchased, the details of renovation progress, and detail all expenditures of the invested money.

32.    In all other respects, Arihay represented to Chalamo that they would be equal partners, each equally responsible for all capital obligations to acquire and manage the investment properties, and sharing equally any profits from the sale of the renovated properties.

33.     Arihay represented to Chalamo that this arrangement would be extremely beneficial to Chalamo because if Chalamo were to invest money in a joint real estate business venture with Arihay, under Arihay's management, they would turn up quick profits of at least 200% to 300% on their joint investment.

34.     Upon information and belief, Arihay did not want to suggest that Chalamo give him a loan, because promise of ownership in the joint venture would be more enticing and suggest higher illusory profits than a loan with set terms, which would have to be in writing and repaid.

35.     Arihay then told Chalamo that he had other investors expressing interest as well, so that if Chalamo was considering investing in the joint venture, he would have to make a decision quickly.

36.     Chalamo found Arihay's proposal attractive because of the promised high returns and because it represented investment in real estate, which Chalamo perceived as secure without Chalamo having to be involved in locating foreclosed properties for investment or day-to-day management of the renovations and lengthy legal wranglings regarding the properties.

37.     Arihay's representations and the fact that he was Chalamo's cousin convinced Chalamo that Arihay could be trusted to deal fairly and honestly in the proposed joint venture.

38.     Relying on Arihay's representation, in December 2012, Chalamo agreed to invest initial $100,000 in a joint business venture with Arihay (the "**Initial Investment**").

39.     The parties entered into a verbal agreement that Arihay would also contribute 50% of monetary capital to the joint venture; will find investment properties in foreclosure for renovation; and will manage the venture.

40.     The parties agreed to equally pay all costs required for clearing the titles,

7

acquiring, renovating, managing and selling investment properties for profit.

41.    Although Arihay was supposed to identify specific properties bought with the Initial Investment funds, as well as itemize expenses and costs, he did not disclose them to Chalamo at that time.

42.    Upon information and belief, Arihay did not want to put anything in writing because he never intended to return money to Chalamo.

43.    Sometime in 2013, Arihay informed Chalamo that the Initial investment returned a profit of $100,000 and that Chalamo should re-invest it in order to continue making more profit.

44.    In October 2013, Arihay traveled to Moscow where he met with Chalamo. During the meeting, Arihay told Chalamo that the prior investment had returned additional profit of $100,000, making a total profit of $200,000 on the $100,000 investment.

45.    During this trip, Arihay would not disclose to Chalamo which properties returned profit on Chalamo's investment, but explained that he needed Chalamo to make a capital contribution of additional $200,000 to purchase other properties, promising returns in excess of $500,000 on the investment to be paid when properties were sold.

46.    Upon information and belief, Arihay never intended to return any monies to Plaintiff, but disclosed profits in order to fraudulently induce Chalamo to make further investments.

47.    Based on Arihay's representations in Moscow, during Arihay's visit Chalamo gave Arihay additional $200,000 to invest in the joint venture with the same conditions: Arihay would be responsible for identifying investment opportunities and would handle all necessary arrangements, the parties would then contribute equal expenses on the renovation of the

properties and split any profit equally.

48.     Upon information and belief, Arihay did not want to make an agreement in writing because he never intended to return the "investment" money to Plaintiff.

**<u>Discussions in April 2014</u>**

49.     Throughout beginning of 2014, Chalamo and Arihay had numerous telephone conversations when Chalamo requested Arihay to explain which properties were the money invested into and when can the profits be distributed.

50.     Arihay continued to refuse to  provide any information related to the  properties he bought or alleged profits Arihay claimed were generated in 2013.

51.     Chalamo no longer felt comfortable to operate on a verbal promise without having any information related to the purportedly purchased properties or accounting of the alleged profits, so he requested that some formal relationship be made.

52.     In order to further fraudulently induce Chalamo to make additional investments and delay repayment of investments already made, Arihay agreed to open a joint corporation in order to hold titles and own the properties in which he claimed he invested Chalamo's money (the "**Investment Properties**") and to account for joint investments and expenses.

53.     The parties decided to form a joint corporation 911 Realty Corp., ("**911 Realty**") where Chalamo and Arihay would be *de facto* 50-50 % owners and which would hold the tiles and/or deeds for the invested properties and account for joint investments and expenses.

54.     It was also agreed that Chalamo's son Khanan, who resides in New York and could expediently "on location" handle any operations of 911 Realty, if needed, would hold a position of president of the 911 Realty and at all times act as Chalamo's agent and on Chalamo's behalf.

55.     911 Realty was opened on April 29, 2014.

56.     In May 2015, in reliance on Arihay's promises, Chalamo provided another $100,000 to Arihay as further investment.

57.     However, for the next two years Arihay refused to transfer any titles to the Investment Properties to 911 Realty claiming that the properties were subject to ongoing litigations to clear the titles

58.     As Chalamo found out later, the titles and/or deeds for the invested properties were owned by corporate Defendants, including Pacific 2340 Corp., Royal A&K Realty Group Inc., A&E.R.E. Management Corp., NY Prime Holding LLC, AG Realty Bronx Corp. (the "Corporate Defendants"),who were solely under control and management of Arihay.

## Chalamo's Visit to New York in November 2016

59.     In November 2016, Chalamo came to New York and met with Arihay to discuss the return of his investment.

60.     In order to delay payment of the invested funds, Arihay finally agreed to provide a list of and the Investment Properties subject to the joint agreement.

61.     The following properties were identified by Arihay:

- real property located at 567 Jerome Street, Brooklyn, New York 11207;

- real property located at 317 East 31st Street, Brooklyn 11226;

- real property located at 118-36 219th Street, Jamaica, New York 11411;

- real property located at 118-26 220th Street, Jamaica, New York 11411;

- real property located at 909 Elton Street, Brooklyn, New York 11208;

- real property located at 280 West 127th Street, New York, New York 10027;

- real property located at 844 Herkimer Street, Brooklyn, New York 11233;

- real property located at 243 Buttrick Avenue, Bronx, New York 10465;

- real property located at 905 Mother Gaston Boulevard, Brooklyn, New York 11212;

- real property located at 406 East 94th Street, Brooklyn, New York 11212.

62.     During the meeting, where Chalamo's sons, Khanan and Ariel, and brother Rakhmine and his sister-in-law Elena were also present, the parties made notes, based on Arihay's representations of how much was already invested in each property, and what anticipated expenses and resale value would be.

63.     Arihay also confirmed the addresses of properties in a series of texts sent to Khanan on November 10 and 11, 2016.The parties even visited some of the properties.

64.     The parties again agreed that all titles and/or deeds for the invested properties would be immediately transferred to 911 Realty for joint ownership.

65.     The parties then opened a bank account for 911 Realty, which was used by Arihay to pay real and, upon information and belief, inflated expenses for renovating properties. Khanan was to be a signatory on the account on behalf of Chalamo.

66.     Arihay also explained that further investment was needed in order to pay for renovation of the Investment Properties.

67.     In reliance on Arihay's representations, convinced that he was now a 50% owner of the ten (10) identified properties, Chalamo agreed to invest additional funds in the joint venture.

68.     On November 23, 2016, Chalamo made a wire transfer from his bank in Russia in the amount of $500,000  to Arihay's wife's U.S. bank account. The money were intended to be invested in 911 Realty to cover expenses for, *inter alia*, renovation of the ten (10) Investment Properties.

11

69.     Arihay subsequently only transferred deeds to two (2) properties, but failed to transfer the deeds to other eight (8) properties to the 911 Realty, in violation of the agreement.

70.     Upon information and belief, Arihay never intended to return the invested money to Chalamo.

## THE FRAUDS

71.     From December 2016 through part of 2018, Arihay used  911 Realty's bank account to pay renovation expenses for the Investment Properties.

72.     Most of the funds required for renovations were provided on "as needed" basis by Chalamo.

73.     Khanan managed day-to-day operations of 911 Realty, its bank account and kept accounting of Chalamo's investments on Chalamo's behalf.

### The 406 East 94 Street Investment Property

74.     Pursuant to the joint venture agreement, Plaintiff provided $364,000 in funds for the purchase and renovation and other expenses for the real property located at **406 East 94th Street, Brooklyn, New York 11212**

75.     Pursuant to the agreement, Arihay transferred the deed to the property from Defendant NY Prime  on December 9, 2016,

76.     Arihay provided $90,000 in funds. It was far less than 50% that the parties had agreed upon.

77.     Upon information and belief, Arihay used his own contractors for renovations and fraudulently claimed that renovation expenses were much higher than what had actually been spent in order for Plaintiff to provide funds that Arihay then converted for his own profit.

78.     For example, Arihay fraudulently claimed that the deed was purchased for

12

$50,000 while the records in the Office of the New York City Register reflect that the deed for the 406 East 94th Street Property was purchased for $25,000.

79.     Unbeknownst to Plaintiff, at direction of Arihay, in March 2014, the deed was recorded in the name of Defendant NY Prime.

80.     On or about April 19, 2018, the 406 East 94th Street Property was sold with the knowledge and consent of the Plaintiff for $990,000.

81.     Arihay failed to pay Plaintiff his full share of profit on the 406 East 94th Street Property.

82.     Defendants Bowman and ABZ (now SBAGK) provided legal services to 911 Realty during the sale of the 406 East 94th Street Property and received ten percent (10%) from the profits of the sale.

83.     Upon information and belief, Defendants Bowman and ABZ (now SBAGK) acted solely in the interests of Arihay during the sale transaction albeit they were representing 911 Realty.

84.     Defendants Bowman and ABZ (now SBAGK) also held the sum of $70,000.00 in the attorney escrow account to make outstanding payments for purported obligations owed by the 406 East 94th Street Property.

85.     Defendants Bowman and ABZ (now SBAGK) have failed to account for the monies held in the attorney escrow account.

86.     Upon information and belief, Bowman and ABZ (now SBAGK) have conspired with Arihay to convert the money for their own profit.

**The 243 Buttrick Avenue Investment Property**

87.     Pursuant to the joint venture agreement and Arihay's representations, Arihay used

portion of Chalamo's Investment Funds for the purchase and renovation and other expenses for the real property located at **243 Buttrick Avenue, Bronx, New York 10465**.

88.     Upon information and belief, Arihay used his own contractor for renovations and fraudulently claimed that renovation expenses were much higher than what had actually been spent in order for Plaintiff to provide funds that Arihay then converted for his own profit.

89.     Unbeknownst to Plaintiff, at direction of Arihay, in June 2015, the deed was recorded in the name of Defendant AG Realty.

90.     Upon information and belief, Bowman and ABZ (now SBAGK) have assisted and conspired with Arihay to record the deed in the name of Defendant AG Realty when they knew that the deed was to be transferred to 911 Realty.

91.     Despite his agreement with Chalamo, Arihay never transferred the deed to 911 Realty.

92.     According to public records, on or about January 31, 2017, Arihay sold the 243 Buttrick Avenue Property for $565,000.

93.     Arihay claimed that Plaintiff was due approximately $159,000 from the sale, however, Plaintiff has no means of ascertaining the real amount.

94.     Arihay failed to pay Plaintiff his share of profit on 243 Buttrick Avenue Property and claimed that the money were reinvested in another property, 909 Elton St.

95.     Upon information and belief Defendants Bowman and ABZ (now SBAGK) provided legal services to Arihay during the sale of the 243 Buttrick Avenue Property and received ten percent (10%) from the profits of the sale.

96.     Upon information and belief, Bowman and ABZ (now SBAGK) have conspired with Arihay to convert the money for their own profit.

14

**The 909 Elton Street Investment Property**

97.     Pursuant to the joint venture agreement, and based on Arihay's representations, $159,000 of Plaintiff's find were used for the purchase of the real property located at **909 Elton Street, Brooklyn, New York 11208.**

98.     Unbeknownst to Plaintiff, at direction of Arihay, in August 2013, the deed was recorded in the name of Defendant Royal A&K.

99.     In order to divert the investment property from Plaintiff, in August 2017, Arihay fraudulently transferred the deed to AG Realty.

100.    Upon information and belief, Bowman and ABZ (now SBAGK) have assisted and conspired with Arihay to record the deed in the name of Defendant AG Realty when they knew that the deed was to be transferred to 911 Realty.

101.    Despite his agreement with Chalamo, Arihay never transferred the deed to 911 Realty.

102.    According to public records, on or about April 19, 2018, Arihay sold the 909 Elton Street Property without the knowledge and consent of the Plaintiff for $625,000.

103.    Pursuant to the Agreement, Plaintiff was due $337,500 from the sale.

104.    Arihay failed to pay Plaintiff his share of profit on 909 Elton Street Property.

105.    Upon information and belief Defendants Bowman and ABZ (now SBAGK) provided legal services to Arihay during the sale of the 909 Elton Street Property and received ten percent (10%) from the profits of the sale.

106.    Upon information and belief, Bowman and ABZ (now SBAGK) have conspired with Arihay to fraudulently divert the deed to the property from Plaintiff and convert the money for their own profit.

**The 118-36 219th Street Investment Property**

107.     Pursuant to the joint venture agreement, Plaintiff provided $85,000 in funds for renovation and other expenses for the real property located at **118-36 219th Street, Jamaica, New York 11411**.

108.     Plaintiff also believes that $50,000 of the investment funds were used by Arihay to purchase the deed for the property.

109.     Plaintiff has no means to find out whether Arihay had provided his share of the funds.

110.     Upon information and belief, Arihay used his own contractor for renovations and fraudulently claimed that renovation expenses were much higher than what had actually been spent in order for Plaintiff to provide funds that Arihay then converted for his own profit.

111.     Unbeknownst to Plaintiff, at direction of Arihay, in July 2013, the deed was recorded in the name of Defendant Royal A&K.

112.     In order to divert the investment property from Plaintiff, in September 2016, Arihay fraudulently transferred the deed to Pacific 2340.

113.     Upon information and belief, Bowman and ABZ (now SBAGK) have assisted and conspired with Arihay to fraudulently transfer and record the deed in the name of Defendant Pacific 2340 when they knew that the deed was to be transferred to 911 Realty.

114.     Despite his agreement with Chalamo, Arihay never transferred the deed to 911 Realty.

115.     According to public records, on or about August 25, 2018, without the knowledge and consent of the Plaintiff, Arihay sold the 118-36 219th Street Property for $572,000.

116.     Arihay failed to pay Plaintiff his full share of profit on the 118-36 219th Street

Property and repay Plaintiff's expenses for renovations of the 118-36 219th Street Property.

117.     Upon information and belief Defendants Bowman and SBAGK provided legal services to Arihay during the sale of the 118-36 219th Street Property and received ten percent (10%) from the profits of the sale.

118.     Upon information and belief, Bowman and SBAGK knew that Plaintiff through 911 Realty had interest in the 118-36 219th Street Property and have conspired with Arihay to convert the money for their own profit.

**The 844 Herkimer Street Investment Property**

119.     Pursuant to the joint venture agreement, Plaintiff provided $70,000 in funds for renovation and other expenses for the real property located at **844 Herkimer Street, Brooklyn, New York 11233**.

120.     Plaintiff also believes that $50,000 of the investment funds were used by Arihay to purchase the deed for the property.

121.     Plaintiff has no means to check whether Arihay had provided his share of the funds.

122.     Upon information and belief, Arihay used his own contractor for renovations and fraudulently claimed that renovation expenses were much higher than what had actually been spent in order for Plaintiff to provide funds that Arihay then converted for his own profit

123.     Unbeknownst to Plaintiff, at direction of Arihay, in December 2013, the deed was recorded in the name of Defendant A&ERE.

124.     Upon information and belief, Bowman and ABZ (now SBAGK) have assisted and conspired with Arihay to record the deed in the name of Defendant A&ERE when they knew that the deed was to be transferred to 911 Realty.

125.    Despite his agreement with Chalamo, Arihay never transferred the deed to 911 Realty.

126.    Plaintiff has no access to the property and believes that Arihay will fraudulently divert monies from the sale.

**Other Investment Properties**

127.    The only other property that Arihay also transferred the deed to 911 Realty was 905 Mother Gaston Boulevard, Brooklyn, New York 11212 on December 6, 2016. However, on July 3, 2018, Arihay caused to incorporate company Mother Gaston Corp. and proceeded to fraudulently transfer the deed to the Mother Gaston Property from 911 Realty, without authorization or authority to do so. The ownership to the title is currently subject to a lawsuit pending before the County of Kings Supreme Court of New York.

128.    Despite his agreement with Chalamo, Arihay never transferred the deeds to the four remaining identified properties to 911 Realty:

- real property located at 567 Jerome Street, Brooklyn, New York 11207;

- real property located at 317 East 31st Street, Brooklyn 11226;

- real property located at 118-26 220th Street, Jamaica, New York 11411;

- real property located at 280 West 127th Street, New York, New York 10027.

129.    Plaintiff has no access to these four properties and believes that Arihay will fraudulently divert monies from the sale.

130.    In April 2019, 911 Realty filed two lawsuits in the state courts of New York against Arihay and certain corporate Defendants seeking transfer of titles to 317 East 31st Street and 844 Herkimer Street properties to 911 Realty.

131.    As of the date of this Amended Complaint, the lawsuits are pending.

18

### Continuation of the Fraudulent Scheme

132.    Sometime in May of 2018, Chalamo confronted Arihay regarding transferring the remaining eight (8) property titles to the 911 Realty or return of investment funds.

133.    When confronted by Plaintiff, Arihay reneged on his promises and made threats to Plaintiff and his sons, including threatening putting his sons in jail.

134.    For example, during the summer of 2018, Arihay made numerous phone calls and sent numerous text messages via WhatsApp to Plaintiff in Moscow, including a message on July 3, 2018, stating  as follows:

> If there is one more attempt to harm me I will get so scared that I will f* you up!
> Or will bar you entry to the USA. Or your eagles will be held up by my men.  If
> my accounts are not unfrozen by Monday, then on Tuesday you will have to wire
> me $1,000,000. So prey to God that doesn't happen…

135.    On August 3, 2018, Arihay sent message to Plaintiff threatening that if Chalamo does not pay Arihay 10 million dollars, Arihay "will call his men in Russian police."

136.    Arihay also left numerous threatening voicemail with expletives and sent other text messages with threats to Plaintiff in Moscow, including messages on June 9, July 3, July 12, July 27, July 28, August 3, August 5, August 6, and August 7, 2018.

137.    On August 8, 2018, Arihay sent Chalamo in Moscow a YouTube video of an arrest by Russian police of a suspect. Upon information and belief, the video was sent as a threat in order to prevent Chalamo to seek return of his invested funds.

138.    Arihay also opened an account in the name of 911 Realty in TD Bank where he was a sole signatory in order to fraudulently conceal any profits obtained from joint investments.

139.    In June, 2018, Arihay, traveled to Florida, where he, without authorization, made a series of withdrawals from the business account of 911 Realty in Chase Bank,  totaling $116,650 in funds, falsely representing to the bank that he was an authorized signatory on the

19

account, when he was not, as follows:

- Fraudulent withdrawal of $110,000  in the form of Cashier's check for the benefit of Defendant A&E.R.E. Management on June 29, 2018;

- Fraudulent withdrawal of $3,000 falsely holding himself as representative of  911 Realty on June 29, 2018;

- Fraudulent withdrawal of $650 falsely holding himself as representative of  911 Realty on July 2, 2018.

140.    These monies belong to Plaintiff and represented partial profit from Plaintiff's investment in the 406 East 94th Street Property received at closing in April 2018.

141.    On July 3, 2018, Arihay caused to incorporate a company Mother Gaston Corp. and proceeded to fraudulently transfer the deed to the Mother Gaston Property from 911 Realty, without authorization or authority to do so.

142.    On September 12, 2018, in order to further deter Plaintiff from claiming return of the investment, Arihay filed a fraudulent lawsuit against Plaintiff's son Khanan, falsely accusing Khanan of diverting money from sale of the 406 East 94th Street Property to his own personal accounts, all while knowing that these allegedly stolen money belonged to Plaintiff.

143.    Upon information and belief, Bowman and SBAGK knew that claims against Khanan had no factual or evidential support but acted as attorneys of record in the interest of Arihay in order to assist him to deter Chalamo from claiming return of the investment.

**DEFENDANTS' OTHER VICTIMS**

**Faziyev Lawsuit**

144.    Upon information and belief, from 2012, Arihay ran a similar fraudulent scheme on a number of other investors.

145.    For example, in a lawsuit filed on September 7, 2018, in the Supreme Court of the State of New York, County of Nassau, Index No. 612149/2018, Plaintiff Ralph Fayziyev alleges

that Arihay entered into agreement with Faziyev, where Faziyev invested $300,000 in joint

venture to acquire, renovate, and sell properties for profit.

146.    Based on the allegations, Arihay fraudulently diverted Faziyev's money to his

own corporations without any intention of repayment.

147.    Upon information and belief, Arihay has defrauded other investors as well.

148.    For example, Arihay recently solicited another potential investor, Alex Goryunov

to invest money in a real estate in Miami. Arihay was attempting to solicit $20 million claiming

that the property is worth $53 million.

149.    Upon information and belief, Arihays continues the scheme now to defraud other

investors forming  new "joint venture" companies, yet unknown to Plaintiffs.

### RICO ALLEGATIONS

150.    **Realty Companies Enterprise:** Arihay,  the Corporate Defendants, Bowman,

ABZ and  SBAGK  named in this Plaintiff's Complaint are a group of RICO persons associated

in fact for the common purpose of engaging in fraudulent conduct constituting a RICO enterprise

defined in 18 U.S.C. § 1961(4) functioning together as a continuing unit, each of them necessary

to accomplish each step or aspect of the fraudulent scheme. The purpose of the association-in-

fact Realty Companies Enterprise was to engage in real estate transaction diverting moneys from

investors, including those of Plaintiff's. Arihay managed the activities of  the Enterprise to divert

profits to himself and Defendants Pacific 2340, Royal A&K, A&E.R.E. Management, NY Prime,

and AG Realty and  Bowman, ABZ and SBAGK managed the legal relationships of the Realty

Companies Enterprise, including assisting with recording fraudulent deeds and receiving

fraudulent commissions on the sale of the investment properties.

151.    **Pattern of Racketeering:** The pattern of racketeering activity included related

violations of 18 U.S.C. § 1343 (wire fraud); 18 U.S.C. § 1344 (bank fraud); 18 U.S.C. § 1956 (money laundering); 18 U.S.C. § 1957 (engaging in monetary transactions in property derived from unlawful activity); 18 U.S.C. § 1952 (Travel Act); 18 U.S.C. §1951 (interference with commerce by threats or violence), as included in 18 U.S.C. 1961(1).

152.   **Conduct and Participation:** Defendants, all of whom are persons within the meaning of RICO, managed and participated in conduct of the Enterprise through a pattern of racketeering activity in violation of 18 U.S.C. §1962(c), including multiple acts of wire fraud, bank fraud and Travel Act violations,.

153.   **Continuity Plus Relatedness (Pattern) of Conduct:** The pattern began no later than some time in 2012 and is continuing through present time.

154.   **Injury to Property:** Plaintiff was directly and proximately harmed by predicate acts of racketeering, including wire fraud, bank fraud, and Travel Act violations, which resulted in ascertainable financial losses to the Plaintiff.

## PREDICATE ACTS OF RACKETEERING

155.   The fraudulent scheme was effected by a pattern of related acts of wire fraud, money laundering, illegal transactions in monetary instruments, and interstate and foreign travel in aid of racketeering (collectively, the "Predicate Acts") which were agreed upon and coordinated among the Defendants as part of the conspiracy among Defendants to effect the fraudulent scheme.

156.   Each of the Defendants knowingly participated in the formation of the fraudulent scheme with one or more defendants and willingly participated by knowingly and intelligently carrying out the Predicate Acts detailed herein.

157.   Based on the nature of the fraudulent scheme, some of the details of the

22

Defendants' wrongdoing are exclusively within the possession of the Defendants, preventing Plaintiff from pleading certain acts with greater particularity.

158.    **Wire Fraud, 18 U.S.C. § 1343:** The Wire Fraud Statute, 18 U.S.C. § 1343, prohibits:  "transmit[ting] . . . by means of wire . . . any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice [to defraud]."

159.    Each of the below acts was done in furtherance of the scheme to receive money from Plaintiff and used, or caused the use of, the United States wires:

a.   Numerous phone calls between Arihay in U.S. and Chalamo in Moscow between 2012 and 2018;

b.   Numerous text messages between Arihay and Chalamo between 2012 and 2018, including

-   July 3, 2018 text message from Arihay to Chalamo stating:

If there is one more attempt to harm me I will get so scared that I will f* you up! Or will bar you entry to the USA. Or your eagles will be held up by my men.  If my accounts are not unfrozen by Monday, then on Tuesday you will have to wire me $1,000,000. So prey to God that doesn't happen…

-   August 3, 2018, text message from Arihay to Plaintiff threatening that if Chalamo does not pay Arihay 10 million dollars,  Arihay "will call his men in Russian police."

-   numerous threatening voicemail with expletives and sent other text messages with threats to Plaintiff and his sons in June – August 2018;

-   numerous other text messages with threats to Plaintiff in Moscow, including messages on June 9, July 3, July 12, July 27, July 28, August 3, August 5, August 6, and August 7, 2018;

-   an August 8, 2018 message from Arihay to Chalamo where Arihay sent Chalamo  in Moscow a YouTube video of an arrest by Russian police of a suspect.

c.   Numerous wires sent in furtherance of the fraudulent scheme, including:

-   On November 23, 2016, a wire transfer from Chalamo's bank account in

Russia to Arihay's wife account in the U.S. in the amount of $500,000 representing Chalamo's investment funds wired in reliance on Arihay's fraudulent representations;

- On December 6, 2016, a wire from Khanan in the amount of $90,000 to deposit to 911 Realty Chase Bank account representing Chalamo's investment funds;

- On December 6, 2016, a wire from Khanan in the amount of $220,000 to deposit to 911 Realty Chase Bank account representing Chalamo's investment funds.

160. **Bank Fraud, 18 U.S.C. § 1344:** The Bank Fraud Statute, 18 U.S.C. § 1344, prohibits a person from " obtain[ing] any of the moneys, funds, credits, assets, securities or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises."

161. In June, 2018, Arihay, traveled to Florida, where he, without authorization, made a series of withdrawals from the business account of 911 Realty in Chase Bank,  totaling $116,650 in funds, falsely representing to the bank that he was an authorized signatory on the account, when he was not, as follows:

- Fraudulent withdrawal of $110,000  in the form of Cashier's check for the benefit of Defendant A&E.R.E. Management on June 29, 2018;

- Fraudulent withdrawal of $3,000 falsely holding himself as representative of  911 Realty on June 29, 2018;

- Fraudulent withdrawal of $650 falsely holding himself as representative of  911 Realty on July 2, 2018.

162. **Money Laundering, 18 U.S.C. § 1956:** The money laundering statute 18 U.S.C. § 1956(a)(1) prohibits "conduct[ing] such a financial transaction which in fact involves the proceeds of specified unlawful activity . . . (A) (i) with the intent to promote the carrying on of specified unlawful activity; or . . . (B)(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity."

24

163.    Upon information and belief, during the relevant times Arihay used the proceeds derived from defrauding Plaintiff and other investors to invest in Corporate Defendants and other businesses  and to wire funds to places unknown with intent to conceal and disguise the nature and control of the money.

164.    **Transactions Involving Criminally-Derived Property, 18 U.S.C. § 1957:** The criminally-derived property statute 18 U.S.C. § 1957 prohibits "engag[ing] in a monetary transaction in criminally derived property of a value greater than $10,000 . . . derived from specified unlawful activity."

165.    In furtherance of the scheme to receive money from investors and engaging in financial transactions in criminally derived property of a value greater than $10,000, Arihay used the funds in the amount greater than $10,000 obtained by defrauding investors to invest in real estate and other businesses, to make personal withdrawals from the businesses.

166.    Upon information and belief, Defendants Bowman, ABZ and SBAGK profited from proceeds of the managing legal affairs of the Realty Companies Enterprise, including assisting with recording fraudulent deeds and receiving fraudulent commissions on the sale of the investment properties.

167.    **Travel Act, 18 U.S.C. §1952:** The fraudulent scheme included acts in violation of the Travel Act, including in interstate and foreign travel by Arihay in furtherance of fraud, including Arihay travelling from outside the United State to Russia in 2013 and between states in the United States, including Florida in June 2018 to further the Fraudulent scheme and obtain moneys from Plaintiff.

168.    **Interference with commerce by threats or violence, 18 U.S.C. §1951 (the "Hobbs Act"):** The fraudulent scheme included acts in violation of the Hobbs Act in furtherance

of the fraudulent scheme to defraud investors, affecting commerce, including numerous threats

by Arihay to Chalamo and his sons, as described above.

### CLAIMS FOR RELIEF

### COUNT I
### RICO – 18 U.S.C. § 1962(a)
### Using And Investing Income Derived From Racketeering
### PLAINTIFF v. ALL DEFENDANTS

169.   The allegations of the above paragraphs are incorporated herein as if set out in

full.

170.    Defendants received income derived, directly or indirectly, from a pattern of

racketeering activity affecting interstate and foreign commerce.

171.   Defendants derived this income by defrauding investors, which was achieved by a

pattern of racketeering activity, including the violations of 18 U.S.C. § 1343 (wire fraud); 18

U.S.C. § 1344 (bank fraud); 18 U.S.C. § 1956 (money laundering); 18 U.S.C. § 1957 (engaging

in monetary transactions in property derived from unlawful activity); 18 U.S.C. § 1952 (Travel

Act); 18 U.S.C. §1951 (interference with commerce by threats or violence).

172.   Plaintiff was directly and proximately harmed by these financial losses caused by

the pattern of racketeering activity, including the predicate acts described above.

173.   Plaintiff is entitled to treble damages, attorney's fees and any other relief

applicable under 18 U.S.C. § 1962(a).

### COUNT II
### RICO – 18 U.S.C. § 1962(b)
### Acquisition of an "Interest in or Control of" an Enterprise
### PLAINTIFF v. ARIHAY, BOWMAN, ABZ and SBAGK

174.   The allegations of the above paragraphs are incorporated herein as if set out in

full.

175.     Defendant Arihay Kaikov through a pattern of racketeering activity, acquired and maintained, directly or indirectly, an interest and control of the Realty Companies Association-in-fact enterprise. These entities were engaged in activities that affect interstate and foreign commerce.

176.     Defendants Bowman, ABZ and SBAGK through a pattern of racketeering activity acquired, directly or indirectly, control over and interest in the Realty Companies association-in-fact enterprise.

177.     By gaining control over the enterprise, Arihay, Bowman, ABZ and SBAGK were able to direct their activities away from legitimate real estate businesses towards defrauding investors.

178.     The pattern of racketeering that enabled Arihay, Bowman, ABZ and SBAGK to direct their activities away from legitimate real estate businesses towards defrauding investors included a pattern of racketeering activity, including the violations of 18 U.S.C. § 1343 (wire fraud); 18 U.S.C. § 1344 (bank fraud); 18 U.S.C. § 1956 (money laundering); 18 U.S.C. § 1957 (engaging in monetary transactions in property derived from unlawful activity); 18 U.S.C. § 1952 (Travel Act); 18 U.S.C. §1951 (interference with commerce by threats or violence).

179.     Plaintiff was directly and proximately harmed by the financial losses caused by the Defendants taking over the control of the enterprise.

180.     Plaintiff is entitled to treble damages, attorney's fees and any other relief applicable under 18 U.S.C. § 1962(b).

**COUNT III**
**RICO – 18 U.S.C. § 1962(c)**
**Employment Or Association With An Enterprise Engaged In Racketeering**
**PLAINTIFF v. ARIHAY, BOWMAN, ABZ and SBAGK**

181.     The allegations of the above paragraphs are incorporated herein as if set out in

full.

182.     Arihay, Bowman, ABZ and SBAGK were employed by and associated with Realty Companies Enterprise, which engaged in activities that affect interstate and foreign commerce.

183.     They conducted and participated in, directly or indirectly, the conduct of Realty Companies Enterprise, through a pattern of racketeering activity, including facilitating the predicate acts described above.

184.     The pattern of racketeering activity includes two or more related predicate acts, described above, committed within a six year period in regard to the fraudulent scheme.

185.     Plaintiff was directly and proximately harmed by the financial losses caused by the pattern of racketeering activity, including the predicate acts described above.

186.     Plaintiff is entitled to treble damages, attorney's fees and any other relief applicable under 18 U.S.C. § 1962(c).

**COUNT IV**
**RICO – 18 U.S.C. § 1962(d)**
**Conspiracy To Commit RICO Violations**
**PLAINTIFF v. ARIHAY and BOWMAN**

187.     The allegations of the above paragraphs are incorporated herein as if set out in full.

188.     Arihay and Bowman conspired to commit violations of 18 U.S.C. § 1962 (a), (b), and (c) described above; take control over the enterprises and to invest the resulting income in violation of 18 U.S.C. § 1962 (a) and (b) and agreed to commit two or more related predicate acts of racketeering in an eight year period in the course of operating the RICO Enterprise, including the numerous predicate acts set forth above.

189.     Plaintiff was directly and proximately harmed by the financial losses caused by

the pattern of racketeering activity, including the predicate acts described above.

190.    Plaintiffs is entitled to treble damages, attorney's fees and any other relief applicable under 18 U.S.C. § 1962(d).

**COUNT V**
**Common Law Fraud**
**PLAINTIFF v. ALL DEFENDANTS**

191.    The allegations of the above paragraphs are incorporated herein as if set out in full.

192.    Defendants made numerous material misrepresentations to Plaintiff regarding their  intention to form a joint venture and to acquire and sell real property returning investment and profits to Plaintiff knowing them to be false and Plaintiff relied on these misrepresentations by providing investment funds to Defendants to purchase real estate properties.

193.    Defendants failed to transfer deeds to the Investment Properties to 911 Realty and Defendans Bowman, ABZ and SBAGK knowingly assisted Airhay and the Corporate Defendants transferring and recording the deeds to the Investment Properties to Corporate Defendants, controlled by Arihay.

194.    Arihay took monies provided by Plaintiff and fraudulently diverted them to the Corporate Defendants, Bowman, ABZ and SBAGK.

195.    Defendants representations were made with the purpose of defrauding Plaintiff and inducing Plaintiff to providing monies.

196.    Plaintiff relied upon the Defendants false representations to his detriment.

**COUNT VI**
**Unjust Enrichment**
**PLAINTIFF v. ALL DEFENDANTS**

197.    The allegations of the above paragraphs are incorporated herein as if set out in

full.

198.    Defendants have been enriched at the expense of the Plaintiff and it would be grossly unfair and unjust to allow the Defendants to retain and continue to co-mingle funds form the profits that were supposed to be earmarked for the Plaintiff.

199.    As a result of the forgoing the Plaintiff has suffered and will continue to suffer damages.

## COUNT VII
### Civil Conspiracy to Commit Tort
### PLAINTIFF v. ALL DEFENDANTS

200.    The allegations of the above paragraphs are incorporated herein as if set out in full.

201.    Defendants made concerted actions acting for a common goal to defraud Plaintiff.

202.    Each and every member of the conspiracy is equally and vicariously liable for damages caused to Plaintiff by Defendants' misrepresentations.

203.    The conduct of Defendants was willful, wanton, intentional, malicious and reckless. Plaintiffs are entitled to punitive damages.

## COUNT VIII
### Conversion
### PLAINTIFF v. ALL DEFENDANTS

204.    The allegations of the above paragraphs are incorporated herein as if set out in full.

205.    Plaintiff has clear, legal ownership and rights to the possession of the monies that the Defendants used, inter alia, to acquire real property.

206.    Furthermore, the Plaintiff has a clear, legal ownership and rights to possession of the real property acquired by and through the Defendants and his agents intended to divert and

deprive the Plaintiff his rightful profit gains.

207.    As a direct result of Defendants' acts of conversion Plaintiff has suffered and will continue to suffer damages.

## COUNT IX
### Piercing the Corporate Veil
### PLAINTIFF v. DEFENDANTS PACIFIC 2340, ROYAL A&K, A&E.R.E. MANAGEMENT, NY PRIME, and AG REALTY

208.    The allegations of the above paragraphs are incorporated herein as if set out in full.

209.    As described in detail throughout this Complaint, Arihay, as owner of Defendants Pacific 2340, Royal A&K, A&E.R.E. Management, NY Prime, and AG Realty exercises complete dominion and control over the Corporate Defendants.

210.    The relationship between Arihay and the Corporate Defendants is such that Arihay uses the corporations as  his alter egos for his own purposes.

211.    The control by Arihay over the Corporate Defendants is so complete and extensive that they made all the decisions including the decisions to defraud Plaintiff and accept deeds to the Investment Properties, which were supposed to be transferred to 911 Realty.

212.    As a direct and proximate cause of Arihay's control over the Corporate Defendants, Plaintiff suffered damages.

## COUNT X
### Vicarious Liability
### PLAINTIFF v. ABZ and SBAGK

213.    The allegations of the above paragraphs are incorporated herein as if set out in full.

214.    At all relevant times, ABZ and SBAGK was and is responsible for the actions of its employee, representative and/or agent, Bowman, under the principle of vicarious liability.

215.     Bowman, ABZ and SBAGK are vicariously liable for the fraudulent conduct of Defendant Arihay.

216.     In light of the position and authority of Bowman, ABZ and SBAGK, Arihay's actions are imputed on Bowman, ABZ and SBAGK.

217.     Upon information and belief Bowman, ABZ, SBAGK and Arihay jointly and severally conspired to defraud  Plaintiff out of profits for the sale of properties acquired through the use of monies fraudulently obtained  from Plaintiff.

218.     Upon information and belief, Bowman, ABZ and SBAGK engaged in misconduct by adopting, approving the illegal conduct of  Arihay by taking a ten (10%) percent commission fee at the sale of Plaintiffs properties, without the permission or knowledge of the Plaintiff and assisting Arihay to fraudulently transfer certain deeds to the Investment Properties  to the Corporate Defendants.

219.      As a result, Bowman, ABZ and SBAGK are vicariously liable for the damage and injury sustained by Plaintiff.

220.     As a direct result of Bowman, ABZ and SBAGK's acts, Plaintiff has suffered and will continue to suffer damages.

**COUNT XI**
**Imposition Of Constructive Trust And Injunctive Relief**
**PLAINTIFF v. ALL DEFENDANTS**

221.     The allegations of the above paragraphs are incorporated herein as if set out in full.

222.     Defendants owed fiduciary duties to Plaintiff including a duty of good faith and fair dealing.

223.     As detailed above, Defendants breached their fiduciary duties by conceiving and

implementing a scheme to fraudulently induce Chalamo to make investments in the real property without intention to return any monies to Plaintiff.

224.     These acts were taken in bad faith and contrary to the best interest of Plaintiff.

225.     As a result, Plaintiff is entitled to writs of attachment and imposition of a constructive trust on all monies transferred to the Defendants' accounts.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff Chalamo Kaikov respectfully request that the Court enter judgment against Defendants:

a.     Finding that Defendants' conduct violates RICO 18 U.S.C. § 1962 and that Plaintiff was injured by this conduct;

b.     Finding that Defendants' conduct constitutes common law fraud, unjust enrichment, conspiracy to commit tort, conversion, and vicarious liability; that Defendants were unjustly enriched and should disgorge profits; and that the Defendants' conduct justifies piercing of the corporate veil for Defendants Pacific 2340, Royal A&K, A&E.R.E. Management, NY Prime, and AG Realty;

c.     Awarding equitable relief requiring Defendants disgorge and pay back all sums they have collected from Plaintiff;

d.     Ordering Defendants to provide an accounting of all profits incurred from use of Plaintiff's monies, including fees and interest;

e.     Awarding actual, nominal, punitive, compensatory, and consequential damages in the amount to be proved at trial;

f.     Ordering attachment and imposition of constructive trust upon the property, assets, and monies of Defendants;

g.       Ordering trebling of damages and attorney fees under RICO;

h.       Awarding pre-judgment and post-judgment interest; and

i.       Awarding such other relief as the Court deems just and proper.

### JURY TRIAL DEMANDED

Plaintiff requests this case to be tried by jury on all issues triable.

### DESIGNATION OF TRIAL COUNSEL

Maria Temkin, Esq. is hereby designated as trial counsel in this matter.

Respectfully submitted,

Dated: September 6, 2019                    TEMKIN & ASSOCIATES, LLC

Maria Temkin, Esq. (*pro hac vice*)
1700 Market Street, Suite 1005
Philadelphia, PA 19103
Tel.  (215) 939-4181
maria@temkinlegal.com

*Attorneys for Plaintiff Chalamo Kaikov*

## CERTIFICATE OF SERVICE

I certify that on this 6th day of September, 2019, I served a copy of Plaintiff's First Amended Complaint, via ECF filing on all parties of record as follows:

Charles Horn, Esq.
Daniel S. Hallak, Esq.
THE RUSSELL FRIEDMAN LAW GROUP, LLP
3000 Marcus Avenue, Suite 2E03
Lake Success, New York 11042
dhallak@rfriedmanlaw.com
chorn@rfriedmanlaw.com
*Attorneys for Defendants Arihay Kaikov, Pacific
2340 Corp., Royal A&K Realty Group, Inc.,
A&E.R.E. Management Corp., NY Prime Holding,
LLC and AG Realty Bronx Corp.*

Alex Kadochnikov, Esq.
Andreas E. Christou, Esq.
SHIRYAK, BOWMAN, ANDERSON, GILL & KADOCHNIKOV, LLP
80-02 Kew Gardens Road, Suite 600
Kew Gardens, NY 11415
akadochnikov@sbagk.com
achristou@abzlaw.com
*Attorneys for Defendants Dustin Bowman and
Shiryak, Bowman, Anderson, Gill & Kadochnikov, LLP*

Dated: September 6, 2019                    TEMKIN & ASSOCIATES, LLC

Maria Temkin, Esq. (*pro hac vice*)
1700 Market Street, Suite 1005
Philadelphia, PA 19103
Tel. (215) 939-4181
maria@temkinlegal.com

*Attorneys for Plaintiff Chalamo Kaikov*