**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

**CHALAMO KAIKOV,**                                          19-cv-2521-JBW-RER

                    **Plaintiff,**

      **-against-**

**ARIHAY KAIKOV, DUSTIN BOWMAN,**
**ANDERSON, BOWMAN & ZALEWSKI PLLC,**
**SHIRYAK BOWMAN, ANDERSON, GILL &**
**KADOCHNIKOV LLP, PACIFIC 2340 CORP.,**
**ROYAL A&K REALTY GROUP INC., A&E.R.E.**
**MANAGEMENT CORP., NY PRIME HOLDING**
**LLC, AG REALTY BRONX CORP., JOHN and**
**JANE DOE 1-19 and XYZ CORPORATION 1-10,**

                  **Defendants,**
-------------------------------------------------------------------X

## PLAINTIFF CHALAMO KAIKOV'S OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

Dated: <u>November 25, 2019</u>

           TEMKIN & ASSOCIATES, LLC
           Maria Temkin, Esq. (*pro hac vice*)
           1700 Market Street, Suite 1005
           Philadelphia, PA 19103
           Tel.  (215) 939-4181
           maria@temkinlegal.com

           *Attorneys for Plaintiff Chalamo Kaikov*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ i

PRELIMINARY STATEMENT ........................................................................................1

FACTUAL ALLEGATIONS OF THE FIRST AMENDED COMPLAINT ..................................1

      A.     Arihay Entices Chalamo To Enter Into A Joint Real Estate Venture ....................1

      B.     Discussions Between Chalamo And Arihay In April 2014 ...................................3

      C.     Chalamo's Visit To New York In November 2016 ................................................4

      D.     Defendants' Fraudulent Conduct Between December 2016 And 2018.................6

      E.     Continuation of Defendants' Fraudulent Scheme..................................................11

      F.     Defendants' Other Victims .................................................................................13

      G.     Predicate Acts of Racketeering..........................................................................13

STANDARD OF REVIEW ...........................................................................................16

ARGUMENT ...............................................................................................................17

    I.     MOTION TO DISMISS BASED ON THE STATUTE OF FRAUDS DEFENSE
          SHOULD BE DENIED ............................................................................................17

    II.    MOTION TO DISMISS CLAIMS AGAINST DEFENDANT SBAGK PREMISED
          ON THE THEORY OF SUCCESSOR LIABILITY SHOULD BE DENIED............18

    III.   COUNTS I-IV ADEQUATELY ALLEGE RICO CLAIMS ......................................20

      A.  PLAINTIFF'S RICO CLAIMS ARE NOT BARRED BY THE STATUTE OF
          LIMITATIONS....................................................................................................20

      B.  PLAINTIFF HAS STANDING TO PURSUE RICO CLAIMS ...........................22

      C.  THE ALLEGATIONS ARE SUFFICIENT UNDER RULES 8 AND 9(b) ...........................24

      D.  PLAINTIFF ADEQUATELY ALLEGES CONTINUITY ..................................26

i

E.   PLAINTIFF ADEQUATELY PLEADED THAT THE LAW FIRM DEFENDANTS PARTICIPATED IN THE "OPERATION OR MANAGEMENT" OF THE RICO ENTERPRISE ........................................................................31

F.   PLAINTIFF ADEQUATELY ALLEGES A RICO CLAIM UNDER 18 U.S.C. §1962(a) (COUNT I) ....................................................................................33

G.   PLAINTIFF ADEQUATELY ALLEGES A RICO CLAIM UNDER 18 U.S.C. §1962(b) (COUNT II) ...................................................................................33

H.   PLAINTIFF ADEQUATELY ALLEGES A RICO CLAIM UNDER 18 U.S.C. §1962(c) (COUNT III)...................................................................................35

I.   PLAINTIFF ADEQUATELY ALLEGES A RICO CLAIM UNDER 18 U.S.C. §1962(d) (COUNT IV) ....................................................................................37

IV.   DEFENDANTS' MOTION TO DISMISS STATE LAW CLAIMS SHOULD BE DENIED.........................................................................................................39

A.   THE COURT HAS INDEPENDENT DIVERSITY JURISDICTION OVER STATE LAW CLAIMS ....................................................................................................39

B.   PLAINTIFF STATED A CLAIM FOR COMMON LAW FRAUD (COUNT V) ....................39

C.   PLAINTIFF STATED A CLAIM FOR UNJUST ENRICHMENT (COUNT VI) ....................42

D.   PLAINTIFF STATED A CLAIM FOR CIVIL CONSPIRACY TO COMMIT TORT (COUNT VII)............................................................................................................42

E.   PLAINTIFF STATED A CLAIM FOR CONVERSION (COUNT VIII)................................43

F.   PLAINTIFF STATED A CLAIM FOR PIERCING THE CORPORATE VEIL AGAINST THE KAIKOV CORPORATE DEFENDANTS (COUNT IX) ....................................................44

G.   PLAINTIFF STATED A CLAIM FOR IMPOSITION OF CONSTRUCTIVE TRUST AND INJUNCTIVE RELIEF (COUNT XI)...................................................................45

CONCLUSION......................................................................................................46

CERTIFICATE OF SERVICE ..............................................................................47

## PRELIMINARY STATEMENT

Defendants moved to dismiss Plaintiff's RICO and state law claims. Because Defendants' motions make almost verbatum identical arguments, Plaintiff files this Omnibus Opposition to Defendants' Motions instantly.

First, Plaintiff properly alleged claims in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*., stemming from an ongoing fraudulent racketeering scheme conducted through various enterprises, the purpose of which was to defraud investors through a series of fraudulent real estate deals masterminded and operated by Arihay Kaikov, who pretending to have significant experience in real estate development, induced investors, including Plaintiff, to contribute hundreds of thousands of dollars to purchase and renovate foreclosed properties promising the return of over 300% on their investment.

Second, Defendants' challenge to Plaintiff's non-federal claims, over which the Court has original diversity jurisdiction, is equally meritless. Plaintiff properly alleged claims of, inter alia, fraud, conversion, and, in the alternative, unjust enrichment, stemming from Defendants' illegal diversion of Plaintiff's moneys.

## FACTUAL ALLEGATIONS IN THE FIRST AMENDED COMPLAINT[1]

Plaintiff Chalamo Kaikov is a native and lifelong resident of Russia.  Defendant Arihay Kaikov is Chalamo's cousin and lives in New York.

**A.    Arihay Entices Chalamo to Enter into a Joint Real Estate Venture**

In December of 2012, Chalamo was visiting his son Khanan in New York when Arihay approached Chalamo to discuss a potential business venture.  Arihay represented that he had significant experience in purchasing foreclosed properties in Brooklyn and renovating,  managing,

---

[1] The First Amended Complaint, Docket No. 20,  is hereafter referred to as "FAC."

and selling them for profit.  Arihay told Chalamo that he had been successful in his previous real estate projects and had a trusted team of contractors and lawyers, including attorney Dustin Bowman and his law firm Anderson, Bowman & Zalewski PLLC ("ABZ"), later merged into Shiryak, Bowman Anderson, Gill & Kadochnikov LLP ("SBAGK") (separately and collectively, the "Law Firm Defendants").[2]  Arihay represented by using his team of lawyers and contractors, the joint venture will save on renovation expenses and legal fees.

Arihay promised that he will personally manage the joint venture, locate and acquire the properties, keep Chalamo appraised about the properties and renovation progress, and account for all expenditures.  Arihay represented to Chalamo that they would be equally responsible for all capital obligations to acquire and manage the investment properties and share equally in any profits from the sale of the renovated properties.  Arihay further represented that their joint venture would be extremely beneficial to Chalamo and would turn up quick profits of at least 200% to 300%.  Arihay surmised that an ownership interest in an informal joint venture would be more enticing to Chalamo and suggest higher illusory profits than a loan with set terms which would have to be set in writing and repaid by Arihay.  Arihay did not want to put anything in writing as he never intended to return any "investments" to Chalamo.

Arihay told Chalamo that Chalamo had to decide quickly, as Arihay purportedly had other interested investors.  Chalamo found Arihay's proposal attractive because of its promised high returns,  because Chalamo perceived investment in real estate to be safe, and because it would not require his involvement in locating investment properties, day-to-day management of renovations, or handling lengthy legal wranglings.  Arihay's representations and the fact that he was his cousin,

---

[2] SBGK is a successor in interest to ABZ by merger or reorganization.  *See* FAC, ¶ 14.

convinced Chalamo that Arihay could be trusted to deal fairly and honestly in the proposed joint venture.

Relying on Arihay's representation, Chalamo invested $100,000 in the joint venture on the terms proposed by Arihay (the "Initial Investment").  Sometime in 2013, Arihay informed Chalamo that the Initial investment returned a profit of $100,000 and that Chalamo should re-invest it in order to continue making profit.  Although Arihay promised to identify specific properties purchased with the Initial Investment, as well as itemize expenses and costs, he did not do that at the time.  Arihay did not want to put anything in writing because he never intended to return money to Chalamo.

In October 2013, Arihay traveled to Moscow where he met with Chalamo.  There, he told Chalamo that the Initial Investment had returned additional profit of $100,000, making a total profit of $200,000.  Arihay did not disclose which properties returned profit but requested that Chalamo make an additional capital contribution of $200,000 to purchase more properties, promising returns in excess of $500,000 when the properties are sold.  Arihay disclosed purported profits to Chalamo in order to fraudulently induce Chalamo to make further investments.  Based on Arihay's representations at the Moscow meeting, Chalamo invested additional $200,000 to the joint venture on the same terms, *i.e.* Arihay would identify investment opportunities and handle all necessary arrangements, the parties would contribute equally to renovation expenses, and will split any profits equally.

## B.    Discussions between Chalamo and Arihay in April 2014

In the beginning of 2014, Chalamo and Arihay had numerous telephone conversations where Chalamo requested Arihay to identify properties in which money were invested and explain

when profits can be distributed.  Arihay continued to refuse to provide any information related to the properties or alleged profits Arihay claimed were generated in 2013.

As Chalamo no longer felt comfortable operating on an informal verbal agreement, he requested that some formal relationship be established.  In order to fraudulently induce Chalamo to make additional investments and delay repayment of existing investments, Arihay agreed to form a joint corporation with Chalamo, where they would be *de facto* 50-50 % owners, and which would hold the tiles and/or deeds for the Investment Properties and account for joint investments and expenses.  It was also agreed that Chalamo's son Khanan, who lives in New York, would hold a position of the corporation's president and at all times act as Chalamo's agent and on Chalamo's behalf.  The corporation, called 911 Realty Corp., was opened on April 29, 2014.

In May 2015, in reliance on Arihay's promises, Chalamo provided another $100,000 to Arihay as a further investment into the joint venture.  However, for the next two years Arihay refused to transfer any titles to the investment properties to 911 Realty claiming that the properties were subject to ongoing litigations to clear titles.  As Chalamo found out later, the titles and/or deeds for the properties purchased with Chalamo's investments were owned by Defendants Pacific 2340 Corp., Royal A&K Realty Group Inc., A&E.R.E. Management Corp., NY Prime Holding LLC, AG Realty Bronx Corp. (the "Corporate Defendants") and possibly other entities, which were solely under control and management of Arihay.

**C.    Chalamo's Visit to New York in November 2016**

In November 2016, Chalamo came to New York and met with Arihay to discuss the return of his investment.  In order to delay payment of the invested funds, Arihay finally agreed to provide a list of Investment Properties subject to the joint agreement.  The following real were identified by Arihay:

4

- 567 Jerome Street, Brooklyn, New York 11207;

- 317 East 31st Street, Brooklyn 11226;

- 118-36 219th Street, Jamaica, New York 11411;

- 118-26 220th Street, Jamaica, New York 11411;

- 909 Elton Street, Brooklyn, New York 11208;

- 280 West 127th Street, New York, New York 10027;

- 844 Herkimer Street, Brooklyn, New York 11233;

- 243 Buttrick Avenue, Bronx, New York 10465;

- 905 Mother Gaston Boulevard, Brooklyn, New York 11212;

- 406 East 94th Street, Brooklyn, New York 11212.

During the meeting, also attended by Chalamo's sons Khanan and Ariel, brother Rakhmine, and sister-in-law Elena, the parties made notes reflecting Arihay's representations of how much was already invested in each property, and what anticipated expenses and resale value would be. Arihay also confirmed the addresses of properties in a series of texts sent to Khanan on November 10 and 11, 2016. The parties even visited some of the properties. The parties again agreed that all titles and/or deeds for the invested properties would be immediately transferred to 911 Realty for joint ownership.

The parties then opened a bank account for 911 Realty, which was used by Arihay to pay sometimes inflated expenses for renovating properties. Khanan was to be a signatory on the account on behalf of Chalamo. Arihay also explained that further investment was needed in order to pay for renovation of the Investment Properties.

In reliance on Arihay's representations and convinced that he was now a 50% owner of ten identified Investment Properties, Chalamo agreed to invest additional funds in the joint venture.

5

On November 23, 2016, Chalamo made a wire transfer from his bank in Russia in the amount of $500,000 to Arihay's wife's U.S. bank account. The funds were intended to be invested in 911 Realty to cover expenses for, inter alia, renovation of the ten identified Investment Properties. Arihay subsequently transferred deeds for only two out of ten Investment Properties to 911 Realty, in violation of the agreement. Arihay never intended to return the invested money to Chalamo.

**D.      Defendants' Fraudulent Conduct between December 2016 and 2018**

From December 2016 through part of 2018, Arihay used 911 Realty's bank account to pay renovation expenses for the Investment Properties. Most of the funds required for renovations were provided on "as needed" basis by Chalamo. Khanan managed day-to-day operations of 911 Realty, its bank account and kept accounting of Chalamo's investments on Chalamo's behalf.

**a.      The 406 East 94 Street Investment Property.**

Pursuant to the joint venture agreement, Chalamo provided $364,000 in funds for the purchase and renovation and other expenses for the real property located at 406 East 94th Street, Brooklyn, New York 11212 75. Pursuant to the agreement, Arihay transferred the deed to the property from Defendant NY Prime on December 9, 2016. Arihay provided $90,000 in funds for purchase and renovation, which was far less than 50% that the parties had agreed upon.

Arihay used his own contractors for renovations and fraudulently claimed that renovation expenses were much higher than what had actually been spent in order for Plaintiff to provide funds that Arihay then converted for his own profit. For example, Arihay fraudulently claimed that the deed was purchased for $50,000 while the records in the Office of the New York City Register reflect that the deed was purchased for $25,000. Unbeknownst to Plaintiff, at direction of Arihay, in March 2014, the deed was recorded in the name of Defendant NY Prime. On or about April 19, 2018, the 406 East 94th Street Property was sold with the knowledge and consent of the

Plaintiff for $990,000.   Arihay failed to pay Plaintiff his full share of profit on the 406 East 94th Street Property.

The Law Firm Defendants provided legal services to 911 Realty during the sale of the 406 East 94th Street Property and received ten percent (10%) from the profits of the sale. The Law Firm Defendants acted solely in the interests of Arihay during the sale transaction albeit they were representing 911 Realty.  The Law Firm Defendants also held the sum of $70,000.00 in the attorney escrow account to make outstanding payments for purported obligations owed by the 406 East 94th Street Property.  The Law Firm Defendants have failed to account for the monies held in the attorney escrow account and have conspired with Arihay to convert the money for their own profit.

**b.     The 243 Buttrick Avenue Investment Property**

Pursuant to the joint venture agreement and Arihay's representations, Arihay used portion of Chalamo's Investment Funds for the purchase and renovation and other expenses for the real property located at 243 Buttrick Avenue, Bronx, New York 10465.  Arihay used his own contractor for renovations and fraudulently claimed that renovation expenses were much higher than what had actually been spent in order for Plaintiff to provide funds that Arihay then converted for his own profit. Unbeknownst to Plaintiff, at direction of Arihay, in June 2015, the deed was recorded in the name of Defendant AG Realty.  The Law Firm Defendants assisted and conspired with Arihay to record the deed in the name of AG Realty when they knew that the deed was to be transferred to 911 Realty.

Despite his agreement with Chalamo, Arihay never transferred the deed to 911 Realty. According to public records, on or about January 31, 2017, Arihay sold the 243 Buttrick Avenue Property for $565,000.   Arihay claimed that Plaintiff was due approximately $159,000 from the sale, however, Plaintiff has no means of ascertaining the real amount.  Arihay failed to pay Plaintiff

his share of profit on 243 Buttrick Avenue Property and claimed that the money were reinvested in another property, 909 Elton St.

The Law Firm Defendants provided legal services to Arihay during the sale of the 243 Buttrick Avenue Property and received ten percent (10%) from the profits of the sale and have conspired with Arihay to convert the money for their own profit.

### c.    The 909 Elton Street Investment Property

Pursuant to the joint venture agreement, and based on Arihay's representations, $159,000 of Plaintiff's find were used for the purchase of the real property located at 909 Elton Street, Brooklyn, New York 11208.  Unbeknownst to Plaintiff, at direction of Arihay, in August 2013, the deed was recorded in the name of Defendant Royal A&K.  In order to divert the investment property from Plaintiff, in August 2017, Arihay fraudulently transferred the deed to AG Realty. The Law Firm Defendants assisted and conspired with Arihay to record the deed in the name of AG Realty when they knew that the deed was to be transferred to 911 Realty.

Despite his agreement with Chalamo, Arihay never transferred the deed to 911 Realty. According to public records, on or about April 19, 2018, Arihay sold the 909 Elton Street Property without the knowledge and consent of the Plaintiff for $625,000.  Pursuant to the Agreement, Plaintiff was due $337,500 from the sale.  Arihay failed to pay Plaintiff his share of profit on 909 Elton Street Property.

The Law Firm Defendants provided legal services to Arihay during the sale of the 909 Elton Street Property and received ten percent (10%) from the profits of the sale.  The Law Firm Defendants conspired with Arihay to fraudulently divert the deed to the property from Plaintiff and convert the money for their own profit.

### d.    The 118-36 219th Street Investment Property

8

Pursuant to the joint venture agreement, Plaintiff provided $85,000 in funds for renovation and other expenses for the real property located at 118-36 219th Street, Jamaica, New York 11411. Plaintiff also believes that $50,000 of the investment funds were used by Arihay to purchase the deed for the property.  Plaintiff has no means to find out whether Arihay had provided his share of the funds.  Arihay used his own contractor for renovations and fraudulently claimed that renovation expenses were much higher than what had actually been spent in order for Plaintiff to provide funds that Arihay then converted for his own profit.

Unbeknownst to Plaintiff, at direction of Arihay, in July 2013, the deed was recorded in the name of Defendant Royal A&K.  In order to divert the investment property from Plaintiff, in September 2016, Arihay fraudulently transferred the deed to Pacific 2340.  The Law Firm Defendants assisted and conspired with Arihay to fraudulently transfer and record the deed in the name of Defendant Pacific 2340 when they knew that the deed was to be transferred to 911 Realty.

Despite his agreement with Chalamo, Arihay never transferred the deed to 911 Realty. According to public records, on or about August 25, 2018, without the knowledge and consent of the Plaintiff, Arihay sold the 118-36 219th Street Property for $572,000.  Arihay failed to pay Plaintiff his full share of profit on the 118-36 219th Street Property and repay Plaintiff's expenses for renovations of the 118-36 219th Street Property.

The Law Firm Defendants provided legal services to Arihay during the sale of the 118-36 219th Street Property and received ten percent (10%) from the profits of the sale.  The Law Firm Defendants knew that Plaintiff through 911 Realty had interest in the 118-36 219th Street Property and conspired with Arihay to convert the money for their own profit.

### e.    The 844 Herkimer Street Investment Property

Pursuant to the joint venture agreement, Plaintiff provided $70,000 in funds for renovation and other expenses for the real property located at 844 Herkimer Street, Brooklyn, New York 11233.  Plaintiff also believes that $50,000 of the investment funds were used by Arihay to purchase the deed for the property.  Plaintiff has no means to check whether Arihay had provided his share of the funds.  Arihay used his own contractor for renovations and fraudulently claimed that renovation expenses were much higher than what had actually been spent in order for Plaintiff to provide funds that Arihay then converted for his own profit.

Unbeknownst to Plaintiff, at direction of Arihay, in December 2013, the deed was recorded in the name of Defendant A&ERE.   The Law Firm Defendants assisted and conspired with Arihay to record the deed in the name of Defendant A&ERE when they knew that the deed was to be transferred to 911 Realty.

Despite his agreement with Chalamo, Arihay never transferred the deed to 911 Realty. Plaintiff has no access to the property and believes that Arihay will fraudulently divert monies from the sale.

### f.     Other Investment Properties

The only other property that Arihay also transferred the deed to 911 Realty was 905 Mother Gaston Boulevard, Brooklyn, New York 11212 on December 6, 2016. However, on July 3, 2018, Arihay caused to incorporate company Mother Gaston Corp. and proceeded to fraudulently transfer the deed to the Mother Gaston Property from 911 Realty, without authorization or authority to do so. The ownership to the title is currently subject to a lawsuit pending before the County of Kings Supreme Court of New York.  Despite his agreement with Chalamo, Arihay never transferred the deeds to the four remaining identified properties to 911 Realty:

- real property located at 567 Jerome Street, Brooklyn, New York 11207;

10

- real property located at 317 East 31st Street, Brooklyn 11226;

- real property located at 118-26 220th Street, Jamaica, New York 11411;

- real property located at 280 West 127th Street, New York, New York 10027. 129.

Plaintiff has no access to these four properties and believes that Arihay will fraudulently divert monies from the sale.  In April 2019, 911 Realty filed two lawsuits in the state courts of New York against Arihay and certain corporate Defendants seeking transfer of titles to 317 East 31st Street and 844 Herkimer Street properties to 911 Realty. As of the date of this Amended Complaint, the lawsuits are pending.

### E.      Continuation of Defendants' Fraudulent Scheme

Sometime in May of 2018, Chalamo confronted Arihay regarding transferring the remaining property titles to 911 Realty or returning investment funds. When confronted by Plaintiff, Arihay reneged on his promises and made threats to Plaintiff and his sons, including threatening putting his sons in jail.  For example, during the summer of 2018, Arihay made numerous phone calls and sent numerous text messages via WhatsApp to Plaintiff in Moscow, including a message on July 3, 2018, stating  as follows:

> If there is one more attempt to harm me I will get so scared that I will f* you up! Or will bar you entry to the USA. Or your eagles will be held up by my men.  If my accounts are not unfrozen by Monday, then on Tuesday you will have to wire me $1,000,000. So prey to God that doesn't happen…

On August 3, 2018, Arihay sent a message to Plaintiff threatening that if Chalamo does not pay Arihay $10 million, Arihay "will call his men in Russian police."  Arihay also left numerous threatening voicemails with expletives and sent other text messages with threats to Plaintiff in Moscow, including messages on June 9, July 3, July 12, July 27, July 28, August 3, August 5, August 6, and August 7, 2018.

11

On August 8, 2018, Arihay sent Chalamo in Moscow a YouTube video depicting of a suspect  by Russian police.  The video was sent as a threat in order to prevent Chalamo from seeking return of his invested funds. Arihay also opened an account in the name of 911 Realty in TD Bank, where he was a sole signatory, in order to fraudulently conceal any profits obtained from the joint investments.  In June, 2018, Arihay traveled to Florida, where he made a series of unauthorized withdrawals from the business account of 911 Realty in Chase Bank totaling $116,650, falsely representing to the bank that he was an authorized signatory on the account, when he was not, as follows:

- Fraudulent withdrawal of $110,000  in the form of Cashier's check for the benefit of Defendant A&E.R.E. Management on June 29, 2018;

- Fraudulent withdrawal of $3,000 falsely holding himself as representative of  911 Realty on June 29, 2018;

- Fraudulent withdrawal of $650 falsely holding himself as representative of  911 Realty on July 2, 2018.

These monies belong to Plaintiff and represented partial profit from Plaintiff's  investment in the 406 East 94th Street Property received at closing in April 2018.

On July 3, 2018, Arihay caused to incorporate a company Mother Gaston Corp. and proceeded to fraudulently transfer the deed to the Mother Gaston Property from 911 Realty, without authorization or authority to do so. On September 12, 2018, in order to further deter Plaintiff from claiming return of the investment, Arihay filed a fraudulent lawsuit against Khanan, falsely accusing  him of diverting money from sale of the 406 East 94th Street Property to his own personal accounts, all while knowing that these allegedly stolen money belonged to Plaintiff.  The Law Firm Defendants knew that claims against Khanan had no factual or evidential support but

12

acted as attorneys of record in the interest of Arihay in order to assist him to deter Chalamo from claiming return of the investment.

## F.    Defendants' Other Victims

From 2012, Arihay ran a similar fraudulent scheme on a number of other investors. For example, in a lawsuit filed on September 7, 2018, in the Supreme Court of the State of New York, County of Nassau, Index No. 612149/2018, Plaintiff Ralph Faziyev alleges that Arihay entered into agreement with Faziyev, where Faziyev invested $300,000 in joint venture to acquire, renovate, and sell properties for profit.  Based on the allegations, Arihay fraudulently diverted Faziyev's money to his own corporations without any intention of repayment. Upon information and belief, Arihay has defrauded other investors as well. For example, Arihay recently solicited another potential investor, Alex Goryunov to invest money in a real estate in Miami. Arihay was attempting to solicit $20 million claiming that the property is worth $53 million.  Upon information and belief, Arihay continues the scheme now to defraud other investors forming  new "joint venture" companies, yet unknown to Plaintiffs.

## G.    Predicate Acts of Racketeering

Defendants' fraudulent scheme was effected by a pattern of related acts of wire fraud, money laundering, illegal transactions in monetary instruments, and interstate and foreign travel in aid of racketeering (collectively, the "Predicate Acts") which were agreed upon and coordinated among the Defendants as part of the conspiracy among Defendants to effect the fraudulent scheme. Each of the Defendants knowingly participated in the formation of the fraudulent scheme with one or more defendants and willingly participated by knowingly and intelligently carrying out the Predicate Acts.  Based on the nature of the fraudulent scheme, some of the details of the Defendants' wrongdoing are exclusively within the possession of the Defendants, preventing

13

Plaintiff from pleading certain acts with greater particularity in the Amended Complaint.

**Wire Fraud**.  Each of the below acts was done in furtherance of the scheme to receive money from Plaintiff and used, or caused the use of, the United States wires:

    a.    Numerous phone calls between Arihay in U.S. and Chalamo in Moscow between 2012 and 2018;

    b.    Numerous text messages between Arihay and Chalamo between 2012 and 2018, including:

        (1)    July 3, 2018 text message from Arihay to Chalamo stating:

> If there is one more attempt to harm me I will get so scared that I will f* you up! Or will bar you entry to the USA. Or your eagles will be held up by my men.  If my accounts are not unfrozen by Monday, then on Tuesday you will have to wire me $1,000,000. So prey to God that doesn't happen…

        (2)    August 3, 2018, text message from Arihay to Plaintiff threatening that if Chalamo does not pay Arihay 10 million dollars,  Arihay "will call his men in Russian police."

        (3)    Numerous threatening voicemail with expletives and sent other text messages with threats to Plaintiff and his sons in June – August 2018;

        (4)    Numerous other text messages with threats to Plaintiff in Moscow, including messages on June 9, July 3, July 12, July 27, July 28, August 3, August 5, August 6, and August 7, 2018;

        (5)    an August 8, 2018 message from Arihay to Chalamo where Arihay sent Chalamo  in Moscow a YouTube video of an arrest by Russian police of a suspect.

    c.    Numerous wires sent in furtherance of the fraudulent scheme, including:

        (1)    On November 23, 2016, a wire transfer from Chalamo's bank account in Russia to Arihay's wife account in the U.S. in the amount of $500,000 representing Chalamo's investment funds wired in reliance on Arihay's fraudulent representations;

        (2)    On December 6, 2016, a wire  from Khanan in the amount of $90,000 to deposit to 911 Realty Chase Bank account representing Chalamo's investment funds;

        (3)    On December 6, 2016, a wire from Khanan in the amount of $220,000 to deposit to 911 Realty Chase Bank account representing Chalamo's investment funds.

**Bank Fraud**.  In June 2018, Arihay, traveled to Florida, where he, without authorization, made a series of withdrawals from the business account of 911 Realty in Chase Bank,  totaling

$116,650, falsely representing to the bank that he was an authorized signatory on the account, when he was not, as follows:

a.   Fraudulent withdrawal of $110,000  in the form of Cashier's check for the benefit of Defendant A&E.R.E. Management on June 29, 2018;
b.   Fraudulent withdrawal of $3,000 falsely holding himself as representative of  911 Realty on June 29, 2018;
c.   Fraudulent withdrawal of $650 falsely holding himself as representative of  911 Realty on July 2, 2018.

**Money Laundering.**  During the relevant times Arihay used the proceeds derived from defrauding Plaintiff and other investors to invest in Corporate Defendants and other businesses and to wire funds to places unknown with intent to conceal and disguise the nature and control of the money.

**Transactions Involving Criminally-Derived Property.**  In furtherance of the scheme to receive money from investors and engaging in financial transactions in criminally derived property of a value greater than $10,000, Arihay used the funds in the amount greater than $10,000 obtained by defrauding investors to invest in real estate and other businesses, to make personal withdrawals from the businesses. The Law Firm Defendants profited from proceeds of the managing legal affairs of the Realty Companies Enterprise, including assisting with recording fraudulent deeds and receiving fraudulent commissions on the sale of the investment properties.

**Interstate and foreign Travel**.  The fraudulent scheme included interstate and foreign travel by Arihay in furtherance of fraud, including Arihay travelling from outside the United State to Russia in 2013 and between states in the United States, including a trip to Florida in June 2018.

**Interference with commerce by threats or violence**. The fraudulent scheme included acts in furtherance of the fraudulent scheme to defraud investors, affecting commerce, including numerous threats by Arihay to Chalamo and his sons, as described above.

15

## STANDARD OF REVIEW

"To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must state factual allegations sufficient to 'to raise a right to relief above the speculative level.'" *Tejada v. Little City Realty LLC*, 308 F. Supp. 3d 724, 729 (E.D.N.Y. 2018) (Weinstein, J.), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (internal citations omitted). "Whether a complaint states a plausible claim for relief is 'a context-specific [task], requiring the reviewing court to draw on its experience and common sense.'" *Id.*, quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

In reviewing averments made in a complaint, a court should first assume the "veracity" of well-pled allegations "and then determine whether they plausibly give rise to an entitlement to relief." *Id.*, quoting *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt.*, 712 F.3d 705 (2d Cir. 2013) (citing *Iqbal*, 556 U.S. at 679).  In doing so, the court should draw all reasonable inferences in favor of the non-moving party. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).  "In ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010), quoting *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998).

Furthermore, "[t]he *Twombly* plausibility standard, which applies to all civil actions, does not prevent a plaintiff from pleading facts alleged 'upon information and belief' where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." *Arista Records Ltd. Liab. Co. v. Doe*, 604 F.3d 110, 120 (2d Cir. 2010) (internal citations and quotation marks omitted); see

16

also *Iqbal*, 556 U.S. at 678  ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

### ARGUMENT

## I.  MOTION TO DISMISS BASED ON THE STATUTE OF FRAUDS DEFENSE SHOULD BE DENIED

As s preliminary matter, both Defendants argue that the entire Complaint must be dismissed because the agreement between Chalamo and Arihay is barred by the New York Stature of Frauds, N.Y. Gen. Obligations Law § 5-703.  This argument fails because the parties' agreement to create a joint venture that deals in real estate is not subject to the Statute of Frauds. The Statute generally provides that "an interest in real property cannot be created except by a writing expressing the consideration, signed by the party against whom enforcement is sought." *Knapp v. Maron*, 2015 U.S. Dist. LEXIS 67372, at *6 (S.D.N.Y. May 22, 2015).  For example, *Messner Vetere Berger McNamee Scmetterer EURO RSCG v. Aegis Grp. PLC*, 974 F. Supp. 270 (S.D.N.Y. 1997), cited by the Defendants, involved an alleged oral agreement to assume obligations under a lease.

By contrast, the agreement between Plaintiff and Arihay was to create a joint venture where "they would be equal partners, each equally responsible for all capital obligations to acquire and manage the investment properties, and sharing equally any profits from the sale of the renovated properties." *See* FAC, ¶ 32.[3]  "The statute of frauds does not render void oral joint venture

---

[3] "The indicia of the existence of a joint venture are: acts manifesting the intent of the parties to be associated as joint venturers, mutual contribution to the joint undertaking through a combination of property, financial resources, effort, skill or knowledge, a measure of joint proprietorship and control over the enterprise, and a provision for the sharing of profits and losses." *Richbell Info. Servs. v. Jupiter Partners, L.P.*, 309 A.D.2d 288, 298, 765 N.Y.S.2d 575, 584 (App. Div. 2003).

agreements to deal in real property because the interest of each partner in a partnership is deemed personalty." *Plumitallo v. Hudson Atl. Land Co.*, 74 A.D.3d 1038, 1039, 903 N.Y.S.2d 127, 128 (2010), citing *Mattikow v Sudarsky*, 248 NY 404, 406-407, 162 NE 296 (1928); *Fairchild v. Fairchild*, 64 NY 471, 479 (1876); *Walsh v Rechler*, 151 A.D.2d 473, 542 N.Y.S.2d 262 (1989); *Johnson v Johnson*, 111 A.D.2d 1005, 1006, 490 N.Y.S.2d 324 (1985); *Elias v Serota*, 103 A.D.2d 410, 413, 480 N.Y.S.2d 344 (1984). Where, as here, "plaintiff is not seeking to acquire an interest in real property, but rather, is asserting an alleged interest in joint venture assets," the statute of frauds does not apply. *Id.*, citing *Pisciotto v Dries*, 306 A.D.2d 262, 263, 760 N.Y.S.2d 526 (2003); *Johnson*, 111 A.D.2d at 1006; *Liffiton v DiBlasi*, 170 A.D.2d 994, 566 N.Y.S.2d 148 (1991); *see also Foster v. Kovner*, 44 A.D.3d 23, 27, 840 N.Y.S.2d 328, 331 (App. Div. 2007) ("the statute of frauds is generally inapplicable to an agreement to create a joint venture.")[4]

Accordingly, Defendants' Motion to Dismiss based on the Statute of Fraud defense should be denied.[5]

## II.    MOTION TO DISMISS CLAIMS AGAINST DEFENDANT SBAGK PREMISED ON THE THEORY OF SUCCESSOR LIABILITY SHOULD BE DENIED

The Law Firm Defendants argue for dismissal of all claims against SBAGK on the grounds that it is a new law firm formed by merger on June 4, 2018 and a separate legal entity from Defendant ABZ, an existing legal entity. As the claims against SBAGK (at least as to conduct that

---

[4] Even if the agreement between Chalamo and Arihay were characterized as an oral loan, the statute of frauds would still not apply "because there was nothing prohibiting defendant from repaying the loan within one year." *Centi v. McGillin*, 155 A.D.3d 1493, 1495, 66 N.Y.S.3d 337, 339 (App. Div. 2017).

[5] Defendants do not expressly challenge Plaintiff's claim for unjust enrichment. The Statute of Frauds does not apply to that claim in any event. *See Marcraft Recreation Corp. v. Francis Devlin Co.*, 506 F. Supp. 1081, 1086 (S.D.N.Y. 1981) ("A claim in quantum meruit does not depend upon a contract's compliance with the requirements of the statute of frauds.")

occurred by to its formation) are premised on the theory of successor liability to ABZ, the motion to dismiss should be denied.

Under New York law, a corporation is liable for the torts of its predecessor if (1) it expressly or impliedly assumed the predecessor's tort liability, (2) there was a consolidation or merger of the two corporations, (3) the second corporation was a mere continuation of the first, or (4) the dealings between the two were entered into fraudulently to escape such obligations. *See Schumacher v. Richards Shear Co.,* 59 N.Y.2d 239, 245, 464 N.Y.S.2d 437, 440, 451 N.E.2d 195, 198 (1983). The fact that the predecessor entity continues its formal existence is not dispositive "if that entity is short of assets and has become, in essence, a shell." *Leaf Capital Funding, LLC v. Morelli Alters Ratner, P.C.*, 2013 N.Y. Misc. LEXIS 4637, *3 (Sup. Ct. 2013), quoting *Van Nocker v. A.W. Chesterton Co.*, 15 A.D.3d 254, 256, 789 N.Y.S.2d 484 (App. Div. 2005). In *Leaf Capital Funding*, the court ruled that where a defendant law firm merged with another law firm to form a new corporate entity, the new entity might be liable as a successor in interest, even if the original entity continued its corporate existence. *Id*.

In this case, Defendants admit that SBAGK was formed as a result of a merger of three law firms, including ABZ. Defendant Bowman was a member of ABZ and is a member of SBAGK. For some time following the purported merger/reorganization, SBAGK's website stated that "Shiryak, Bowman, Anderson, Gill & Kadochnikov LLP [was] formerly known as Anderson, Bowman & Zalewski PLLC." *See* Exhibit A hereto. Furthermore, for some time the new firm's website operated under a domain www.abzlaw.com which now automatically transfers to the SBAGK's new domain.

In light of these undisputed facts, the Court should not dismiss claims against SBAGK. "The determination of successor liability is fact-specific, and courts are to analyze the facts in a

19

flexible manner that disregards mere questions of form and asks whether, in substance, it was the intent of the successor to absorb and continue the operation of the predecessor." *Miller v. Forge Mench P'ship,* 2005 U.S. Dist. LEXIS 1524, at *23 (S.D.N.Y. Jan. 31, 2005) (internal citations and quotation marks omitted); *Martin Hilti Family v. Knoedler Gallery, LLC*, 386 F. Supp. 3d 319, 331 (S.D.N.Y. 2019) (successor liability claims "call for fact-intensive inquiries.") Accordingly, Plaintiff should be entitled to take discovery on the facts pertaining to ABZ's merger into SBAGK to establish the latter's successor liability.

## III.   COUNTS I-IV ADEQUATELY ALLEGE RICO CLAIMS

Although Defendants' argue that the Courts are skeptical of the RICO matters that boil down to business disputes. However, as the Second Circuit stated in *Fresh Meadow Food Servs., LLC v. RB 175 Corp.*, 282 F. App'x 94, 100 (2d Cir. 2008) (summary order) (*quoting Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 499, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985)).

> there is no question that RICO's private right of action, in conjunction with the statute's  inclusion of mail and wire fraud (for which there is no independent private right of action) as racketeering acts, creates federal treble damage actions out of business disputes that would otherwise never be in federal court. However, the Supreme Court long ago observed that "this defect — if defect it is — is inherent in the statute as written, and its correction must lie with Congress."

### A.   PLAINTIFF'S RICO CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS

The Kaikov and the Law Firm Defendants argue that Plaintiff's RICO claims are barred by the four-year statute of limitations as the claims purportedly accrued sometime between October 2013 and April 2014.  For the reasons set forth below, the statute of limitations defense does not defeat Plaintiff's claims.

Under the Second Circuit precedent, courts apply an "inquiry notice" analysis to RICO claims for purposes of triggering the statute of limitations. *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 151 (2d Cir. 2012). "Whether a plaintiff had sufficient facts to place it on inquiry notice is often inappropriate for resolution on a motion to dismiss." *Lentell v. Merrill Lynch & Co*., 396 F.3d 161, 168 (2d Cir. 2005) (internal quotation marks omitted); *see also Staehr v. Hartford Fin. Servs. Grp*., 547 F.3d 406, 427 (2d Cir. 2008) ("Inquiry notice may be found as a matter of law only when uncontroverted evidence clearly demonstrates when the plaintiff should have discovered the fraudulent conduct.")

> Inquiry notice — often called "storm warnings" in the securities context — gives rise to a duty of inquiry "when the circumstances would suggest to an investor of ordinary intelligence the probability that she has been defrauded." In such circumstances, the imputation of knowledge will be timed in one of two ways: (i) "[i]f the investor makes no inquiry once the duty arises, knowledge will be imputed as of the date the duty arose"; and (ii) if some inquiry is made, "we will impute knowledge of what an investor in the exercise of reasonable diligence[] should have discovered concerning the fraud, and in such cases the limitations period begins to run from the date such inquiry should have revealed the fraud."

*Koch,* 699 F.3d at 151 (2d Cir. 2012), quoting *Lentell v. Merrill Lynch & Co*., 396 F.3d 161, 168 (2d Cir. 2005).

Thus, "[w]here a RICO plaintiff does begin or has begun to inquire once the duty arises, the Court must determine when a reasonably diligent investigation would have revealed the injury to a person of reasonable intelligence, and the statute of limitations begins to run on that date. The existence of 'storm warnings' sufficient to trigger inquiry notice does not begin the clock when the plaintiff actually pursues an investigation." *Koch*, 699 F.3d at 153.

The events between October of 2013 and April 2014 did not trigger the running of the statute of limitations under the Second Circuit's "inquiry notice" test. The circumstances in

October of 2013 did not suggest to an investor of ordinary intelligence the probability that Arihay was defrauding Chalamo.   Rather, at the time, Arihay reported that Chalamo's original investment had returned profits consistent with Arihay's initial projections and Chalamo invested additional funds based on these representations. *See* FAC at ¶¶ 44-47.   Once Chalamo began making inquiries about his investments and felt uncomfortable about the existing arrangement in early 2014,  Arihay agreed to formalize the relationship by opening a joint corporation that would hold formal ownership of the investment properties, with Chalamo's son acting as president. *See* Am. Cmpl. at ¶¶ 49-54.  Far from putting Chalamo on notice that he was defrauded, the April 2014 agreement reasonably allayed Chalamo's concerns about further dealing with Arihay and allowed Defendants to continue with their fraudulent scheme.  For the next two years, Arihay claimed that the investment properties were subject to litigation to clear title. *See* FAC at ¶ 57.  In November of 2016, Arihay provided a list of Investment Properties to Chalamo and the parties once again agreed that all titles must be transferred to 911 Realty. *See* FAC at ¶¶ 59-64.

In light of the foregoing, the Court cannot conclude that by April 29, 2015, *i.e.* four years prior to the filing of the Complaint, the circumstances should have suggested to an investor of ordinary intelligence that he was defrauded by the Defendants.   Accordingly, the Defendants' Motion to Dismiss on statute of limitations grounds should be denied.

## B.    PLAINTIFF HAS STANDING TO PURSUE RICO CLAIMS

The Kaikov Defendants argue that Plaintiff has no standing to assert RICO claims because he resides in a foreign country and therefore cannot sustain a domestic injury.  In support of this argument, Defendants rely on a pair of District Court cases from 2016 but fail to cite a later controlling decision in *Bascuñán v. Elsaca*, 874 F.3d 806, 809 (2d Cir. 2017) (*Bascuñán I*) which

rejected a residency-based test advanced by the Defendants and reversed a district court decision in *Bascuñan* cited by the Defendants.

In *RJR Nabisco, Inc. v. European Cmty.*, 136 S.Ct. 2090, 2111 (2016), the Supreme Court held that "Section 1964(c) [of RICO] requires a civil RICO plaintiff to allege and prove domestic injury to business or property" and does not allow recovery for foreign injuries. The Court, however, did not articulate how to determine whether an alleged injury is domestic or foreign.

In *Bascuñán I*, the Second Circuit for the first time considered whether a plaintiff has alleged a "domestic injury" to the business or property within the meaning of Section 1964(c).  In that case, the plaintiff, a resident of Chile, brought an action against his cousin who had a power of attorney over plaintiff's finances, and stole millions of dollars from plaintiff through several fraudulent financial schemes.  The district court characterized plaintiff's injury as an "economic loss" and concluded that because individual plaintiffs suffer economic injuries at their place of residence, and because plaintiff was a resident of Chile, he alleged only foreign injuries.  *Id*. at 809-810.

The Second Circuit reversed, holding that "where the injury is to tangible property . . . absent some extraordinary circumstance, the injury is domestic if the plaintiff's property was located in the United States when it was stolen or harmed, even if plaintiff himself resides abroad." *Id*. at 820-821.  Specifically, as directly relevant to this case, the Court held that where defendant misappropriated plaintiff's funds held in a New York bank account, plaintiff suffered a domestic RICO injury.  *Id*. at 821.  In a subsequent appeal in the same case, *Bascuñán v. Elsaca*, 927 F.3d 108, 118 (2d Cir. 2019) (*Bascuñán II*), the Second Circuit further explained that where funds are stolen in the United States *after* an authorized transfer from a foreign country, a foreign plaintiff

23

sustains a *domestic* RICO injury.[6]

Pursuant to the holdings and reasoning in *Bascuñán I* and *Bascuñán II*, Chalamo sustained a domestic injury because (1) Defendants misappropriated Plaintiff's investment funds *after* they were transferred to the United States; (2) Defendants misappropriated profits from the sale of the investment properties (purchased with Plaintiff's funds) located in the United States; (3) 911 Realty, the corporation where Plaintiff holds a 50% equitable interest and that was supposed to hold titles to the investment properties, is a domestic corporation.[7]   Accordingly, Defendants' Motion to Dismiss for lack of standing should be denied.

## C.   THE ALLEGATIONS ARE SUFFICIENT UNDER RULES 8 AND 9(b)

Allegations of fraud and fraudulent predicate acts under RICO are subject to the heightened pleading requirements of Rule 9(b).  *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184-85 (2d Cir. 2008), *citing First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir. 2004).  The "other  elements" of a RICO claim, "such as non-fraud predicate acts or . . . the existence of an 'enterprise,'" need "satisfy only the 'short and plain statement' standard of Rule 8(a)." *D. Penguin Bros. v. City Nat. Bank*, 587 F. App'x 663, 666 (2d Cir. 2014) (Summary Order).

---

[6] District courts in other Circuits have similarly rejected a rigid residency-based test. *See Akishev v. Kapustin*, 2016 U.S. Dist. LEXIS 169787 (D.N.J. Dec. 8, 2016) (finding domestic injury where foreign-based plaintiffs "travel[ed] by way of the Internet" to defendant's "United States-based website representing United States-based car dealerships," where they were "induced by fraud" to send funds "by wire transfer to [defendant's] U.S. bank"); *Tatung Co., Ltd. v. Shu Tze Hsu*, 217 F. Supp. 3d 1138 (C.D. Cal. 2016) (reasoning that where plaintiff, a foreign corporation, "maintained a 'hub'" and did business in the U.S. and had been injured by a RICO conspiracy to prevent it from collecting an arbitration award issued and confirmed in California and arising out of a commercial credit dispute in the U.S., plaintiff had suffered a domestic injury).

[7] Defendants also argue that the Chalamo has no standing because he owns no interest in 911 Realty.  The Complaint alleges that Chalamo and Arihay agreed that Chalamo is a 50% *de facto* owner of 911 Realty.  (Am. Cmpl. ¶ 53).  Whether plaintiff has an equitable interest in 911 Realty is a question of fact which cannot be resolved on a Rule 12(b)(6) Motion.

Contrary to what Defendants argue in their submissions, "Rule 9(b) does not call for Plaintiffs to plead every conceivable fact about the claims they allege were fraudulent, or to prove [their] claims at the pleading stage." *Marino v. Coach, Inc*., 264 F. Supp. 3d 558, 568 (S.D.N.Y. 2017). Rather, it "must be read in conjunction with Rule 8's requirement of a 'short and plain statement' of the claim." *Clark v. Advanced Composites Grp*., 2019 U.S. Dist. LEXIS 80639, at *52 (S.D.N.Y. May 9, 2019), *quoting DiVittorio v. Equidyne Extractive Indus., Inc*., 822 F.2d 1242, 1247 (2d Cir. 1987).

Furthermore, the particularity requirements of Rule 9(b) are relaxed "where RICO plaintiff lacks access to all facts necessary to detail claim." *Rotella v. Wood*, 528 U.S. 549, 560 (2000), citing *Corley v. Rosewood Care Center, Inc. of Peoria*, 142 F.3d 1041, 1050-1051 (7th Cir. 1998). Specifically, the "allegations [of fraud] may be based on information and belief when facts are peculiarly within the opposing party's knowledge." *Wexner v. First Manhattan Co*., 902 F.2d 169, 172 (2d Cir. 1990); *accord Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008); *Rombach v. Chang*, 355 F.3d 164, 175 fn.10 (2d Cir. 2004); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1057 (2d Cir. 1993).

Instantly, Plaintiff details in sufficient detail misrepresentations by each defendant, including detailing frauds related to investment properties, FAC ¶¶ 71-131; bank fraud, FAC ¶¶132-143; other misrepresentation, and alleging specific predicate acts, *see* FAC at ¶¶ 155-168, tying each Defendant to fraud and setting forth "who, what, where, and when." *E.g., In re Sumitomo Copper Litig*., 995 F. Supp. 451, 456 (S.D.N.Y. 1998) ("In complex civil RICO actions involving multiple defendants . . . Rule 9(b) does not require that the temporal geographic particulars of each mailing or wire transmission made in furtherance of the fraudulent scheme be stated with particularity. In such cases, Rule 9(b) requires only that the plaintiff delineate, with

adequate particularity in the body of the complaint, the specific circumstances constituting the overall fraudulent scheme.") (internal citation and footnote omitted).

In addition, in this case, the details pertaining to Defendants' fraudulent scheme, including the amount of profits on the sale of the properties purchased with Plaintiff's investments, the details of the Law Firm Defendants' involvement, and the circumstances surrounding other victims of the Defendants' RICO enterprise activity, are in the sole possession of the Defendants. "[I]n the context of a RICO action, the complaint need not be specific as to each allegation of mail or wire fraud when the nature of the RICO scheme is sufficiently pleaded so as to give notice to the defendants." *Allstate Ins. Co. v. Rozenberg*, 771 F. Supp. 2d 254, 264 (E.D.N.Y. 2011) (internal quotation marks omitted).  Instead, it need allege only that each defendant "directly participated in the scheme and could reasonably foresee that the mails would be used in furtherance of the same." *Rothstein v. GMAC Mortg., LLC*, No. 12-CV-3412, 2013 U.S. Dist. LEXIS 141034, 2013 WL 5437648, at *16 (S.D.N.Y. Sept. 30, 2013). Here, sufficient allegations are made. To the extent that some details are exclusively in the possession of Defendants,  Plaintiff should be allowed to take discovery to flash out the details of the Defendants' conduct.

### D.    PLAINTIFF ADEQUATELY ALLEGES CONTINUITY

All Defendants argue that Plaintiff failed to allege continuity. Kaikov Def. Mot. at 15, Law Def. Mot. at 22. Defendants are wrong.

To sustain a civil RICO claim, a plaintiff must plausibly allege, among other things, predicate acts that "amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239, (1989). "Such continuity can be closed-ended or open-ended." *Reich v. Lopez*, 858 F.3d 55, 60 (2d Cir. 2017). Closed-ended continuity refers to criminal activity that stretches over a substantial period of time, generally at least two years, regardless of whether it

will continue into the future. *Id*. Open-ended continuity, on the other hand, refers to criminal activity "that by its nature projects into the future with a threat of repetition." *Id*. (quoting *H.J.*, 492 U.S. at 241). Regardless of which type of continuity is invoked, continuity is "centrally a temporal concept." *H.J.*, 492 U.S. at 242. Essentially, a plaintiff "must provide some basis for a court to conclude that defendants' activities were neither isolated nor sporadic." *GICC Capital Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 467 (2d Cir. 1995) (internal quotation marks and citations omitted).

"At the pleading stage, the hurdle [for showing continuity] is relatively low." *World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 497 (S.D.N.Y. 2007), *aff'd*, 328 F. App'x 695 (2d Cir. 2009).

### 1.    Plaintiff Adequately Alleges Closed-Ended Continuity

Defendants first argue that Plaintiff has not properly pled the closed-ended continuity requirement for a RICO pattern of racketeering activity because the alleged conduct was not "multi-faceted" and was directed at "only… one victim."   Contrary to Defendants, FAC sufficiently alleges "a series of related predicates extending over a substantial period of time." H.J. Inc., 492 U.S. at 242, which is the only requirement of close-ended continuity.

<u>First</u>, there is no requirement that the RICO scheme involve "multi-faceted conspiracy." *Flexborrow LLC v. TD Auto Fin. LLC*, 255 F. Supp. 3d 406, 419-20 (E.D.N.Y. 2017) cited by Defendants for this proposition found no continuity in the scheme that involved only two participants and affected  "relatively small number of  victims"  because the alleged scheme of fraudulent car transactions was limited duration – i.e. less than a year. In doing so, the Court declined "to break from this Circuit's clear and consistent case law"[8]  requiring for conduct to

---

[8] The Second Circuit has deemed two-year span sufficiently "substantial" to establish closed-end

establish closed-ended continuity to last for a period of more than two years. *Id*. at 419.

Instantly, however, Plaintiff has  adequately alleged that the predicate acts of, *inter alia*, bank fraud,  wire fraud, Travel Act, and threats  are "related," in that they served the same purpose of soliciting investors', including Plaintiff's,  funds under the false pretense that Defendants would use those funds to purchase real estate, turn over titles to properties to joint ownership, and return considerable profits. Plaintiff adequately pled a scheme of at least 5 years with first predicate act taking place as early as October 2013, when Arihay traveled to Moscow to solicit Plaintiff's money, FAC ¶¶ 44-48, through at least August - September 2018, when Arihay made threats to Plaintiff and filed a lawsuit against his son, FAC ¶¶132-142.[9]

Courts in this Circuit have found continuity requirement satisfied under similar circumstances. For example, in Procter & Gamble Co. v. Big Apple Industrial Buildings., Inc. involving solicitation of funds from defendants for construction  and lease of a commercial building by misleading plaintiffs as to actual costs, the Court found that continuity was established despite there being only two victims and four participants in the RICO scheme, which lasted

---

continuity. *GICC Capital Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 466 (2d Cir. 1995).

[9] In regard to the Law Firm Defendants' argument that the complaint does not allege a single predicate act committed by them, there is no requirement for such allegations. S*ee  Blue Cross and Blue Shield of New Jersey, Inc. v. Philip Morris, Inc*., 113 F. Supp. 2d 345, 367 (E.D.N.Y. 2000) ("RICO liability for any particular defendant is not . . . premised on establishing that each defendant actually committed two predicate acts, but only that each  defendant was 'involved' in the commission of two predicate acts that are sufficiently related and continuous to establish a pattern.") (emphasis and citations omitted). "Plaintiffs are not obligated to plead that [a defendant] agreed to commit any particular predicate act. . . . Instead, they are required to plead facts demonstrating that [the defendant] agreed to join the alleged RICO enterprise with knowledge that predicate acts would be committed by members of that enterprise." *Martin Hilti Family Trust v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 430, 481 (S.D.N.Y. 2015). The FAC makes sufficient allegations that the Law Firm Defendants knew about the nature of Arihay's fraudulent scheme and participated in the deals as well as assisted him to deter Plaintiff from claiming return of the investment. FAC, ¶¶ 74-124, 143. These allegations are certainly enough to establish continuity as to the Law Firm Defendants. In addition, the knowledge of such acts is at this moment exclusively in the Defendants' hands.

approximately three years. The court held there was a pattern of racketeering behavior where the plaintiff alleged that the defendants' fraudulent schemes included: (1) inducing execution of the ten-year studio lease by fraudulently misstating their experience, expertise, and construction cost estimates; (2) inducing plaintiffs to continue with the project, and inducing P & G to guarantee construction financing by fraudulently misrepresenting and concealing costs; (3) fraudulently diverting construction funds and charging excessive professional and other fees; (4) improperly escrowing construction loan funds to build a "cushion" against discovery of the alleged fraud; and (5) fraudulently scheming to collect "interim rent" for delays primarily caused by defendants. 879 F.2d 10, 18-19 (2d Cir. 1989).

Similarly here, Defendants' fraudulent scheme effectuated through related racketeering acts involving the same purpose (defrauding investors), same results (retaining fraudulently obtained money), same participants (the Kaikov Defendants and the Law Firm Defendants), same enterprise (Realty Companies Enterprise) from October 2013 to September 2018 clearly satisfies closed-end continuity.   Thus, at a minimum, Plaintiffs have pled a five-year scheme, which satisfies the Second Circuit's standard. *See also Metromedia Co. v. Fugazy*, 983 F.2d 350, 369 (2d Cir. 1992) (finding closed-ended continuity when predicate acts occurred over a period of two years); *Jacobson v. Cooper*, 882 F.2d 717, 720 (2d Cir. 1989) (finding closed-ended continuity when predicate acts occurred over a  "matter of year").

Second, the fact that there was only one victim is irrelevant to whether the continuity element is satisfied. *See, e.g. Metromedia Co. v. Fugazy*, 983 F.2d 350, 368-69 (2d Cir. 1992) (affirming the jury finding of civil RICO violations where a single plaintiff alleged four varieties of predicate acts committed by just two participants over the span of two years); J*acobson v. Cooper*, 882 F.2d 717, 720 (2d Cir. 1989) (closed-ended continuity sufficiently pled despite a

narrow scheme to steal from one person, where a single victim alleged six varieties of predicate acts committed by two participants). In addition, Plaintiff alleges that there are other victims of the Defendants' fraudulent scheme. *See* FAC, ¶¶ 144-149 (alleging similar fraudulent scheme perpetrated by Defendants against Ralph Fayziyev and known instances of solicitation by Arihay of other potential investors).

### 2. Plaintiff Adequately Alleges Open-Ended Continuity

Plaintiff pled that Defendants' fraudulent activity is ongoing and may target other potential investors. FAC, ¶ 149. This establishes open –ended continuity. *See Eastchester Rehab. & Health Care Ctr., L.L.C. v. Eastchester Health Care Ctr., L.L.C.*, 2005 U.S. Dist. LEXIS 6593, at *17-18 (S.D.N.Y. Apr. 12, 2005) ("unlawful acts conducted for an enterprise in the business of racketeering activity constitute a threat of future criminal activity and are thus sufficient to form the basis of a claim of open-ended continuity. . ."); *Metro. Transp. Auth. v. Contini*, No. 04-cv-0104 (DGT)(JMA), 2005 U.S. Dist. LEXIS 13345, at *2-3 (E.D.N.Y. July 6, 2005) (finding open-ended continuity where a single plaintiff alleged conspiracy by defendants to defraud the MTA out of millions of dollars by submitting false invoices that inflated fees for services performed by elevator operators during a renovation project on the MTA's new headquarters holding that the fact that defendants "only chose to submit fraudulent invoices for eleven month ... on a single project by no means indicates that the fraud would be short-lived or that the illegal scheme would not continue far into the future."); *Morrow v. Black*, 742 F.Supp. 1199, 1207 (E.D.N.Y. 1990) (finding that even though predicate acts spanned a few months, continuity existed because at the time of the acts there was a threat of continuing criminal activity).[10]

---

[10] *See also Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12, 20 (1st Cir. 2000) (a scheme that could potentially go on forever absent detection can constitute an open-ended continuity); *Rush-Presbyterian St. Luke's Medical Center v. Ramasean Nursing Service, Inc.*,

### E.   PLAINTIFF ADEQUATELY PLED THAT THE LAW FIRM DEFENDANTS PARTICIPATED IN THE "OPERATION OR MANAGEMENT" OF THE RICO ENTERPRISE

The Law Firm Defendants argue that the Court should dismiss all RICO claims against them because, as legal professionals, they could not have participated in the "operation and management" of the RICO enterprise.  As the Complaint sufficiently pleads this requirement, the Law Firm Defendants' Motion should be denied.

"In *Reves v. Ernst & Young*, the Supreme Court interpreted the operative language to require a RICO defendant charged with violating section 1962(c) to have had some part in *directing* the enterprise's affairs."  *D'Addario v. D'Addario*, 901 F.3d 80, 103 (2d Cir. 2018) (internal quotation marks omitted; emphasis in original).  Liability under Section 1962(c) extends to "those who participate in the operation or management of an enterprise through a pattern of racketeering activity." *Reves*, 507 U.S. 170, 184 (1993).[11]

"[T]he word 'participate' makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs . . . " *Reves*, 507 U.S. at 179.  "*Reves* provides no blanket immunity for professionals regardless of their involvement in a criminal enterprise, and . . . where professionals are alleged to have exceeded the mere rendering of legitimate professional services, the 'operation or management' requirement will be pleaded adequately." *JSC Foreign Econ. Ass'n Technostroyexport v. Weiss*, 2007 U.S. Dist. LEXIS 28954, at *28-29 (S.D.N.Y. Apr.

---

1992 U.S. Dist. LEXIS 1246, at *2-3 (N.D. Ill. Feb. 3, 1992) (continuity satisfied where "defendants' scheme of padding invoices probably would have continued into perpetuity but for plaintiff's discovery of the invoices containing the falsely inflated hours").

[11] No such requirement exists under RICO Sections 1962(a), (b), and (d).  *See Reves,* 507 U.S at 185 ("'operations and management' test that applies under subsection (c) in no way limits the application of subsections (a) and (b) to 'outsiders'"); *United States v. Zichettello*, 208 F.3d 72, 99 (2d Cir. 2000) (no requirement that defendant take some part in directing the enterprise's affairs to establish a conspiracy under subsection (d)).

17, 2007); *Tribune Co. v. Purcigliotti*, 869 F. Supp. 1076, 1098 (S.D.N.Y. 1994) (participation requirement met where law firm helped devise and manage a fraudulent scheme), aff'd sub nom. on other grounds, *Tribune Co. v. Abiola*, 66 F.3d 12 (2d Cir. 1995).

At the pleadings stage, the "'operation or management' test presents a relatively low hurdle for plaintiffs to clear." *D'Addario*, 901 F.3d at 103, quoting *First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir. 2004) (internal quotation marks omitted). "[T]he question of whether defendant 'operated or managed' the affairs of an enterprise [is] essentially one of fact." *First Capital*, 385 F.3d at 176, citing *United States v. Allen*, 155 F.3d 35, 42-43 (2d Cir. 1998). "Where the role of the particular defendant in the RICO enterprise is unclear, plaintiffs may well be entitled to take discovery on this question." *AIU Ins. Co. v. Olmecs Med. Supply, Inc.*, 2005 U.S. Dist. LEXIS 29666, at *26 (E.D.N.Y. Feb. 22, 2005).

The FAC alleges that the Law Firm Defendants were instrumental to the operation of the Defendants' Realty Companies RICO Enterprise. The Law Firm Defendants managed the legal relationships of the Enterprise which included assisting with recording fraudulently-obtained deeds and receiving fraudulent commissions on the sale of the investment properties. (Am. Cmpl. at ¶¶ 71-126; 150). The fact that the Law Firm Defendants received substantial commissions on the fraudulent transactions strongly suggest that their role in the Enterprise extended far beyond providing legitimate legal services. Accordingly, Plaintiff adequately pleaded that the Law Firm Defendants participated in the operation or management of the Enterprise.

Furthermore, as set forth above, there is no requirement that defendant take part in directing the enterprise's affairs in order to establish *a conspiracy* to violate Section 1962(c). *United States v. Zichettello*, 208 F.3d 72, 99 (2d Cir. 2000). Rather, "[i]f conspirators have a plan which calls for some conspirators to perpetrate the crime and others to provide support, the supporters are as

guilty as the perpetrators." *Salinas v. United States*, 522 U.S. 52, 64 (1997); *Napoli v. United States*, 45 F.3d 680, 683-84 (2d Cir. 1995) ("[Defendant] was convicted only on the RICO conspiracy charge, and that conviction is unaffected by the *Reves* error."); *United States v. Fernandez*, 388 F.3d 1199, 1230 (9th Cir. 2004) ("a defendant is guilty of conspiracy to violate § 1962(c) if the evidence showed that she knowingly agreed to facilitate a scheme which includes the operation or management of a RICO enterprise." (internal quotation marks omitted)). At the very least, the allegations in the Amended Complaint pertaining to the Law Firm Defendants support a claim for conspiracy to violate Section 1962(c).

### F.   PLAINTIFF ADEQUATELY ALLEGES A RICO CLAIM UNDER 18 U.S.C. §1962(a) (COUNT I)

A private plaintiff seeking damages under § 1964(c) arising from a violation of § 1962(a) must allege an "injury from the defendants' investment of racketeering income in an enterprise." *European Cmty. v. RJR Nabisco, Inc., 764 F.3d 129, 138 n.5 (2d Cir. 2014).* Instantly, the FAC alleges that Defendants  derived income from a pattern of racketeering activity affecting interstate and foreign commerce by defrauding investors and soliciting further investments they never intended to return. Contrary to Defendants, the FAC clearly alleges injury to Plaintiff who ended up losing money to the Defendant's Realty Companies Enterprise.  This is sufficient to state claim under § 1962(a).

### G.   PLAINTIFF ADEQUATELY ALLEGES A RICO CLAIM UNDER 18 U.S.C. §1962(b) (COUNT II)

Section 1962(b) prohibits any person from "acquiring or maintain[ing], directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(b). To state a claim under Section 1962(b), a plaintiff must allege that:

> (1) the purpose of the defendants racketeering activity was to acquire an interest or to maintain control of the enterprise; (2) that the defendants in fact acquired an interest or maintained control of the enterprise through their pattern of racketeering activity; and (3) that the plaintiff suffered injury as a result of the acquisition of the enterprise.

*DeFazio v. Wallis*, 500 F. Supp. 2d 197, 208 (E.D.N.Y. 2007). Defendants focus on the third of these requirements as grounds for dismissing Plaintiff's 1962(b) claim.

While Defendants are correct that the injury must be caused by "acquisition of an interest in an enterprise, as distinct from an injury resulting from the pattern of racketeering activity, or the commission of predicate acts", *Redtail Leasing, Inc. v. Bellezza*, 1997 U.S. Dist. LEXIS 14821, No. 95 Civ. 5191, 1997 WL 603496, at *3 (S.D.N.Y. Sept. 30, 1997), contrary to Defendant, Plaintiff has adequately pled such an injury.

Contrary to Defendants, injury to Plaintiff as a de facto owner of 911 Realty is real and direct. Defendant's argument that the injury is speculative and whether plaintiff has an equitable interest in 911 Realty is a question of fact which cannot be resolved on a Rule 12(b)(6) Motion. Taking allegations of the Complaint that Chalamo and Arihay agreed that Chalamo is a 50% *de facto* owner of 911 Realty, FAC ¶ 53, as true, Plaintiff's allegations of direct injury are sufficient instantly.

In addition, Plaintiff alleges that Defendants through a pattern of racketeering activity, acquired and maintained, directly or indirectly, an interest and control of the Realty Companies Association-in-fact enterprise. These entities included the Corporate Defendants. Plaintiff further pled that by gaining control over the enterprise, Defendants were able to direct their activities away from legitimate real estate businesses towards defrauding investors. Therefore, Plaintiff also sufficiently pled proximate injury caused by Defendants to other investors.

he Enterprise allowed Defendants to create other corporate entities and divert investment funds from other investors. *See* FAC ¶¶ 146-149.  This is sufficient to state claim under § 1962(b).

## H.   PLAINTIFF ADEQUATELY ALLEGES A RICO CLAIM UNDER 18 U.S.C. §1962(c) (COUNT III)

Section 1962(c) states that "it shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity ..." 18 U.S.C. § 1962(c).

To state a claim under this section, a plaintiff must allege "(1) conduct (2) of an enterprise (3) though a pattern (4) of racketeering activity." *De Falco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001) (*quoting Sedima, S.P.R.L. v. Imrex Co*., 473 U.S. 479, 496 (1985)).

### 1.   Plaintiff Adequately Allege Conduct

The "conduct or participate" element requires a defendant to "have some part in directing those affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). "An  enterprise is 'operated' not just by upper management but also by lower rung participants in the enterprise who are under the direction of upper management." *Id*. at 184. In the Second Circuit, "the 'operation or management' test typically has proven to be a relatively low hurdle for plaintiffs to clear, especially at the pleading stage   ..." F*irst Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 175-176 (2d Cir. 2004). The question of operation or management "is essentially one of fact." *Id.* (*citing United States v. Allen*, 155 F.3d 35, 42-43 (2d Cir. 1998)).

Plaintiff only asserts this Count as to Arihay and the Law Firm Defendants.  There is no questions that Plaintiff has sufficiently alleged that Arihay controlled and directed the affairs of the Realty Companies Enterprise. The FAC sets forth in utmost detail the role of Arihay in the fraudulent scheme where he devised, directed and implemented the scheme, actively participating

and sending fraudulent communications, threats, traveling to Moscow and Florida with the illegal purpose in violation of the Travel Act, and making threats to Plaintiff using wires.

Similarly, Plaintiffs allegations are sufficient as to the Law Firm Defendants, as set forth in Section II (E) supra.

### 2.   The  Realty Companies Enterprise Is Properly Pled

Plaintiff alleges Realty Companies Enterprise - an associated-in-fact enterprise of  Arihay, the Corporate Defendants, Bowman, ABZ and  SBAGK. Defendants argue that Plaintiff fails to allege a distinct enterprise because Defendants and the enterprise "are indentical." Kaikov Def. Mot at 19. This is not so.

In seeking to establish the existence of an enterprise within the meaning of the RICO Act, a plaintiff may describe an association-in-fact enterprise, defined as "a group of persons associated together for a common purpose of engaging in a course of conduct," the existence of which is proven "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981). Although such an association-in-fact enterprise need not have any formal structural features such as hierarchy, role differentiation, modus operandi, or chain of command, its structure must nevertheless be discernable in three ways: it must have a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit its associates to pursue the enterprise's purpose. *Boyle v. United States*, 556 U.S. 938, 946, 948 (2009). Stated differently, the members of the enterprise "must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes." *Id. See also City of N.Y. v. Chavez*, 944 F. Supp. 2d 260, 270 (S.D.N.Y. 2013) ("[The enterprise's] associates must not operate entirely 'independently and without coordination' — instead, the enterprise must have some existence

36

beyond the commission of the individual racketeering violations alone.").

Contrary to Defendants, Paintiff adequately alleged that the Realty Companies Enterprises has the shared purpose – to defraud investors and that the individual defendants – Arihay, the Corporate Defendants, and the Law Firm Defendants function together as a continuing unit, each of them necessary to accomplish each step or aspect of the fraudulent scheme. Arihay solicits investments and owns and manages each of the Corporate Defendant, which are used for holding titles to the properties and to launder and conceal funds; the Law Firm Defendants manage the legal affairs of each of the Kaikov Defendants, including assisting with recording fraudulent deeds and receiving fraudulent commissions on the sale of the investment properties; the Enterprise continues to operate. Each of the individual defendants is integral to the Enterprise and performs a separate "necessary" function. At the same time, each individual defendant also may have a legitimate function separate from the Enterprise – i.e., the Corporate Defendants may hold legitimate titles to properties; the Law Firm Defendants provide legal services to unrelated clients. This is sufficient to satisfy the enterprise element of 1962(c).

### 3.   Plaintiffs Adequately Allege A Pattern of Racketeering

A pattern of racketeering activity merely "requires at least two acts of racketeering activity" within ten years. 18 U.S.C. § 1961(5). *H.J. Inc. v. Northwestern Bell Tele. Co.*, 492 U.S. 229, 232 (1989) established a two-prong framework for considering pattern which merely requires "a relationship" among the predicate acts – "relatedness" -- , and a showing that the acts "amount to or pose a threat of continued criminal activity"  -- "continuity".  *Id*.  As set forth in Sections II, C and D, *supra*, Plaintiff has pled a pattern of racketeering lasting for over 5 years and consisting of numerous predicate acts detailed in the FAC.

### I.   PLAINTIFFS ADEQUATELY ALLEGE A RICO CLAIM UNDER 18 U.S.C. §1962(d) (COUNT IV)

Section 1962(d) of RICO makes it "unlawful for any person to conspire to violate any of the provisions of subsection . . . (c) of this section." 18 U.S.C. § 1962(d). In order "to establish a RICO conspiracy, a plaintiff must show a conspiracy to commit a substantive RICO violation" *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008); *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 487 (2d Cir. 2014) ("To establish  a violation of § 1962(d), a plaintiff must show that the defendant agreed with at least one other entity to commit a substantive RICO offense."); "Plaintiffs are not obligated to plead that [a defendant] agreed to commit any particular predicate act. . . .  Instead, they are required to plead facts demonstrating that [the defendant] agreed to join the alleged RICO enterprise with knowledge that predicate acts would be committed by members of that enterprise." *Martin Hilti Family Trust v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 430, 481 (S.D.N.Y. 2015); *see also Crabhouse of Douglaston Inc. v. Newsday Inc*., 801 F. Supp. 2d 64, 89 (E.D.N.Y. 2011) ('A RICO conspiracy claim requires an allegation that the defendant agreed to participate in a charged enterprise's affairs through a pattern of racketeering, not a conspiracy to commit predicate acts." *(quotations and citation omitted*)).

Plaintiffs' allegations here suffice to state a section 1962(d) claim as to Arihay and Bowman Defendants. Plaintiffs have alleged that Bowman knowingly assisted Airhay and the Corporate Defendants transferring and recording the deeds to the Investment Properties to Corporate Defendants, controlled by Arihay and profited from the fraudulent deals. Their motive in conspiring and operating the Realty Companies Enterprise was to obtain illegal profits through fraudulent scheme aimed at deceiving innocent investors. As explained above, Plaintiff sufficiently alleged violations of 1962(a), (b), and (c). Thus, Count IV adequately states a 1962(d) clais. *See, e.g., HT of Highlands Ranch, Inc. v. Hollywood Tanning Sys.*, 590 F. Supp. 2d

677, 690-691 (D.N.J. 2008) (1962(d) satisfied where "Plaintiffs' allegations regarding the objectives and composition of the conspiracy, and [defendant's[ conduct in advancing those objectives, "contain sufficient information . . . to enable the opposing side to prepare an adequate responsive pleading" to Plaintiffs' RICO conspiracy claim).

## IV.   DEFENDANTS' MOTION TO DISMISS STATE LAW CLAIMS SHOULD BE DENIED

### A.   THE COURT HAS INDEPENDENT DIVERSITY JURISDICTION OVER STATE LAW CLAIMS

Even if the Court were to sustain Defendants' Motions with respect to Plaintiff's RICO claims, which it should not, this Court has diversity jurisdiction over the state law claims. Pursuant to the diversity-of-citizenship stature, "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of a State and citizens or subjects of a foreign state . . ."  28 U.S.C. § 1332(a)(2).  Here, Plaintiff is a citizen of a foreign state – Russia, and all Defendants are citizens of New York.  The amount in controversy exceeds $75,000.  *See* FAC at ¶ 26.  Accordingly, there can be no dispute that the diversity citizenship requirement is satisfied in this case.[12]

### B.   PLAINTIFF STATED A CLAIM FOR COMMON LAW FRAUD (COUNT V)

To state a claim for common law fraud under New York law, plaintiff must allege that: "(1) defendant made a representation as to a material fact; (2) such representation was false; (3)

---

[12] The Kaikov Defendants argue that the state court claims should be remanded to state court because they are already being litigated in state court actions filed by 905 Mother Gaston LLC, 911 Realty Corp., and Arihay. Kaikov Defs. Mot. at 25.  Unlike the foregoing state court actions, this action does not involve a dispute over a *de jure* ownership of the investment properties.  In addition, the parties are different, assert different causes of action, and seek different relief. Accordingly, there is no basis for the Defendants' argument.

defendant intended to deceive plaintiff; (4) plaintiff believed and justifiably relied upon the statement and was induced by it to engage in a certain course of conduct; and (5) as a result of such reliance plaintiff sustained pecuniary loss." *Ross v. Louise Wise Servs., Inc.*, 8 N.Y.3d 478, 488, 836 N.Y.S.2d 509, 515, 868 N.E.2d 189, 195 (2007) (internal citations omitted).

### 1. Plaintiff Stated a Claim for Fraud Against the Kaikov Defendants

The FAC alleges that Arihay made false representations to Plaintiff in December of 2012 intended to deceive Plaintiff into investing into a purported joint real estate venture with Arihay. (FAC, ¶¶ 28-35. Plaintiff believed and justifiably relied on these representations – as they appeared credible and Plaintiff trusted that Arihay, his cousin, would deal honestly with Plaintiff – and agreed to invest the initial $100,000 in a joint venture. *Id*. ¶¶ 36-38. *See Braddock v. Braddock*, 60 A.D.3d 84, 88, 871 N.Y.S.2d 68, 72 (App. Div. 2009) (holding that where parties in a joint venture were cousins, "[plaintiff's] reliance on [defendant's] good faith may be found to be reasonable even where it might not be reasonable in the context of an arm's length transaction with a stranger.")

Arihay's representations to Plaintiff about the purported success of the joint venture and the need for additional investment at their meeting in Moscow in October of 2013 induced Plaintiff to give Arihay an additional $200,000. FAC ¶¶ 43-48. Arihay's representations about the joint venture were false as he never intended to repay Plaintiff or to equally share in the venture's profits. *Id*. ¶¶ 71-143.

In April of 2014, in order to induce Plaintiff to make additional investments and delay repaying the investments already made, Arihay falsely promised Plaintiff that he would transfer titles and deeds for the investment properties to 911 Realty – a corporation where Plaintiff had a 50% equitable interest. *Id*. ¶¶ 52-53. In justifiable reliance on these promises, Plaintiff gave another $100,000 to Arihay. *Id*. at ¶ 56. As Plaintiff found out later, the titles and/or deeds for the

properties purchased with his funds were owned by the Corporate Defendants which were solely under control and management of Arihay. *Id.*, ¶¶ 58, 71-143.

In November of 2016, Arihay once again falsely promised to transfer titles to ten identified investment properties to 911 Realty and induced Plaintiff to give him additional $500,000 for purported renovations. *Id.* ¶¶ 59 - 70. As detailed in the FAC, the Defendants' scheme continued well into 2018 when Arihay made unauthorized withdrawals from the 911 Realty's bank account, fraudulently transferred title to one the investment properties, and filed a fraudulent lawsuit against Plaintiff's son. *Id.* ¶¶ 132-143.

As a result of his reliance on Arihay's promises, Plaintiff sustained pecuniary losses which include the loss of his investments into the joint venture t, as well as profits on the sale of the properties purchased with Plaintiff's funds.

Accordingly, Plaintiff stated a claim for fraud against the Kaikov Defendants and their Motion to Dismiss should be denied.

## 2. Plaintiff Stated a Claim for Aiding and Abetting Fraud Against the Law Firm Defendants

Plaintiff also stated a claim for fraud against the Law Firm Defendants for aiding and abetting Kaikov Defendants perpetuate fraud against Plaintiff. A claim for aiding-and-abetting fraud requires plaintiff to "allege the existence of the underlying fraud, actual knowledge, and substantial assistance." *Oster v. Kirschner*, 77 A.D.3d 51, 55-56, 905 N.Y.S.2d 69, 72 (App. Div. 2010). Under New York law, "actual knowledge need only be pleaded generally, cognizant, particularly at the prediscovery stage, that a plaintiff lacks access to the very discovery materials which would illuminate a defendant's state of mind." *Id.*

"Substantial assistance exists where (1) a defendant affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables the fraud to proceed, and (2) the actions

41

of the aider/abettor proximately caused the harm on which the primary liability is predicated." *Fertitta v. Knoedler Gallery, LLC*, 2015 U.S. Dist. LEXIS 10419, at *32 (S.D.N.Y. Jan. 29, 2015), quoting *Stanfield Offshore Leveraged Assets, Ltd. v. Metro. Life Ins. Co.*, 64 A.D.3d 472, 883 N.Y.S.2d 486, 489 (App. Div. 2009) (internal quotation marks and citations omitted).

Plaintiff stated a claim against the Law Firm Defendants for conspiring to aid and abet Arihay in his fraudulent scheme. Plaintiff alleged the underlying fraud, th Law Firm's Defendants' actual knowledge of the scheme, as well as the substantial assistance element.  FAC, ¶¶ 71-126). The Law Firm Defendants knowingly assisted Arihay in recording the deeds to the properties in the names of the Corporate Defendants, controlled by Arihay, even though they knew that the deeds were supposed to be transferred to 911 Realty, a corporation which they also represented. *Id*.

### C.     PLAINTIFF STATED A CLAIM FOR UNJUST ENRICHMENT (COUNT VI)

Neither Defendant argues that the FAC does not state a claim for unjust enrichment. In the event the Court decides to address this argument, Plaintiff states the claim. To state a claim for unjust enrichment under New York law, plaintiff must allege that "(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004). FAC adequately please that the Kaikov Defendants and the Law Firm Defendants were enriched at the expense of Plaintiff through profiting from fraudulently obtained investment funds.

### D.     PLAINTIFF STATED A CLAIM FOR CIVIL CONSPIRACY TO COMMIT TORT (COUNT VII)

Defendants do not address this issue. While under New York law, civil conspiracy is not an independent tort "[a]ll that an allegation of conspiracy can accomplish is to connect nonactors, who otherwise might escape liability, with the acts of their co-conspirators." *Burns Jackson Miller Summit & Spitzer v. Lindner*, 88 A.D.2d 50, 452 N.Y.S.2d 80, 93-94 (2nd Dep't 1982), aff'd, 59 N.Y.2d 314, 451 N.E.2d 459, 464 N.Y.S.2d 712 (N.Y. 1983). To the extent that the Court perceives any pleading deficiencies in tort claims as to individual defendants, Plaintiff retains this Count to connect the co-conspirators to the alleged frauds.

### E.   PLAINTIFF STATED A CLAIM FOR CONVERSION (COUNT VIII)

"Conversion is the unauthorized exercise of dominion or control over specifically identified property which interferes with the owner's rights." *Hoffman v. Unterberg*, 9 A.D.3d 386, 388, 780 N.Y.S.2d 617, 619 (App. Div. 2004); *Gilman v Abagnale*, 235 A.D.2d 989, 991, 653 N.Y.S.2d 176 (App. Div. 1997); *Republic of Haiti v Duvalier*, 211 A.D.2d 379, 384, 626 N.Y.S.2d 472 (App. Div. 1995).

"When funds are provided for a particular purpose, the use of those funds for an unauthorized purpose constitutes conversion." *Hoffman,* 780 N.Y.S.2d at 619; *Meese v Miller*, 79 A.D.2d 237, 243, 436 N.Y.S.2d 496 (App. Dv. 1981). "Further, where possession of the property is initially lawful, conversion occurs when there is a refusal to return the property after a demand." *Hoffman*, 780 N.Y.S.2d at 619., citing *Matter of White v City of Mount Vernon*, 221 A.D.2d 345, 346, 633 N.Y.S.2d 369 (1995).

The FAC alleges that Plaintiff provided funds to Arihay for investment in a joint real estate venture.  FAC, ¶¶ 38, 47, 56, 68.  Arihay misappropriated these funds and used them to purchase properties in the name of the companies he owned and controlled and then refused to share in the profits when the properties were sold.  Furthermore, the Law Firm Defendants took 10% commission on the sale of the properties.   Arihay, the Corporate Defendants, and the Law Firm

Defendants unlawfully retained funds and/or properties that legally and/or equitably belong to Plaintiff. *Id.*, ¶¶ 71-131. Accordingly, Plaintiff stated a claim for conversion against all Defendants under New York law.

In addition, Plaintiff stated a cause of action for the Law Firm Defendants' aiding and abetting conversion of Plaintiff's property.  The elements of the cause of action for aiding and abetting conversion are (1) the existence of wrongful conduct by the primary wrongdoer; (2) abettor's actual knowledge of the wrongful conduct; and (3) substantial assistance in achieving the wrongdoing. *Diamond State Ins. Co. v. Worldwide Weather Trading LLC*, 2002 U.S. Dist. LEXIS 24023, at *17 (S.D.N.Y. Dec. 13, 2002).  As set forth above, the Amended Complaint supports the elements of the cause of action for aiding and abetting.

### F.  PLAINTIFF STATED A CLAIM FOR PIERCING THE CORPORATE VEIL AGAINST THE KAIKOV CORPORATE DEFENDANTS (COUNT IX)

Under New York law, a court may pierce the corporate veil where 1) the owner exercised complete domination over the corporation with respect to the transaction at issue and 2) such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil. *MAG Portfolio Consultant, GMBH v. Merlin Biomed Group LLC*, 268 F.3d 58, 63 (2d Cir. 2001).  "The party seeking to pierce the corporate veil must establish that the owners, through their domination, abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice against that party such that a court in equity will intervene." *GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*, 667 F. Supp. 2d 308, 325 (S.D.N.Y. 2009), citing *Morris v. N.Y. State Dep't of Taxation and Fin.*, 82 N.Y.2d 135, 141, 623 N.E.2d 1157, 603 N.Y.S.2d 807 (1993).

The FAC alleges that Arihay established the Corporate Defendants for the sole purpose of concealing sales of the investment properties and converting the resulting profits for his own benefit.  Arihay exercised complete dominion over the transactions involving the Corporate

44

Defendants. FAC, ¶¶ 58, 74-126, 209-212.   Accordingly, Plaintiff stated a claim for piercing corporate veil against the Corporate Defendants.

### G.    PLAINTIFF STATED A CLAIM FOR IMPOSITION OF CONSTRUCTIVE TRUST AND INJUNCTIVE RELIEF (COUNT XI)

"The  plaintiff's status as an alleged partner in a joint venture gives rise to a fiduciary relationship which allows the imposition of a constructive trust." *Plumitallo v. Hudson Atl. Land Co.*, 74 A.D.3d 1038, 1039-40, 903 N.Y.S.2d 127, 129 (App. Div. 2010); *accord Parr v. Ronkonkoma Realty Venture I, LLC*, 65 A.D.3d 1199, 1201, 885 N.Y.S.2d 522 (App. Div. 2009); *A.G. Homes, LLC v Gerstein*, 52 A.D.3d 546, 548, 860 N.Y.S.2d 582 (App. Div. 2008). The existence of a fiduciary relationship is particularly pronounced where the joint venture is between family members.  *See Braddock*, 871 N.Y.S.2d at 72 ("family members stand in a fiduciary relationship toward one another in a co-owned business venture.");  *Venizelos v. Oceania Mar. Agency*, 268 A.D.2d 291, 702 N.Y.S.2d 17 (App. Div. 2000) (shareholders in family business owe fiduciary duty to each other independent of any duty owed to the company).

 "Elements of a constructive trust are (1) a fiduciary relationship, (2) a promise, (3) a transfer in reliance thereon, and (4) unjust enrichment." *Id.*  "However, these requirements are not rigidly applied. The purpose of a constructive trust is to prevent unjust enrichment." *A.G. Homes*, 860 N.Y.S.2d at 583 (internal citations omitted).

In the FAC, Plaintiff alleged a fiduciary relationship with Arihay by virtue of their status as a partners in a joint venture.  Plaintiff's allegations of contributions towards the acquiring and developing the properties sufficiently alleged the "transfer in reliance" and "unjust enrichment" elements of the cause  of action for a constructive trust.  Accordingly, Plaintiff stated a claim for imposition of constructive trust against the Kaikov Defendants.

With respect to the Law Firm Defendants, the allegations in the Amended Complaint are sufficient to plead a cause of action for their aiding and abetting Arihay's breach of a fiduciary duty. The elements of the cause of action are underlying breach fiduciary duty, knowing participation by defendant through the provision of substantial assistance, and damage to plaintiff. *Torrance Constr., Inc. v. Jaques*, 127 A.D.3d 1261, 1264, 8 N.Y.S.3d 441, 445 (App. Div. 2015). Here, Plaintiff stated a claim for aiding and abetting as he alleged that Arihay breached his duty by defrauding Plaintiff, knowing participation by the Law Firm Defendants in the fraudulent scheme through the provision of substantial assistance to Arihay, and the resulting damage to Plaintiff.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' Motions to Dismiss. Alternatively, leave should be given to amend any technical pleading issues.

Respectfully submitted,

Dated: November 25, 2019                TEMKIN & ASSOCIATES, LLC

Maria Temkin, Esq. (*pro hac vice*)

1700 Market Street, Suite 1005
Philadelphia, PA 19103
Tel. (215) 939-4181
maria@temkinlegal.com

*Attorneys for Plaintiff Chalamo Kaikov*

## CERTIFICATE OF SERVICE

I certify that on this 25th day of November, 2019, I served a copy of Plaintiff's Omnibus Opposition to Defendants' Motions to Dismiss, via ECF filing on all parties of record as follows:

Charles Horn, Esq.
Daniel S. Hallak, Esq.
THE RUSSELL FRIEDMAN LAW GROUP, LLP
3000 Marcus Avenue, Suite 2E03
Lake Success, New York 11042
dhallak@rfriedmanlaw.com
chorn@rfriedmanlaw.com
*Attorneys for Defendants Arihay Kaikov, Pacific*
*2340 Corp., Royal A&K Realty Group, Inc.,*
*A&E.R.E. Management Corp., NY Prime Holding,*
*LLC and AG Realty Bronx Corp.*

Alex Kadochnikov, Esq.
Andreas E. Christou, Esq.
SHIRYAK, BOWMAN, ANDERSON, GILL & KADOCHNIKOV, LLP
80-02 Kew Gardens Road, Suite 600
Kew Gardens, NY 11415
akadochnikov@sbagk.com
achristou@abzlaw.com

*Attorneys for Defendants Dustin Bowman and*
*Shiryak, Bowman, Anderson, Gill & Kadochnikov, LLP*

Dated: <u>November 25, 2019</u>                TEMKIN & ASSOCIATES, LLC

Maria Temkin, Esq. (*pro hac vice*)

1700 Market Street, Suite 1005
Philadelphia, PA 19103
Tel.  (215) 939-4181
maria@temkinlegal.com

*Attorneys for Plaintiff Chalamo Kaikov*

47