**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

**CHALAMO KAIKOV,**                                    19-cv-2521-JBW-RER

                        **Plaintiff,**

        -against-

**ARIHAY KAIKOV, DUSTIN BOWMAN,**
**ANDERSON, BOWMAN & ZALEWSKI PLLC,**
**SHIRYAK BOWMAN, ANDERSON, GILL &**
**KADOCHNIKOV LLP, PACIFIC 2340 CORP.,**
**ROYAL A&K REALTY GROUP INC., A&E.R.E.**
**MANAGEMENT CORP., NY PRIME HOLDING**
**LLC, AG REALTY BRONX CORP., JOHN and**
**JANE DOE 1-19 and XYZ CORPORATION 1-10,**

                        **Defendants,**

-------------------------------------------------------------------X

<u>**PLAINTIFF CHALAMO KAIKOV'S MEMORANDUM OF LAW**</u>
<u>**IN SUPPORT OF HIS MOTION FOR PRELIMINARY INJUNCTIVE RELIEF**</u>
<u>**AS TO THE KAIKOV DEFENDANTS**</u>

Dated: <u>December 27, 2019</u>                    TEMKIN & ASSOCIATES, LLC
                                                Maria Temkin, Esq. (*pro hac vice*)
                                                1700 Market Street, Suite 1005
                                                Philadelphia, PA 19103
                                                Tel.  (215) 939-4181
                                                maria@temkinlegal.com

                                                *Attorneys for Plaintiff Chalamo Kaikov*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ iii

INTRODUCTION ........................................................................... 1

FACTUAL BACKGROUND ................................................................ 2

    A.    Arihay Entices Chalamo To Enter Into A Joint Real Estate Venture ..................... 2

    B.    Discussions Between Chalamo And Arihay In April 2014 ................................. 4

    C.    Chalamo's Visit To New York In November 2016 .................................. 4

    D.    The Kaikov Defendants' Fraudulent Conduct Between December 2016 and 2018 ........................................................................... 5

    E.    Continuation of Defendants' Fraudulent Scheme ................................... 6

    F.    Defendants' Other Victims ........................................................ 6

    G.    911 Realty's State Court Actions To Transfer Ownership Of Investment Properties ........................................................................ 7

    H.    Recent Sale Of The 567 Jerome Street Property ................................... 8

    I.    Plaintiff's Affidavit In Support Of His Motion For An Order To Freeze Assets Of Defendants And Expedited Discovery Related To The Assets .............. 8

    J.    Current Status Of The Investment Properties ....................................... 10

RELIEF REQUESTED ..................................................................... 12

PROCEDURAL HISTORY ................................................................. 12

LEGAL STANDARDS ..................................................................... 13

    A.    PRELIMINARY INJUNCTION STANDARD UNDER FED. R. CIV. P. 65 ...................... 13

    B.    EQUITABLE RELIEF ................................................................. 13

    C.    SECURITY ........................................................................... 15

i

     D.     PRELIMINARY INJUNCTIONS IN ACTIONS ASSERTING CLAIMS UNDER RICO ...........16

ARGUMENT ....................................................................................................................17

   I.     THE COURT SHOULD ENTER A RULE 65 ORDER FREEZING ASSETS IN WHICH PLAINTIFF  HAS A PROTECTABLE INTEREST ...................................17

     A.     PLAINTIFF WILL SUFFER IRREPARABLE HARM IF THE KAIKOV DEFENDANTS ARE PERMITTED TO DISSIPATE ASSETS ...........................................................17

     B.     PLAINTIFF  IS LIKELY TO SUCCEED ON THE MERITS OF COMMON LAW CLAIMS ..................................................................................................20

        1.   Plaintiff Is Likely to Prevail on a Claim for Fraud (Count V)..................20

        2.   Plaintiff Is Likely to Prevail on a Claim for Unjust Enrichment (Count VI) ...........................................................22

        3.   Plaintiff Is Likely to Prevail on a Claim for Constructive Trust (Count XI)................................................................22

        4.   Plaintiff Is Likely to Prevail on a Claim for Conversion (Count VIII)......23

     C.     BALANCE OF HARDSHIPS TIPS DECIDEDLY IN FAVOR OF THE MOVING PARTY.24

   II.    NO SECURITY IS REQUIRED .......................................................................25

CONCLUSION.................................................................................................................25

CERTIFICATE OF SERVICE .........................................................................................27

# TABLE OF AUTHORITIES

**AUTHORITIES**                                                                          **PAGES**

## CASES

*Aetna Cas. & Sur. Co. v. Liebowitz,* 570 F. Supp. 908 (E.D.N.Y. 1983) ......................... 16

*A.G. Homes, LLC v Gerstein*, 860 N.Y.S.2d 582 (App. Div. 2008) ................................. 23

*Braddock v. Braddock*, 871 N.Y.S.2d 68 (App. Div. 2009) ................................... 20-21, 23

*Chevron Corp. v. Donziger*, 833 F.3d 74 (2d Cir. 2016) ................................................. 16

*Chevron Corp. v. Donziger*, 37 F. Supp. 3d 653 (S.D.N.Y. 2014) .................................... 16

*Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*,
    598 F.3d 30 (2d Cir. 2010) ........................................................................................... 13

*Coley v. Vannguard Urban Improvement Ass'n. Inc*., 2016 U.S. Dist. LEXIS 172378
    (E.D.N.Y. Dec. 13, 2016) ............................................................................................ 14

*Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878
    (9th Cir. 2003) ......................................................................................................... 18-19

*De Beers Consolidated Mines, Ltd. v. United States*, 325 U.S. 212 (1945) ............... 13-14

*Deckert v. Independence Shares Corporation*, 311 U.S. 282 (1940) .............................. 13

*Doctor's Assocs. v. Stuart*, 85 F.3d 975 (2d Cir. 1996) ............................................ 16, 25

*Dong v. Miller*, 2018 U.S. Dist. LEXIS 48506 (E.D.N.Y. Mar. 23, 2018) ............... *passim*

*Eng v. Smith*, 849 F.2d 80 (2d Cir. 1988) ........................................................................ 20

*Enviromental Servs. v. Recycle Green Servs.,* 7 F. Supp. 3d 260 (E.D.N.Y. 2014) ......... 16

*Firemen's Ins. Co. of Newark. New Jersey v. Keatin*g, 753 F. Supp. 1146
    (S.D.N.Y. 1990) ............................................................................................................ 18

*FSLIC v. Dixon*, 835 F.2d 554 (5th Cir. 1987) ................................................................ 15

*Gelfand v. Stone*, 727 F. Supp. 98 (S.D.N.Y. 1989) ........................................................ 19

*Gilman v Abagnale*, 653 N.Y.S.2d 176 (App. Div. 1997) ........................................... 23-24

*Golden Pac. Bancorp v. FDIC*, 273 F.3d 509 (2d Cir. 2001) .......................................... 22

iii

*Grand River Enterprise Six Nations, Ltd. v. Pryor*, 481 F.3d 60 (2d Cir. 2007).............. 17

*Grupo Mexicano De Desarrollo v. Alliance Bond Fund*, 527 U.S. 308 (1999) .............. 14

*Gucci Am. v. Bank of China*, 768 F.3d 122 (2d Cir. 2014).......................................14-15

*Hoffman v. Unterberg*, 780 N.Y.S.2d 617 (App. Div. 2004)..................................... 23, 24

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70 (2d Cir. 1979) ................. 17

*Jayaraj v. Scappini*, 66 F.3d 36 (2d Cir. 1995)................................................................. 17

*Kaye v. Grossman*, 202 F.3d 611 (2d Cir. 2000) ............................................................ 22

*Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982 (11th Cir. 1995) .............. 15

*Matter of White v City of Mount Vernon*, 633 N.Y.S.2d 369 (1995)............................... 24

*Meese v Miller*, 436 N.Y.S.2d 496 (App. Dv. 1981) ...................................................... 24

*Micro Signal Research, Inc. v. Otus*, 417 F.3d 28 (1st Cir. 2005)................................... 18

*New Falls Corp. v. Soni Holdings, LLC*, 2019 U.S. Dist. LEXIS 113901
    (E.D.N.Y. July 5, 2019) ............................................................................................... 16

*Paradigm BioDevices. Inc. v. Centinel Spine. Inc.*, 2013 U.S. Dist. LEXIS 66858
    (S.D.N.Y. May 9, 2013)............................................................................................... 15

*Parr v. Ronkonkoma Realty Venture I, LLC*, 885 N.Y.S.2d 522 (App. Div. 2009) ......... 23

*People by Abrams v. Terry,* 45 F.3d 17 (2d Cir. 1995)..................................................... 16

*Plumitallo v. Hudson Atl. Land Co.*, 903 N.Y.S.2d 127 (App. Div. 2010) ..................... 23

*Rahman v. Oncology Assocs.*, 198 F.3d 489 (4th Cir. 1999)....................................... 14, 15

*Republic of Haiti v Duvalier*, 626 N.Y.S.2d 472 (App. Div. 1995) ................................ 24

*Republic of the Philippines v. Marcos*, 862 F.2d 1355 (9th Cir. 1988)........................... 15

*Ross v. Louise Wise Servs., Inc.*, 868 N.E.2d 189 (2007).................................................. 20

*Shamrock Power Sales, LLC v. Scherer*, 2016 U.S. Dist. LEXIS 144773
    (S.D.N.Y. Oct. 18, 2016) ............................................................................................. 15

*T-Mobile Ne. LLC v. Water Auth. of W. Nassau Cty.*, 249 F. Supp. 3d 680
    (E.D.N.Y. 2017) ................................................................................................ 17

*Trump v. Vance*, 941 F.3d 631 (2d Cir. 2019) ................................................. 13

*USACO Coal Co. v. Carbomin Energy, Inc.*, 689 F.2d 94 (6th Cir. 1982) ..................... 15

*Venizelos v. Oceania Mar. Agency*, 702 N.Y.S.2d 17 (App. Div. 2000)........................ 23

*Wali v. Coughlin*, 754 F.2d 1015 (2d Cir. 1984) ............................................. 20

*Wishnatzki & Nathel v. H.P. Island-Wide*, 2000 U.S. Dist. LEXIS 15664
    (S.D.N.Y. Oct. 26, 2000) ....................................................................... 13-14

## S<small>TATUTES AND</small> O<small>THER</small> A<small>UTHORITIES</small>

Federal Rule of Civil Procedure 9  .................................................................. 13

Federal Rule of Civil Procedure 12  ............................................................... 13

Federal Rule of Civil Procedure 65  ....................................................... 13, 15, 16

Racketeer Influenced and Corrupt Organizations Act ("RICO"),
    18 U.S.C. §1962(a)-(d) ........................................................................ *passim*

# INTRODUCTION

Chalamo Kaikov ("**Plaintiff**" or "**Chalamo**") has brought claims, *inter alia*, for violation of federal RICO, 18 U.S.C. § 1961 *et seq.*; fraud, conspiracy, and unjust enrichment stemming from an ongoing fraudulent scheme masterminded and operated by his cousin Arihay Kaikov ("**Arihay**") and   the companies he owned and controlled[1] (collectively, the "**Kaikov Defendants**"), aimed at luring Plaintiff to invest into a purported joint real estate venture.

In reliance on Arihay's fraudulent representations, Chalamo gave Arihay over $775,000 to purchase, renovate, and re-sell properties in New York City.  In breach of his promises to Chalamo, Arihay transferred ownership of some properties to his companies rather than to 911 Realty Corp. ("**911 Realty**"), an entity set up by the joint venture, converted profits from the sale of other properties, inflated expenses, and engaged in other fraudulent conduct as set forth in more detail below.

As Plaintiff recently found out, approximately a month ago, as the lawsuit was pending, Arihay caused to sell one of the properties, located at 567 Jerome Street, Brooklyn, which was subject of this lawsuit. Plaintiff now seeks a preliminary injunction to prohibit the Kaikov Defendants from transferring, dissipating, spending, or otherwise giving up control of the properties subject of this lawsuit, as well as freezing funds in the Kaikov Defendants' bank accounts representing Plaintiff's investments into the joint venture.  It is now clear that the Kaikov Defendants are likely to sell the investment properties purchased with Plaintiff's funds; dissipate any proceeds from the sale of the investment properties and any remaining funds received from Plaintiff.  As more time goes by, there will be more "opportunities" for the Kaikov Defendants to

---

[1] Defendants Pacific 2340 Corp., Royal A&K Realty Group Inc., A&E.R.E. Management Corp., NY Prime Holding LLC, AG Realty Bronx Corp., as well as other unknown corporate entities.

dissipate the assets subject of this action.

Courts regularly exercise the authority pursuant to Fed. R. Civ. P. 65 to issue orders freezing defendants' assets where there is a nexus between the assets sought to be frozen through an interim order and the ultimate relief requested in the lawsuit. The Kaikov Defendants are likely, before any judgment is issued in this case, to dispose of and dissipate the assets in which Plaintiff has a cognizable interest and which are subject to equitable relief sought by Plaintiff. Given that Plaintiff will suffer irreparable harm absent injunctive relief and is likely to succeed on the merits of this action, Plaintiff's motion for preliminary injunction should be granted.

## FACTUAL BACKGROUND

### A.      Arihay Entices Chalamo to Enter into a Joint Real Estate Venture

In December of 2012, Arihay approached Chalamo, who lives in Russia, to discuss a potential business venture.  Arihay represented that he had significant experience in purchasing foreclosed properties in Brooklyn and renovating, managing, and selling them for profit.  He asserted that he had been successful in his previous real estate projects and had a trusted team of contractors and lawyers that will save them on renovation expenses and legal fees. *See* First Amended Complaint, Docket No. 20 ("**FAC**") at ¶¶ 28-30.

Arihay promised that he will personally manage the joint venture, locate and acquire the properties, keep Chalamo appraised about the properties and renovation  progress, and account for all expenses. Arihay and Chalamo would be equally responsible for all capital obligations to acquire and manage the properties and share equally in any profits from their sale.  Arihay further represented that their joint venture would be extremely beneficial to Chalamo and would turn up quick profits of at least 200% to 300%.  Arihay surmised that an ownership interest in an informal joint venture would be more enticing to Chalamo and suggest higher illusory profits than a loan

with set terms which would have to be set in writing and repaid by Arihay.  Arihay did not want to put anything in writing as he never intended to return any "investments" to Chalamo.

Arihay told Chalamo that Chalamo had to decide quickly, as Arihay purportedly had other interested investors.  Chalamo found Arihay's proposal attractive because of its promised high returns, because Chalamo perceived investment in real estate to be safe, and because it would not require his involvement in locating investment properties, day-to-day management of renovations, or handling legal matters.  Arihay's representations and the fact that he was his cousin, convinced Chalamo that Arihay could be trusted to deal fairly and honestly in the proposed joint venture. FAC, ¶¶ 32-37.

Relying on Arihay's representation, Chalamo invested $100,000 in the joint venture on the terms proposed by Arihay (the "**Initial Investment**").  Sometime in 2013, Arihay informed Chalamo that the Initial investment returned a profit of $100,000 and that Chalamo should re-invest it in order to continue making profit.  Although Arihay promised to identify specific properties purchased with the Initial Investment, as well as itemize expenses and costs, he did not do that at the time.  Arihay did not want to put anything in writing because he never intended to return money to Chalamo. FAC, ¶¶ 38-42.

In October 2013, Arihay traveled to Moscow where he met with Chalamo.  There, he told Chalamo that the Initial Investment had returned additional profit of $100,000, for a total profit of $200,000.  Arihay did not disclose which properties returned profit but requested that Chalamo make an additional capital contribution of $200,000 to purchase more properties, promising returns in excess of $500,000 when the properties are sold.  Arihay disclosed purported profits to Chalamo in order to fraudulently induce Chalamo to make further investments.  Based on Arihay's

3

representations at the meeting, Chalamo invested additional $200,000 into the joint venture.  FAC, ¶¶ 43-48.

### B.    Discussions between Chalamo and Arihay in April 2014

In the beginning of 2014, Chalamo and Arihay had numerous telephone conversations where Chalamo requested Arihay to identify properties in which money were invested and explain when profits can be distributed.  Arihay continued to refuse to provide any information related to the properties or alleged profits Arihay claimed were generated in 2013.  FAC, ¶¶ 49-50.

As Chalamo no longer felt comfortable operating on an informal verbal agreement, he requested that some formal relationship be established.  In order to fraudulently induce Chalamo to make additional investments and delay repayment of existing investments, Arihay agreed to form a joint corporation with Chalamo, where they would be *de facto* 50-50 % owners, and which would hold the tiles and/or deeds for the Investment Properties and account for joint investments and expenses.  It was also agreed that Chalamo's son Khanan, who lives in New York, would hold a position of the corporation's president and at all times act as Chalamo's agent and on Chalamo's behalf.  The corporation, called 911 Realty Corp., was opened on April 29, 2014. FAC, ¶¶ 49-55.

In May 2015, in reliance on Arihay's promises, Chalamo provided another $100,000 to Arihay as a further investment into the joint venture.  However, for the next two years Arihay refused to transfer any property titles to 911 Realty due to purportedly ongoing litigations to clear titles.  As Chalamo found out later, the titles and/or deeds for the properties purchased with Chalamo's investments were owned by Defendants Pacific 2340 Corp., Royal A&K Realty Group Inc., A&E.R.E. Management Corp., NY Prime Holding LLC, AG Realty Bronx Corp. and possibly other entities, which were solely under control and management of Arihay.  FAC, ¶¶ 55-58.

### C.    Chalamo's Visit to New York in November 2016

In November 2016, Chalamo came to New York and met with Arihay to discuss the return

of his investment.  In order to delay payment of the funds, Arihay finally agreed to provide a list of Investment Properties subject to the joint agreement.  The following were identified by Arihay:

- 567 Jerome Street, Brooklyn, New York 11207;
- 317 East 31st Street, Brooklyn 11226;
- 118-36 219th Street, Jamaica, New York 11411;
- 118-26 220th Street, Jamaica, New York 11411;
- 909 Elton Street, Brooklyn, New York 11208;
- 280 West 127th Street, New York, New York 10027;
- 844 Herkimer Street, Brooklyn, New York 11233;
- 243 Buttrick Avenue, Bronx, New York 10465;
- 905 Mother Gaston Boulevard, Brooklyn, New York 11212;
- 406 East 94th Street, Brooklyn, New York 11212.

During the meeting, also attended by Chalamo's sons Khanan and Ariel, brother Rakhmine, and sister-in-law Elena, the parties made notes reflecting Arihay's representations of how much was already invested in each property, and what anticipated expenses and resale value would be. Arihay also confirmed the addresses of properties in a series of texts sent to Khanan on November 10 and 11, 2016.  The parties even visited some of the properties. The parties again agreed that all titles and/or deeds for the invested properties would be immediately transferred to 911 Realty for joint ownership. FAC, ¶¶ 59-64.

The parties then opened a bank account for 911 Realty, which was used by Arihay to pay sometimes inflated expenses for renovating properties. Khanan was to be a signatory on the account on behalf of Chalamo. Arihay also explained that further investment was needed in order to pay for renovations.

In reliance on Arihay's representations and convinced that he was now a 50% owner of ten identified Investment Properties, Chalamo agreed to invest additional funds in the joint venture. FAC, ¶¶ 65-67.

**D.      The Kaikov Defendants' Fraudulent Conduct between December 2016 and 2018**

As further described in the FAC, Arihay subsequently only transferred deeds to two properties, but failed to transfer the deeds to other 8 properties to 911 Realty, in violation of the agreement. However, from December 2016 through part of 2018, Arihay used 911 Realty's bank account to pay renovation expenses for the Investment Properties. Most of the funds required for renovations were provided on "as needed" basis by Chalamo. FAC, ¶¶ 69-73.

**E.    Continuation of Defendants' Fraudulent Scheme**

Sometime in May of 2018, Chalamo confronted Arihay regarding transferring the remaining eight (8) property titles to the 911 Realty or return of investment funds. When confronted by Plaintiff, Arihay became enraged and started making threats to Chalamo and his sons. FAC, ¶¶ 132-137.

In June, 2018, Arihay, traveled to Florida, where he, without authorization, made a series of withdrawals from the business account of 911 Realty in Chase Bank, totaling $116,650 in funds, falsely representing to the bank that he was an authorized signatory on the account, when he was not. These monies belong to Plaintiff and represented partial profit from Plaintiff's investment in the 406 East 94th Street Property received at closing in April 2018. FAC, ¶¶ 139-140.

**F.    Defendants' Other Victims**

From 2012, Arihay ran a similar fraudulent scheme on a number of other investors.  In a lawsuit filed on September 7, 2018, in New York Supreme Court, County of Nassau, Index No. 612149/2018, Plaintiff Ralph Faziyev alleges that Arihay entered into agreement with Faziyev, where Faziyev invested $300,000 in joint venture to acquire, renovate, and sell properties for profit.  Based on the allegations, Arihay fraudulently diverted Faziyev's money to his own corporations without any intention of repayment.

Arihay recently solicited another potential investor, Alex Goryunov to invest money in a real estate in Miami. Arihay was attempting to solicit $20 million from Goryunov claiming that the property is worth $53 million. Upon information and belief, Arihay continues the scheme now to defraud other investors forming new "joint venture" companies, yet unknown to Plaintiffs. FAC, ¶¶ 144-149.

**G.      911 Realty's State Court Actions to Transfer Ownership of Investment Properties**

911 Realty filed two actions in the Supreme Court of New York, County of Kings, seeking to transfer the deeds to the investment properties at 844 Herkimer St., Brooklyn (the "**Herkimer Street Property Action**") and 317 E. 31st St., Brooklyn (the "**31st Street Property Action**") Properties to 911 Realty from, respectively A&E.R.E. Management Corp. and A&K Realty Group Inc. *See* Temkin Declaration ("**Temkin Dec.**"), ¶¶ 9-15, Exs. 4-10. Arihay and his companies opposed both actions on the grounds, *inter alia*, of this pending federal litigation. On October 3, 2019, the Supreme Court dismissed the action pertaining to the 31st Street Property citing this litigation. *Id*., Ex. 9. The Supreme Court also dismissed the 31st Street Action because Plaintiff failed to add an additional party, Paul Fine. As it turned out, a third party Paul Fine - previous owner of the 31st Street Property is currently suingDefendant Royal A&K alleging that Defendant obtained the deed to the 31st Street Property by fraudulent means. The Kaikov Defendants never disclosed this information to Plaintiff. Temkin Dec., ¶ 15, Ex. 10. This further evidences the Kaikov Defendants' fraudulent intent.

Another pending state court action is over the investment property at 905 Mother Gaston Boulevard. As alleged, although Arihay initially transferred the deed to this property to jointly owned 911 Realty, in July 2018 he fraudulently transferred the deed to the Mother Gaston Property from 911 Realty, without authorization or authority to do so, to another entity Mother

7

Gaston 905 Corp. opened and owned by him. The Kaikov Defendants are seeking to dismiss the action, presumably, to sell the property without notice to Plaintiff, citing pending action in this court. Temkin Dec., ¶¶ 11-13, Exs. 12-13.

In the event the state actions are dismissed based on the pendency of this litigation, there is reasonable presumption that the properties will be sold. In the event the sought injunction is granted the *Herkimer Property* and *Mother Gaston* Property state court actions can be stayed and/or dismissed. Temkin Dec., ¶ 20.

**H.     Recent Sale of the 567 Jerome Street Property**

As it turned out, on November 14, 2019, Arihay  sold one of the investment properties, located at 567 Jerome Street, Brooklyn, New York 11207 (the "**567 Jerome Property**"). *See* Temkin Dec., ¶¶ 2-8, Exs. 1-3. It appears that, despite having knowledge the 567 Jerome Property is subject to the instant lawsuit, Arihay knowingly sold the property approximately 4 weeks ago with intent to divert money from the sale. Needless to say, Plaintiff received no notice from either Defendant and only learned about the sale from searching the official database of the Office of the City Register. This reinforces Plaintiff's belief that absent injunction, the remaining Investment Properties will be sold and any proceeds from the sale – diverted or dissipated to avoid repaying money to Plaintiff.

**I.     Plaintiff's Affidavit in Support of His Motion for an Order to Freeze Assets of Defendants and Expedited Discovery Related to the Assets**

As set forth in  the Affidavit of Chalamo Kaikov ("Chalamo Aff.") since December 2012, he has  transferred a substantial amount of money to Arihay Kaikov ("Arihay"),  including the amount of $775,000 that he  transferred to Arihay as follows:

     a.   $100,000 in December 2012 as initial investment;

     b.   $200,000 additional funds in October 2013 after Arihay met Chalamo in Moscow,

Russia and told him that the initial investment returned profits and additional

capital contribution was needed to purchase more properties;

c.  $100,000 in May 2015 after Arihay "identified" properties which were

"purchased" by using Chalamo's funds and to transfer deeds to jointly owned 911

Realty Corporation ("911 Realty);

d.  $220,000 transferred on December 6, 2016 to 911 Realty's bank account to pay

for expenses for property located at 406 East 94th Street, Brooklyn, New York

11212, which was later sold by Arihay;

e.  $85,000 paid by check to Defendant  Pacific 2340 Corp. in 2016-2017 to pay for

expenses for property located at 118-36 219th  St Jamaica, NY 11411;

f.  $70,000 paid by check to Defendant A&E.R.E. Management Corp. in summer

2017 to pay for expenses for property located at 844 Herkimer St., Brooklyn, NY

11233.

Chalamo Aff., ¶¶ 4-6.

As Arihay never transferred the deeds to the Investment Properties to 911 Realty

pursuant to the  agreement, and opposing the state actions filed to preserve status quo of the

remaining investment, Chalamo states that he is concerned that Arihay will cause to sell the

properties if no injunction is issued. This conclusion is also based on the fact that Arihay already

sold certain properties without Chalamo's knowledge. This includes sale of :

- 118-36 219th Street, Jamaica, New York 11411;
- 909 Elton Street, Brooklyn, New York 11208;   and
- 243 Buttrick Avenue, Bronx, New York 10465.

Chalamo never received any return of his investment (or profits) from the sale of the above.

Chalamo Aff., ¶¶ 7-15.

9

This belief is further reinforced by the recent sale of the 567 Jerome Street Property. Chalmo was never notified about the sale and believes that Arihay will do anything to hide any money he receives and will try to sell all other properties and transfer any money out of reach in order to avoid repaying Chalamo. Chalamo Aff., ¶¶ 16-17.

During the course of the state court litigations, Chalmo also found out that Arihay claims that he moved to Miami, Florida where he boasts that he lives a lavish lifestyle. If this is true, this move provides even more opportunities for Arihay to dissipate the assets subject of this action. Chalamo Aff., ¶¶ 18-20.

As stated in the FAC, Chalmo also found out that Arihay recently solicited another potential investor, Alex Goryunov to invest money in a real estate in Miami. Arihay was attempting to solicit $20 million claiming that the property is worth $53 million. Upon information and belief, Arihay already used up all money received from me and is seeking to defraud other investors to attract capital into his real estate flipping scheme. Chalamo Aff., ¶¶ 21-22.

As stated in the FAC, in summer of 2018, Arihay traveled to Florida, where he, without authorization, made a series of withdrawals from the business account of 911 Realty in Chase Bank, totaling $116,650 in funds, falsely representing to the bank that he was an authorized signatory on the account, when he was not. Arihay will similarly try to put out of reach any money that he solicited from Chalmo while this lawsuit is pending. Chalamo Aff., ¶¶ 23-24.

**J.    Current Status of the Investment Properties**

For the Court's convenience, the current status of the properties has been summarized in the below chart, which is also attached as Exhibit 14 to the Temkin Declaration. *See* Temkin Dec., ¶ Ex. 14.

| Property | Invested Money[2] | Status | Request to Freeze |
|---|---|---|---|
| Sold Properties | | | |
| 567 Jerome Street, Brooklyn | $50,000 for title | Sold without notice to Plaintiff on 11/14/19 | |
| 118-36 219th Street, Jamaica | • $50,000 for title<br>• $85,000 for renovations | Sold without notice to Plaintiff on 4/25/18 | |
| 909 Elton Street, Brooklyn | $50,000 for title | Sold without notice to Plaintiff on 4/19/18 | |
| 243 Buttrick Avenue, Bronx | $50,000 for title | Sold without notice to Plaintiff on 1/31/17 | |
| 406 East 94th Street, Brooklyn | • $50,000 for title<br>• $220,000 for renovations<br>• Numerous other expenses paid from 911 Realty Bank Account<br>• Partial profit of $116,650 stolen by Arihay from TD Bank account | Sold jointly through 911 Realty on 4/19/2018 | |
| Remaining  Properties As to Which Preliminary Injunction Is Sought | | | |
| 317 East 31st Street, Brooklyn | $50,000 for title | State action dismissed; title contested by third party | Yes, if title returned to D's |
| 844 Herkimer Street, Brooklyn | • $50,000 for title<br>• $70,000 for renovations | State action; motion to dismiss pending | yes |
| 905 Mother Gaston Boulevard, Brooklyn | • $50,000 for title<br>• Numerous expenses paid from 911 Realty Bank Account | State action; motion to dismiss pending | yes |
| 118-26 220th Street, Jamaica | $50,000 for title | unknown | yes |
| 280 West 127th Street, New York | $50,000 for title | unknown | yes |

---

[2] Plaintiff was told by Arihay that the Kaikov Defendants paid $50,000 for titles to each of the 10 properties, i.e. $500,000 of the Investment Funds in total. Plaintiff has no knowledge of the actual amount that Arihay paid for the titles or how, in reality, the Investment Funds were spent.

## RELIEF REQUESTED

In order to prevent further dissipation of the assets, Plaintiff seeks immediate preliminary injunctive relief in the form of preliminary injunction prohibiting Arihay or any of the corporate Kaikov Defendants from selling, transferring, conveying, mortgaging, liening, encumbering, taking any action to impair the value of, or otherwise disposing of the remaining Investment Properties pending a determination of this action, specifically:

- real property located at 317 East 31st Street, Brooklyn 11226 (in the event that Arihay receives the title after the litigation);

- real property located at 118-26 220th Street, Jamaica, New York 11411;

- real property located at 280 West 127th Street, New York, New York 10027;

- 844 Herkimer Street, Brooklyn, New York 11233; and

- 905 Mother Gaston Boulevard, Brooklyn, New York 11212.

Plaintiff also seeks an order compelling Arihay to disclose all bank accounts owned by him personally or by third parties on his behalf and freezing assets of Arihay and the corporate defendants in the amount of $888,650 representing (a) $775,000 of the funds Chalamo transferred to Arihay since 2012, which he never returned and  (b) $116,650 that Arihay stole from 911 Realty bank account.

## PROCEDURAL HISTORY

Plaintiff filed this action on April 29, 2019 and the Amended Complaint on September 6, 2019.  The Amended Complaint asserts claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(a)-(d) (Counts I through IV), common law fraud (Count V), unjust enrichment (Count VI), conspiracy to commit tort (Count VII), conversion (Count VIII), piercing the corporate veil (Count IX), vicarious liability (Count X), and imposition of constructive trust and injunctive relief (Count XI).

In addition to damages, the Amended Complaint seeks equitable relief in the form of imposition of constructive trust, disgorgement of profits and all sums collected from Plaintiff, and accounting of all profits incurred from the use of Plaintiff's monies.

On October 7, 2019, Defendants filed Motions to Dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b).  Plaintiff filed a Memorandum in Opposition on November 25, 2019.  The hearing on the Motions is set for January 8, 2020.

## LEGAL STANDARDS

### A.   PRELIMINARY INJUNCTION STANDARD UNDER FED. R. CIV. P. 65

District courts may grant preliminary injunctive relief where the party seeking the injunction demonstrates "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Trump v. Vance*, 941 F.3d 631 (2d Cir. 2019), *quoting Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd*., 598 F.3d 30, 35 (2d Cir. 2010).

### B.   EQUITABLE RELIEF

In this Circuit, "many courts have held [that] where plaintiffs seek both equitable and legal relief in relation to specific funds, a court retains its equitable power to freeze assets." *Dong v. Miller*, 2018 U.S. Dist. LEXIS 48506, at *25 (E.D.N.Y. Mar. 23, 2018) (Garaufis, Senior J.) (internal citations omitted);  *Wishnatzki & Nathel v. H.P. Island-Wide*, 2000 U.S. Dist. LEXIS 15664, at *4 (S.D.N.Y. Oct. 26, 2000) ("where the particular funds sought to be frozen are also the funds at issue in the suit, a preliminary injunction is proper.")[3]

---

[3] These principles are consistent with the Supreme Court decisions in *Deckert v. Independence Shares Corporation*, 311 U.S. 282,  288-89 (1940), where Court held that preliminary injunction is appropriate where the ultimate relief sought is equitable in nature and *De Beers Consolidated*

"In such a case, however, most courts require the movant to demonstrate "a 'nexus' between the injunctive relief requested and the equitable relief ultimately sought." *Id*., *quoting Coley v. Vannguard Urban Improvement Ass'n. Inc*., 2016 U.S. Dist. LEXIS 172378, 2016 WL 7217641, at *2 (E.D.N.Y. Dec. 13, 2016). *See also Rahman v. Oncology Assocs*., 198 F.3d 489, 496 (4th Cir. 1999) ("[t]his nexus between the assets sought to be frozen through an interim order and the ultimate relief requested in the lawsuit is essential to the authority of a district court in equity to enter a preliminary injunction freezing assets.")

As Senior Judge Garaufis recently explained in *Dong*, "to establish that such a 'nexus' exists, the party seeking an injunction must show that the injunction acts in aid of the recovery sought in equity, — in other words, that the preliminary injunction is reasonably necessary to preserve the status quo with respect to particular assets so that the court can grant the movant ultimate relief." 2018 U.S. Dist. LEXIS 48506, at *25 (internal citations and quotation marks omitted); *see also Rakhman*, 198 F.3d at 496 ("When the plaintiff creditor asserts a cognizable claim to ***specific*** assets of the defendant or seeks a remedy involving those assets, a court may in the interim invoke equity to preserve the *status quo* pending judgment where the legal remedy might prove inadequate and the preliminary relief furthers the court's ability to grant the final relief requested." (emphasis added)).

Where plaintiffs established the requisite nexus between the assets sought to be frozen through an interim order and the ultimate relief requested in the lawsuit, the courts granted asset-freezing injunctions under Rule 65 in a number of cases. *See, e.g*, *Gucci Am. v. Bank of China*,

---

*Mines, Ltd. v. United States*, 325 U.S. 212, 220 (1945), where the Court held that "[a] preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally." By contrast, federal courts lack equitable powers to arrest assets unrelated to the underlying litigation so that they may be preserved to satisfy a potential money judgment. *Grupo Mexicano De Desarrollo v. Alliance Bond Fund*, 527 U.S. 308 (1999).

14

768 F.3d 122, 130 (2d Cir. 2014) (district court had authority to issue preliminary injunction freezing alleged infringing defendants' assets where plaintiff sought accounting of the defendants' profits in addition to monetary damages); *Rakhman,* 198 F.3d at 499 (sustaining preliminary injunction freezing defendants' assets where, in addition to monetary relief, government sought to impose a constructive trust over assets obtained through fraud and to void fraudulent transfers of assets obtained through fraud); *Dong*, 2018 U.S. Dist. LEXIS 48506, at *32 (issuing a preliminary injunction freezing Defendants' assets that are the subject of Plaintiff s equitable-lien claim); *Shamrock Power Sales, LLC v. Scherer*, 2016 U.S. Dist. LEXIS 144773, at *24 (S.D.N.Y. Oct. 18, 2016) (issuing preliminary injunction freezing defendants' assets subject to plaintiff's claims for restitution and unjust enrichment); *Paradigm BioDevices. Inc. v. Centinel Spine. Inc*., 2013 U.S. Dist. LEXIS 66858, at *7 (S.D.N.Y. May 9, 2013) (entering preliminary injunction to freeze assets in which plaintiff asserted an equitable interest); *Wishnatzki*, 2000 U.S. Dist. LEXIS 15664, at *5 (granting preliminary injunction freezing trust fund assets in which plaintiff asserts an equitable interest and which are subject of the underlying suit).[4]

## C.  SECURITY

To secure relief under Rule 65, the movant must give "security in an amount that the court considers proper to pay the costs and damages by any party found to have been wrongfully

---

[4] *See also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995) (district court had authority to freeze assets which could have been used to satisfy an equitable award of profits); *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1365 (9th Cir. 1988) (court had authority to issue preliminary injunction to "prevent a defendant from dissipating assets in order to preserve the possibility of equitable remedies" where plaintiffs brought RICO claims and sought a constructive trust); *FSLIC v. Dixon*, 835 F.2d 554, 557 (5th Cir. 1987) (upholding preliminary injunction when the complaint requested equitable relief in the form of restitution, and accounting, a constructive trust, and injunctive relief, as well as legal relief in the form of damages"); *USACO Coal Co. v. Carbomin Energy, Inc.*, 689 F.2d 94 (6th Cir. 1982) (affirming asset-freezing preliminary injunction where the district court found that the defendants' property was likely to be the subject of a constructive trust imposed for the benefit of the plaintiffs).

enjoined or restrained."  Fed. R. Civ. P. 65(c).  "[T]he District Court is vested with wide discretion in the matter of security and it has been held proper for the court to require no bond where there has been no proof of likelihood of harm . . ." *Doctor's Assocs. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996);  *New Falls Corp. v. Soni Holdings, LLC*, 2019 U.S. Dist. LEXIS 113901, *41 (E.D.N.Y. July 5, 2019).

### D.  PRELIMINARY INJUNCTIONS IN ACTIONS ASSERTING CLAIMS UNDER RICO

The Second Circuit held in *Chevron Corp. v. Donziger*, 833 F.3d 74, 162 (2d Cir. 2016), that although injunctive relief is available to private plaintiffs pursuant to 18 U.S.C. § 1964(a), only Attorney General may seek temporary relief under Section 1964(b).

Separately and independently from the RICO claims, the grounds for preliminary injunction may rest upon pendent claims under state law. *See People by Abrams v. Terry,* 45 F.3d 17, 23 (2d Cir. 1995) ("Even assuming that [federal statute] does not authorize an injunctive remedy, the injunction can be sustained on the basis of the independent State law claims."); *Enviromental Servs. v. Recycle Green Servs.,* 7 F. Supp. 3d 260, 280-81 (E.D.N.Y. 2014) (granting preliminary injunction where, separate from the RICO claim, plaintiff established a likelihood of success on the merits on a state law cause of action); *Chevron Corp. v. Donziger*, 37 F. Supp. 3d 653, 668 (S.D.N.Y. 2014) ("even were equitable relief unavailable under RICO, the Court would have granted the same relief on the basis [of a state claim]."); *Aetna Cas. & Sur. Co. v. Liebowitz,* 570 F. Supp. 908, 910 (E.D.N.Y. 1983) (finding that, separate from RICO claims, the court could sustain a preliminary injunction on the basis of state law claims).

Here, in addition to the RICO claims, Plaintiff alleges pendent state law claims of, *inter alia*, common law fraud, unjust enrichment, imposition of constructive trust, and conversion.

## ARGUMENT

**I.     THE COURT SHOULD ENTER A RULE 65 ORDER FREEZING ASSETS IN WHICH PLAINTIFF  HAS A PROTECTABLE INTEREST**

Plaintiff satisfies the Second Circuit test for preliminary relief.  Given the nexus between the assets at issue and Plaintiff's claims, the Court should issue a temporary restraining order and preliminary injunction based on its equitable powers.

### A.     PLAINTIFF WILL SUFFER IRREPARABLE HARM IF THE KAIKOV DEFENDANTS ARE PERMITTED TO DISSIPATE ASSETS

"[I]rreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, and . . . the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *T-Mobile Ne. LLC v. Water Auth. of W. Nassau Cty*., 249 F. Supp. 3d 680, 683 (E.D.N.Y. 2017) (Hurley, Senior J.), *quoting Grand River Enterprise Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66-67 (2d Cir. 2007) (internal quotation marks and citations omitted).

"To satisfy the irreparable harm requirement, [plaintiffs] must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Id., quoting Grand River Enterprise*, 481 F.3d at 66.  Furthermore, "[i]rreparable harm 'means injury for which a monetary award cannot be adequate compensation.'" *Jayaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir. 1995), *quoting Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc*., 596 F.2d 70, 72 (2d Cir. 1979).

"It is familiar law that where a non-movant's assets may be dissipated before final relief can be granted, or where the non-movant threatens to remove its assets from the court's jurisdiction, such that an award of monetary relief would be meaningless, injunctive relief is

17

proper." *Dong*, 2018 U.S. Dist. LEXIS 48506, at *35 (E.D.N.Y. Mar. 23, 2018), quoting *Firemen's Ins. Co. of Newark. New Jersey v. Keatin*g, 753 F. Supp. 1146, 1153 (S.D.N.Y. 1990).

For example, in *Dong*, the District Court held that Plaintiff has demonstrated irreparable harm warranting issuance of a preliminary injunction "in light of the extensive and uncontested allegations of Defendants' attempts to misappropriate investor assets and evade creditors . . . [I]f no preliminary injunction were to issue, Defendants would likely attempt to transfer or dissipate the properties that are the subjects of the equitable-lien claims discussed above." *Id*. at *36.

In *Micro Signal Research, Inc. v. Otus*, 417 F.3d 28 (1st Cir. 2005), the First Circuit upheld an asset-freezing preliminary injunction based on evidence of the defendant's past fraudulent conduct. There, as part of a joint venture, plaintiff provided the defendant money for the purchase and subsequent resale by the defendant of electronic equipment. However, instead of purchasing the equipment, defendant diverted plaintiff's funds into a new company. Plaintiff brought an action for conversion, fraud and breach of contract, and sought a preliminary injunction ordering the defendant to pay the full value of plaintiff's claim into the court so that it would be available to satisfy a judgment, which the district court granted. 47 F.3d at 30. On appeal, the Court recognized that while "[t]he possibility that a defendant may not have assets on the day of judgment may not automatically make out a showing of irreparable injury, the story is quite different where there is a strong indication that the defendant may dissipate or conceal assets." *Id*. at 31. The Court then stated that the defendant's "probable fraud, prevarications about repayment, and the switch of the business …are ample indication of the need for relief against [defendant]." *Id*. *Accord Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 881 (9th Cir. 2003) (district court did not abuse its discretion in finding irreparable harm where it "expressly found that it was not only possible, but probable that [defendant] would engage in misconduct to conceal or dissipate

assets."); *Gelfand v. Stone*, 727 F. Supp. 98, 100-01 (S.D.N.Y. 1989) (irreparable harm is established where "there is substantial evidence of [defendant's] past fraudulent activities, as well as his ongoing efforts to place his assets outside the reach of his creditors.")

In this case, the following facts support finding of an irreparable injury in the absence of a preliminary injunction:

- The assets at issue are the investment properties purchased with Plaintiff's funds, in which Plaintiff has an equitable interest, as well as the funds in the Kaikov Defendants' bank accounts representing profits earned by Plaintiff as well as any remaining funds from Plaintiff's investments, *see* Chalamo Dec., ¶ 5;

- As recently as four weeks ago, Arihay caused to sell an investment property at 567 Jerome Street without notification to Plaintiff, Chalamo Dec. ¶¶ 16-17; Temkin Dec., Exhs. 1-3;

- The Kaikov Defendants have previously secretly transferred other investment properties to companies set up by Kaikov in order to conceal their future sales, and any resulting profits from a joint venture;

- Arihay has previously withdrawn $116,650 in funds from the joint venture's corporate account falsely representing to the bank that he was an authorized signatory on the account, Chalamo Dec., ¶ 23;

- Upon information and belief, the Kaikov Defendants continue to engage in the same fraudulent real estate flipping scheme and seeking to attract new "investors" to raise funds to sustain their fraudulent operations, Chalamo Dec., ¶¶ 21-22;

- Upon information and belief, Arihay has moved to Florida and boasts leading a lavish lifestyle beyond his means at the expense of "investors" duped into his fraudulent scheme, Chalamo Dec., ¶¶ 18-20; Temkin Dec., Exh. 6.

- Arihay has threatened Plaintiff numerous times in order to deter Plaintiff from claiming return of the investment, FAC ¶¶ 133-137, which makes it reasonable to conclude that he will continue to do so and dissipate assets in order not to repay anything to Plaintiff, even is there is a judgment.

Defendants' conscious, calculated behavior, especially recent sale of the investment property that is subject of this lawsuit while gives rise to an overwhelming inference that the defendants will dissipate assets belonging to Plaintiff and avoid payment of the ultimate judgment

in this case. Only an order freezing assets can effectively minimize the obvious danger of irreparable harm to Plaintiff.

**B.    PLAINTIFF  IS LIKELY TO SUCCEED ON THE MERITS OF COMMON LAW CLAIMS**

To establish a likelihood of success on the merits, plaintiff "need not show that success is an absolute certainty [but rather] need only make a showing that the probability of his prevailing is better than fifty percent." *Eng v. Smith*, 849 F.2d 80, 82 (2d Cir. 1988); *Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1984) ("A movant . . . need only make a showing that the probability of his prevailing is better than fifty percent. There may remain considerable room for doubt.") Plaintiff has met this standard.

**1.   Plaintiff Is Likely to Prevail on a Claim for Fraud (Count V)**

The elements of a common law fraud claim under New York law are: "(1) defendant made a representation as to a material fact; (2) such representation was false; (3) defendant intended to deceive plaintiff; (4) plaintiff believed and justifiably relied upon the statement and was induced by it to engage in a certain course of conduct; and (5) as a result of such reliance plaintiff sustained pecuniary loss." *Ross v. Louise Wise Servs., Inc.*, 8 N.Y.3d 478, 488, 836 N.Y.S.2d 509, 515, 868 N.E.2d 189, 195 (2007) (internal citations omitted).

Arihay made false representations to Plaintiff in December of 2012 intended to deceive Plaintiff into investing into a purported joint real estate venture with Arihay.  *See* FAC. ¶¶ 28-42; Chalamo Dec. ¶ 5.  Plaintiff believed and justifiably relied on these representations – as they appeared credible and Plaintiff trusted that Arihay, his cousin, would deal honestly with Plaintiff – and agreed to invest the initial $100,000 in a joint venture.  *See Braddock v. Braddock*, 60 A.D.3d 84, 88, 871 N.Y.S.2d 68, 72 (App. Div. 2009) (holding that where parties in a joint venture were cousins, "[plaintiff's] reliance on [defendant's] good faith may be found to be reasonable

even where it might not be reasonable in the context of an arm's length transaction with a stranger.")

Arihay's representations to Plaintiff about the purported success of the joint venture and the need for additional investment at their meeting in Moscow in October of 2013 induced Plaintiff to give Arihay an additional $200,000. FAC, ¶¶ 43-48; Chalamo Dec. ¶ 5.  Arihay's representations about the joint venture were false as he never intended to repay Plaintiff or to equally share in the venture's profits.

In April of 2014, in order to induce Plaintiff to make additional investments and delay repaying the investments already made, Arihay falsely promised Plaintiff that he would transfer titles and deeds for the investment properties to 911 Realty – a corporation where Plaintiff had a 50% equitable interest.  In justifiable reliance on these promises, Plaintiff gave another $100,000 to Arihay.  FAC, ¶¶ 49-58; Chalamo Dec. ¶ 5.   As Plaintiff found out later, the titles and/or deeds for the properties purchased with his funds were owned by the Corporate Defendants which were solely under control and management of Arihay. FAC, ¶ 58.

In November of 2016, Arihay once again falsely promised to transfer titles to ten identified investment properties to 911 Realty and induced Plaintiff to give him additional money for purported renovations.   FAC, ¶ 59-68; Chalamo Dec., ¶ 5(d-f).[5]    The Defendants' scheme

---

[5] Specifically,

- $220,000 was transferred on December 6, 2016 to 911 Realty's bank account to pay for expenses for property located at 406 East 94th Street, Brooklyn, New York 11212, which was later sold by Arihay;

- $85,000 was paid to Defendant  Pacific 2340 Corp. in 2016-2017 to pay for expenses for property located at 118-36 219th St Jamaica, NY 11411; and

- $70,000 was paid to Defendant A&E.R.E. Management Corp. in summer 2017 to pay for expenses for property located at 844 Herkimer St., Brooklyn, NY 11233.

continued well into 2018 when Arihay made unauthorized withdrawals from the 911 Realty's bank account, fraudulently transferred title to one the investment properties, and filed a fraudulent lawsuit against Plaintiff's son.  FAC, ¶¶ 139-142.

As a result of his reliance on Arihay's promises, Plaintiff sustained pecuniary losses which include the loss of his investments into the joint venture, as well as profits on the sale of the properties purchased with Plaintiff's funds. Accordingly, Plaintiff is likely to prevail on a claim for common law fraud.

### 2.   Plaintiff Is Likely to Prevail on a Claim for Unjust Enrichment (Count VI)

"Under New York law, for a plaintiff to prevail on a claim of unjust enrichment, he must establish (1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or property to the plaintiff." *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 519 (2d Cir. 2001).  "The essence" of such a claim is that one party has received money or a benefit at the expense of another." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (internal quotation marks omitted).

The evidence in support of this Motion shows that the Kaikov Defendants received funds from Plaintiff in excess of $775,000 which they used to purchase and remodel real properties, some of which were sold for profit. Chalamo Dec., ¶ 5.  The Kaikov Defendants have failed to return the investment funds to Plaintiff, have failed to transfer the investment properties into the ownership of the joint venture, and have failed to pay Plaintiff his share of profits from the sales. Accordingly, Plaintiff is likely to prevail on a claim for unjust enrichment under New York law.

### 3.   Plaintiff Is Likely to Prevail on a Claim for Constructive Trust (Count XI)

"The plaintiff's status as an alleged partner in a joint venture gives rise to a fiduciary relationship which allows the imposition of a constructive trust." *Plumitallo v. Hudson Atl. Land Co.*, 74 A.D.3d 1038, 1039-40, 903 N.Y.S.2d 127, 129 (App. Div. 2010); *accord Parr v. Ronkonkoma Realty Venture I, LLC*, 65 A.D.3d 1199, 1201, 885 N.Y.S.2d 522 (App. Div. 2009); *A.G. Homes, LLC v Gerstein*, 52 A.D.3d 546, 548, 860 N.Y.S.2d 582 (App. Div. 2008). The existence of a fiduciary relationship is particularly pronounced where the joint venture is between family members.  *See Braddock*, 871 N.Y.S.2d at 72 ("family members stand in a fiduciary relationship toward one another in a co-owned business venture."); *Venizelos v. Oceania Mar. Agency*, 268 A.D.2d 291, 702 N.Y.S.2d 17 (App. Div. 2000) (shareholders in family business owe fiduciary duty to each other independent of any duty owed to the company).

 "Elements of a constructive trust are (1) a fiduciary relationship, (2) a promise, (3) a transfer in reliance thereon, and (4) unjust enrichment." *Id.*  "However, these requirements are not rigidly applied. The purpose of a constructive trust is to prevent unjust enrichment." *A.G. Homes*, 860 N.Y.S.2d at 583 (internal citations omitted).

Plaintiff had a fiduciary relationship with Arihay by virtue of his status as a partner in a joint venture. As set forth above, the evidence also establishes that Arihay made promises to Plaintiff, that Plaintiff transferred funds in reliance on the Arihay's promises, and that the Kaikov Defendants were unjustly enriched as a result. Accordingly, Plaintiff is likely to prevail on a claim for constructive trust.

### 4.    Plaintiff Is Likely to Prevail on a Claim for Conversion (Count VIII)

"Conversion is the unauthorized exercise of dominion or control over specifically identified property which interferes with the owner's rights." *Hoffman v. Unterberg*, 9 A.D.3d 386, 388, 780 N.Y.S.2d 617, 619 (App. Div. 2004); *Gilman v Abagnale*, 235 A.D.2d 989, 991, 653

N.Y.S.2d 176 (App. Div. 1997); *Republic of Haiti v Duvalier*, 211 A.D.2d 379, 384, 626 N.Y.S.2d 472 (App. Div. 1995).

"When funds are provided for a particular purpose, the use of those funds for an unauthorized purpose constitutes conversion." *Hoffman,* 780 N.Y.S.2d at 619; *Meese v Miller*, 79 A.D.2d 237, 243, 436 N.Y.S.2d 496 (App. Dv. 1981). "Further, where possession of the property is initially lawful, conversion occurs when there is a refusal to return the property after a demand." *Hoffman*, 780 N.Y.S.2d at 619., *citing Matter of White v City of Mount Vernon*, 221 A.D.2d 345, 346, 633 N.Y.S.2d 369 (1995).

Plaintiff provided funds to Arihay for investment in a joint real estate venture. Arihay misappropriated these funds and used them to purchase properties in the name of the companies he owned and controlled and then refused to share in the profits when the properties were sold. The Kaikov Defendants unlawfully retained funds and/or properties that legally and/or equitably belong to Plaintiff. Accordingly, Plaintiff is likely to prevail on a claim for conversion under New York law.

### C.   BALANCE OF HARDSHIPS TIPS DECIDEDLY IN FAVOR OF THE MOVING PARTY

While, as set forth above, Plaintiff will suffer irreparable harm if the preliminary injunction is not granted and the assets at issue in this case are dissipated by the Defendants. The Kaikov Defendants will suffer no appreciable harm, let alone irreparable, if the injunction is granted. First, the money given to the Kaikov Defendants belonged to Plaintiff. The Kaikov Defendants can have no reasonable expectation of continued free use of Plaintiff's money. Second, there is no harm to the Kaikov Defendants if they are prevented from disposing of the investment properties for their own benefit.

Accordingly, the balance of hardship tips decided in Plaintiff's favor.

## II.    NO SECURITY IS REQUIRED

No security should be required because Defendants cannot show any harm absent the posting of a bond. *See Doctor's Assocs. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996) ("it has been held proper for the court to require no bond where there has been no proof of likelihood of harm").

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court should grant the Preliminary Injunction

(1)    prohibiting Defendant Arihay Kaikov or any of the corporate Kaikov Defendants from selling, transferring, conveying, mortgaging, liening, encumbering, taking any action to impair the value of, or otherwise disposing of the following properties pending a determination of this action:

- real property located at 317 East 31st Street, Brooklyn 11226 (in the event that Arihay receives the title after the litigation);

- real property located at 118-26 220th Street, Jamaica, New York 11411;

- real property located at 280 West 127th Street, New York, New York 10027;

- 844 Herkimer Street, Brooklyn, New York 11233; and

- 905 Mother Gaston Boulevard, Brooklyn, New York 11212.

(2)    Freezing assets of Arihay and the corporate defendants in the amount of $888,650 representing (a) $775,000 of the funds Chalamo transferred to Arihay since 2012, which he never returned and   (b) $116,650 that Arihay stole from 911 Realty bank account; and

(3)    Compelling Arihay to disclose all bank accounts owned by him personally or by third parties on his behalf.

Respectfully submitted,

25

Dated: <u>December 27, 2019</u>

TEMKIN & ASSOCIATES, LLC

_____

Maria Temkin, Esq. (*pro hac vice*)
1700 Market Street, Suite 1005
Philadelphia, PA 19103
Tel.  (215) 939-4181
maria@temkinlegal.com

*Attorneys for Plaintiff Chalamo Kaikov*

26

## CERTIFICATE OF SERVICE

I certify that on this 27th day of December, 2019, I served a copy of Plaintiff's Notice of Motion for Preliminary Injunctive Relief, along with supporting memorandum of law, declarations and exhibits, via ECF filing on all parties of record as follows:

Charles Horn, Esq.
Daniel S. Hallak, Esq.
THE RUSSELL FRIEDMAN LAW GROUP, LLP
3000 Marcus Avenue, Suite 2E03
Lake Success, New York 11042
dhallak@rfriedmanlaw.com
chorn@rfriedmanlaw.com
*Attorneys for Defendants Arihay Kaikov, Pacific
2340 Corp., Royal A&K Realty Group, Inc.,
A&E.R.E. Management Corp., NY Prime Holding,
LLC and AG Realty Bronx Corp.*

Alex Kadochnikov, Esq.
Andreas E. Christou, Esq.
SHIRYAK, BOWMAN, ANDERSON, GILL & KADOCHNIKOV, LLP
80-02 Kew Gardens Road, Suite 600
Kew Gardens, NY 11415
akadochnikov@sbagk.com
achristou@abzlaw.com
*Attorneys for Defendants Dustin Bowman and
Shiryak, Bowman, Anderson, Gill & Kadochnikov, LLP*

Dated: December 27, 2019        TEMKIN & ASSOCIATES, LLC

Maria Temkin, Esq. (*pro hac vice*)
1700 Market Street, Suite 1005
Philadelphia, PA 19103
Tel. (215) 939-4181
maria@temkinlegal.com

*Attorneys for Plaintiff Chalamo Kaikov*