SUPREME COURT STATE OF NEW YORK
COUNTY OF KINGS
-------------------------------------------------------X      Index No. 2163/18
905 MOTHER GASTON LLC,                                        Filed: 08/28/2018

                      Plaintiff,

             -against-                                       **[PROPOSED] AMENDED COMPLAINT**

ARIHAY KAIKOV (A/K/A ARKADY
KAIKOV), AND MOTHER GASTON 905
CORP

                     Defendants.
-------------------------------------------------------X

The Plaintiff 905 MOTHER GASTON, LLC, by their attorneys, TEMKIN & ASSOCIATES, LLC, alleges against Defendants ARIHAY KAIKOV and MOTHER GASTON 905 CORP., upon information and belief, as follows:

**PARTIES**

1. Plaintiff, 905 MOTHER GASTON, LLC ("**Plaintiff**" or "**Mother Gaston LLC**"), is incorporated in as State of New York and doing business in County of Kings.

2. Upon information and belief, Defendant, ARIHAY KAIKOV ("**Kaikov**") was and is at all times an individual resident of the County of Nassau residing at 65-38 Booth St #2H, Rego Park, NY 11374.

3. Upon information and belief, Defendant MOTHER GASTON 905, COPR. ("**Mother Gaston Corp.**") was incorporated on July 3, 2018, in the County of Nassau, State of New York, and is doing business in the County of Kings.

4. Upon information and belief, at all times hereto, Mother Gaston Corp. was owned solely by Kaikov and opened with the sole reason to receive a deed to the property located at

1

EXHIBIT 12

905 Mother Gaston Boulevard, Brooklyn, NY 11212 (the "**Mother Gaston Property**").

## AS AND FOR THE FIRST CAUSE OF ACTION

5. This is an action in which Plaintiff seeks (a) under and pursuant to Article 15 of the New York Real Property Actions and Proceedings Law to quiet title to the certain parcel of the Mother Gaston Property, also known as Block 3868, Lot 16 on the tax map of the City of new York, in and for Kings County, and (b) to recover sums representing damages sustained by Plaintiff and caused by Defendants.

6. Sometime in December 2012, Kaikov approached his cousin, Chalamo Kaikov ("**Chalamo**") to solicit investment into a joint business venture wherein Chalamo and Kaikov would put up money in order to acquire, own, renovate, manage and sell real properties for profit.

7. As a result, sometime in December 2012, Chalamo and Kaikov entered into a verbal agreement wherein Chalamo agreed to expend capital monies for the aforementioned venture (the "**Agreement**").

8. During 2012 – 2018, Chalamo invested over $1,000,000 in the joint venture.

9. Pursuant to the Agreement, Chalamo and Kaikov decided to form a joint corporation 911 Realty Corp. ("**911 Realty**"), where Chalamo and Arihay would be *de facto* 50-50% owners, Chalamo's son Khanan would hold a position of President, and which would hold the tiles and/or deeds for the invested properties and account for joint investments and expenses.

10. Pursuant to the Agreement, in December 2016, 911 Realty Corp. expended $50,000 in monies for obtaining title to the Mother Gaston Property.

11. Pursuant to the Agreement, on December 6, 2016, Kaikov transferred the deed to the Mother Gaston Property from his company Royal A&K Realty Group, Inc. to 911 Realty, for

2

consideration of the capital monies, invested by Chalamo to the joint project.

12. The deed was acquired for the purpose of (1) obtaining a short sale, (2) renovating the property, and (3) re-selling the property for a premium.

13. Pursuant to the Agreement, Chalamo invested monies into 911 Realty Corp. for renovation and management of the Mother Gaston Property.

14. Pursuant to the Agreement, Chalamo invested monies into 911 Realty Corp. for renovation and management of numerous other properties.

15. Sometime in the summer of 2018, the parties had a disagreement, after which Kaikov, without authorization, made a series of withdrawals from the business account of 911 Realty in Chase Bank, totaling $116,650 in funds, falsely representing to the bank that he was an authorized signatory on the account.

16. On July 3, 2018, Kaikov caused to incorporate Defendant Mother Gaston Corp. and proceeded to transfer the deed to the Mother Gaston Property from 911 Realty, without authorization or authority to do so.

17. Upon information and belief, the sole reason for formation of Defendant Mother Gaston Corp. was so that Kaikov could fraudulently transfer to it the deed to the Mother Gaston Property and convert it for his own use.

18. Sometime in July 2018, 911 Realty Corp. sold its interest in the Mother Gaston Property to Plaintiff. Plaintiff is the sole fee owner of the Mother Gaston Property.

19. Plaintiff continues to operate, manage, collect rents from tenants, and expend monies for renovating the Mother Gaston Property.

20. As Plaintiff recently learned, Defendant Kaikov, without authorization, attempted to enter the Mother Gaston Property and change the locks at certain entrances.

21. As Plaintiff also recently learned, Defendant Kaikov, by and through Defendant Mother Gaston Corp., without authorization, attempted to evict a tenant for non-payment of rents. Notably, the rent was to be collected by Plaintiff.

22. Defendants appear to claim interest in the Mother Gaston Property, without any right to it, and which is adverse to Plaintiff's interest.

23. Defendants' actions have caused damages to Plaintiffs and continue to case damages and interfere with Plaintiff's business and interest.

24. There are no other parties interested in the Mother Gaston Property or that can be affected by the judgment in the instant action.

**WHEREFORE,** Plaintiff demands Judgment against the Defendants as follows:

a) on the First Cause of Action, declaring Plaintiff a sole fee owner of the property located at 905 Mother Gaston Boulevard, Brooklyn, NY, Block 3868, Lot 16 and entering judgment consistent therewith;

b) Quieting and establishing the proper deed to the Mother Gaston Property;

c) Barring Defendants, and each and every one of them, forever from all claim to interest in the Mother Gaston Property;

d) money judgment against Defendants in the amount to be determined at trial;

e) Punitive damages in an amount to be determined at trial;

f) Costs, disbursements and legal fees associated with the bringing of this action, and any further relief this court deems just and proper.

Dated: _____                                              Respectfully submitted,

**TEMKIN & ASSOCIATES, LLC**

4