UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
CHALAMO KAIKOV,

                              Docket No.: 19-CV-2521

                       Plaintiff,

           -against-

ARIHAY KAIKOV, DUSTIN BOWMAN, SHIRYAK,
BOWMAN, ANDERSON, GILL & KADOCHNIKOV
LLP, PACIFIC 2340 CORP., ROYAL A&K REALTY
GROUP INC., A&E.R.E. MANAGEMENT CORP., NY
PRIME HOLDING LLC, AG REALTY BRONX
CORP., JOHN and JANE DOE 1-19, and XYZ
CORPORATION 1-10,

                          Defendants.
------------------------------------------------------------------- X

# DEFENDANTS ARIHAY KAIKOV, PACIFIC 2340 CORP., ROYAL A&K REALTY GROUP INC., A&E.R.E. MANAGEMENT CORP., NY PRIME HOLDING LLC, AND AG REALTY BRONX CORP.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AND APPLICATION FOR A TEMPORARY RETRAINING ORDER

**THE RUSSELL FRIEDMAN LAW GROUP, LLP**
3000 Marcus Avenue, Suite 2E03
Lake Success, New York 11042
Tel.: 516.355.9696
Fax: 516.355.9697

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... i

PRELIMINARY STATEMENT ..................................................................................... 1

PROCEDURAL HISTORY ............................................................................................ 3

STATEMENT OF FACTS ............................................................................................. 3

    A.    The Real Chain of Ownership ........................................................... 10

    B.    The Fraudulent Transfers/Fake Chain of Ownership ...................... 10

ARGUMENT .............................................................................................................. 12

I.      STANDARD OF REVIEW ................................................................................. 12

II.    PLAINTIFF IS NOT LIKELY TO SUFFER IRREPARABLE HARM ............................. 12

    A.    The FAC Is Essentially a Claim for Money Damages ....................... 13

    B.    Plaintiff Has Failed to Show Even an Equitable Interest in the
           Subject Properties ............................................................................ 16

II.    PLAINTIFF CANNOT SUCCEED ON THE MERITS
      AS A MATTER OF LAW .................................................................................. 17

    A.    Plaintiff's Claims Are Barred by the Statute of Frauds ................... 17

    B.    Plaintiff's Common Law Claims Fail ................................................ 19

          1.    Plaintiff's Common Law Fraud Cause of Action ..................... 19

          2.    Plaintiff's Unjust Enrichment Cause of Action ...................... 20

          3.    Plaintiff's Imposition of a Constructive Trust Cause of Action ......... 21

          4.    Plaintiff's Conversion Cause of Action ................................... 21

III.   THE BALANCE OF THE HARDSHIPS TIPS IN DEFENDANTS' FAVOR ................. 22

IV.   ASSUMING THE TRUTH OF ALL THE ALLEGATIONS IN THE
       COMPLAINT, WITHIN THE INSTANT APPLICATION, PLAINTIFF
       ASKS THIS COURT TO CREATE RIGHTS THAT HE NEVER POSSESSED ............. 22

A.    Suspension of the Defendants' Property Rights in the
      Enumerated Properties ................................................................................23

B.    Plaintiff Requests to "Freeze" the Bank Accounts of
      Arihay and His Entities ...............................................................................24

C.    Compelling Defendants to Provide Plaintiff a Complete
      Accounting of His Personal and Corporate Bank Accounts ........................25

CONCLUSION .............................................................................................................26

# TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Adelphia Supply USA*,
  2015 WL 10906060, at *5 (E.D.N.Y. Nov. 6, 2015) ................................................ 12
*Abbott Labs. v. H&H Wholesale Servs.*, *Inc.*,
  670 Fed. Appx. 6 (2d Cir. 2016) ............................................................................ 12
*Backus Plywood Corp. v. Commercial Decal, Inc.*,
  317 F.2d 339, 342 (2d Cir.), *cert. denied*, 375 U.S. 879 (1963) ............................ 18
*Bertoni v. Catucci*,
  117 A.D.2d 892, 498 N.Y.S.2d 902, 905 (1986) .................................................... 21
*Better Benefits, Inc. v. Protective Life Ins. Co.*,
  2004 WL 633730, at *3 (S.D.N.Y. Mar. 30, 2004)................................................. 20
*Brooklyn Heights Ass'n, Inc. v. Nat'l Park Serv.*,
  777 F. Supp. 2d 424, 435 (E.D.N.Y. 2011)............................................................ 13
*Chobani, LLC v. Dannon Co., Inc.*,
  157 F. Supp. 3d 190, 200-01 (N.D.N.Y. 2016)...................................................... 12
*Citadel Mgmt., Inc. v. Telesis Tr., Inc.*,
  123 F.Supp.2d 133, 148 (S.D.N.Y. 2000).............................................................. 21
*Corsello v. Verizon N.Y., Inc.*,
  18 N.Y.3d 777, 790, 944 N.Y.S.2d 732, 967 N.E.2d 1177 (2012) .................... 20, 21
*Dong v. Miller*,
  2018 WL 1445573, at *1 (E.D.N.Y. Mar. 23, 2018) ................................... 14, 15, 16
*Evans v. Winston & Strawn*,
  303 A.D.2d 331, 757 N.Y.S.2d 532, 534 (2003) .................................................... 21
*Grand River Enter. Six Nations, Ltd. v. Pryor*,
  481 F.3d 60, 66 (2d Cir. 2007).............................................................................. 13
*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund. Inc.*,
  527 U.S. 308 (1999) ............................................................................................... 14
*Hidalgo v. Johnson & Johnson Consumer Companies, Inc.*,
  148 F. Supp. 3d 285, 295 (S.D.N.Y. 2015)............................................................ 20
*In re Chateaugay Corp.*,
  10 F.3d 944, 958 (2d Cir. 1993)............................................................................ 22
*In re First Central Financial Corporation*,
  377 F.3d 209, 212 (2d Cir. 2004).......................................... : ............................. 21
*Koenig v. Boulder Brands, Inc.*,
  995 F.Supp.2d 274, 290 (S.D.N.Y.2014)............................................................... 20
*Mitsubishi Motors N. Am. Inc. v. Grand Auto., Inc.*,
  2018 WL 2012875, at *13 (E.D.N.Y. Apr. 30, 2018) (Feuerstein, J.)................ 12, 14
*Oracle Real Estate Holdings I LLC v. Adrian Holdings Co. I, LLC*,
  582 F. Supp. 2d 616, 625 (S.D.N.Y. 2008)............................................................ 14
*Pac. Mortg. & Real Estate Servs., Inc. v. Republic of Philippines*,
  962 F.2d 204, 208 (2d Cir. 1992).......................................................................... 16
*Reynolds v. Lifewatch, Inc.*,
  136 F. Supp. 3d 503, 524 (S.D.N.Y. 2015)............................................................ 20

DM/D226595/FL2805

*Robins v. Zwirner,*
  713 F. Supp. 2d 367, 374 (S.D.N.Y. 2010) .............................................................. 15

*Salinger v. Colting,*
  607 F.3d 68, 80 (2d Cir. 2010) .............................................................................. 13

*T-Mobile Ne. LLC v. Water Auth. of W. Nassau Cty.,*
  249 F. Supp. 3d 680, 683 (E.D.N.Y. 2017) ........................................................... 12

*U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.,*
  800 F. Supp. 2d 515, 541 (S.D.N.Y. 2011),
  *aff'd,* 511 Fed.Appx. 81 (2d Cir. 2013) ................................................................ 14

*United States ex rel. Rahman v. Oncology Assocs., P.C.,*
  198 F.3d 489, 496-97 (4th Cir. 1999) ................................................................... 16

*Viacom Int'l, Inc. v. Kearney,*
  212 F.3d 721, 725 (2d Cir. 2000) ............................................................................ 8

*Winter v. Nat. Res. Def. Council, Inc.,*
  555 U.S. 7, 20 (2008) ........................................................................................... 12

*World Wrestling Entm't, Inc. v. Jakks Pac., Inc.,*
  530 F. Supp. 2d 486, 504 (S.D.N.Y. 2007),
  aff'd, 328 F. App'x 695 (2d Cir. 2009) ............................................................ 19, 20

*Yonofsky v. Wernick,*
  362 F. Supp. 1005, 1026 (S.D.N.Y. 1973) ............................................................ 18

**Statutes**

F.R.C.P. 12(b)(6) ......................................................................................... 17, 20

DM/D226595/FL2805

## PRELIMINARY STATEMENT

Defendants Arihay Kaikov (hereinafter "Arihay"), Pacific 2340 Corp. (hereinafter "Pacific 2340"), Royal A&K Realty Group, Inc. (hereinafter "Royal A&K), A&E.R.E. Management Corp. (hereinafter "A&E.R.E"), NY Prime Holding, LLC (hereinafter "NY Prime"), and AG Realty Bronx Corp. (hereinafter "AG Realty") (collectively the "Kaikov Defendants"), respectfully submit this Memorandum of Law in opposition to Plaintiff's Motion for a Preliminary Injunction Order (DE No. 38) and Plaintiff's application for a Temporary Restraining Order (DE No. 41).

Two hundred and forty-two (242) days after the commencement of this action, Plaintiff moved for a Preliminary Injunction Order restraining the Kaikov Defendants from the following: (1) selling, transferring or otherwise encumbering or disposing of certain property that is the subject of this litigation and litigation commenced by Plaintiff's son, Khanan Kaikov, in state court[1]; (2) freezing assets of the Kaikov Defendants in the amount of $888,650.00; and (3) compelling Arihay to disclose all bank accounts owned by him personally or by third parties on his behalf. *See* Pltf. Notice of Motion, p. 2-3 (DE No. 38).

Two hundred and fifty-three days (253) after the commencement of this action, Plaintiff moved for a Temporary Restraining Order to prevent the Kaikov Defendants from the following: (1) interfering with the operations of the 905 Mother Gaston Blvd. property (hereinafter the "905 Mother Gaston Property); (2) affecting, altering or modifying the title to the 905 Mother Gaston Property or encumbering, transferring, selling or contracting the 905 Mother Gaston Property; (3) contacting any current tenants of the 905 Mother Gaston Property in person, by telephone, email

---

[1] The properties subject to the Motion for a Preliminary Injunction are as follows (hereinafter the "Subject Properties"):
- real property located at 317 East 31st Street, Brooklyn 11226 (in the event that Arihay receives the title after the litigation);
- real property located at 118-26 220th Street, Jamaica, New York 11411;
- real property located at 280 West 127th Street, New York, New York 10027;
- 844 Herkimer Street, Brooklyn, New York 11233; and
- 905 Mother Gaston Boulevard, Brooklyn, New York 11212.

DH/D226596/FL2805

or otherwise; and (4) threatening, defaming, harassing, intimidating, or taking any other unlawful action against Plaintiff Chalamo Kaikov or his sons, Khanan Kaikov, and/or Ariel Kaikov.

The crux of Plaintiff's FAC is that Plaintiff did not receive the full share of profits from a series of real estate transactions, and that Arihay refused to transfer titles or deeds of specific properties into 911 Realty Corp. (hereinafter "911 Realty"), a domestic corporation in which Plaintiff alleges he had a *de facto* 50-50% ownership with Arihay. Plaintiff admittedly has failed to plead any specifics as to how much money he is owed and, instead, asserts an arbitrary damage amount of $2 million in the FAC, without any calculations to substantiate same, even though the instant motion alleges that Plaintiff invested $775,000 "to purchase, renovate, and re-sell properties in New York City." (*See* Pltf. Mem. p. 1) Plaintiff, in support of this core allegation, argues that: (1) Plaintiff was fraudulently induced by Arihay to enter into a joint venture; (2) Arihay failed to transfer the deeds to the Investment Properties to 911 Realty, which Plaintiff alleges he was a *de facto* 50-50% owner; (3) Arihay used the Corporate Defendants as shell companies to further the alleged scheme; (4) Arihay failed to provide Plaintiff with the profits and expenses from each property sale; (6) the Law Firm Defendants handled the legal proceedings with respect to each property and sale; and (7) Arihay committed a series of alleged "predicate acts" to further the scheme.

It is respectfully submitted that the core allegation and proffered basis of support are utterly devoid of any factual basis. Plaintiff has utterly failed to show that he is entitled to any of the relief requested in the FAC, the Motion for a Temporary Restraining Order concerning the 905 Mother Gaston Property and/or the relief requested in the Motion for a Preliminary Injunction. Most importantly, Plaintiff cannot point to a single piece of evidence, other than his uncorroborated word, to demonstrate that he has any tangible interest in the properties subject to this application (hereinafter the "Subject Properties") or entitlement to the extreme relief he is seeking in these

DH/D226596/FL2805

applications. *See* Affidavit of Arihay Kaikov In Opposition to Plaintiff's Motion for a Preliminary Injunction and Temporary Restraining Order (hereinafter "Arihay Aff."). As such, Plaintiff's request for a Preliminary Injunction and Temporary Restraining Order must be denied in their entirety.

## PROCEDURAL HISTORY

Plaintiff commenced this action by the filing of a Complaint on April 29, 2019. (DE 1). The Kaikov Defendants filed a motion to dismiss the Complaint pursuant to FRCP 12(b)(6) on July 30, 2019. (DE 19). Plaintiff filed a First Amended Complaint (hereinafter "FAC") on September 6, 2019. The Kaikov Defendants moved to dismiss the FAC, which was fully briefed on December 23, 2019. (DE Nos. 30, 32 and 36).

## STATEMENT OF FACTS

Joint Venture Agreement

According to the FAC, it is the Plaintiff's contention that he individually entered into a "joint venture" with Defendant, Arihay "to purchase real estate properties in foreclosure, renovate them, and clear titles with the intent to resell the properties for profit." (FAC ¶3) According to the FAC, this "joint real estate venture" began in December 2012 with an initial investment of $100,000. (FAC ¶38) Specifically, it is alleged that "(t)he parties entered into a verbal agreement wherein Defendant, Arihay, would also contribute 50% of monetary capital to the joint venture; will find investment properties in foreclosure for renovation; and will manage the venture." (FAC ¶39) The FAC acknowledges that there was no writing between the parties herein that memorialized any aspect of the "joint real estate venture" or which set forth a single term or understanding relating to same.[2]

Within the FAC, the Plaintiff alleges that in addition to the initial $100,000 contribution

---

[2] *See* FAC, generally

DH/D226596/FL2805

into the "joint real estate venture" in December 2012, he made a subsequent $200,000 capital contribution to the venture in October 2013. (FAC ¶47) However, Plaintiff admits that at the time of both of these capital contributions, that there was no discussion between the parties which specifically identified a single piece of real estate that would be purchased with his capital contributions. (FAC ¶45)

As early as April 2014 Plaintiff claimed that he "no longer felt comfortable to operate on a verbal promise and have corporate Defendants formally own the properties, so he requested that some formal relationship be made." (FAC ¶51) To address this discomfort, it is alleged by the Plaintiff that:

> The parties decided to form a joint corporation 911 Realty Corp., ("911 Realty") where Chalamo and Arihay would be de facto 50-50 % owners and which would hold the titles [sic] and/or deeds for the invested properties and account for joint investments and expenses. (FAC ¶53)

> It was also agreed that Chalamo's son Khanan, who resides in New York and could expediently "on location" handle any operations of 911 Realty, if needed, would hold a position of president of the 911 Realty and at all times act as Chalamo's agent and on Chalamo's behalf. (FAC ¶54)

Notwithstanding the FAC's assertion that Plaintiff desired "some formal relationship be made; the FAC does not allege—nor could it—that the terms of this "joint real estate venture" were ever memorialized in writing. Further, in this regard, the FAC does not identify the "invested properties" which 911 Realty was to hold title. Finally, as noted above, the only assertion of the Plaintiff as to his ownership in 911 Realty is that it was understood that Plaintiff would have a "de facto" partial ownership interest. (FAC ¶53) The FAC is devoid of any allegation that Plaintiff had any actual ownership in 911 Realty.

The FAC goes on to state that for two years after the formation of 911 Realty, Defendant Arihay refused to transfer any deeds from the Investment Properties to 911 Realty. (FAC ¶57) Noticeably, the FAC does not deign to provide any elucidation as to which "Investment Properties"

4

Plaintiff is claiming were supposed to be transferred to 911 Realty as of 2016. Thereafter, the FAC cites a meeting between Plaintiff and Defendant Arihay, which is alleged to have taken place in November of 2016. (FAC ¶59) According to the Plaintiff, it was at this meeting in November of 2016, that Arihay identified previously purchased properties, which according to the Plaintiff, Arihay agreed to transfer into 911 Realty. (FAC ¶64) Once again, the Plaintiff does not claim— nor could he—that there is any writing to support the allegation that Arihay provided any written list. Rather, Plaintiff claims that family members of his took notes of this meeting, which have not been produced in this proceeding. (FAC ¶62) Further, Plaintiff claims there are text messages which identify addresses of the subject properties. (FAC ¶63) Neither these "notes" nor texts are cited directly or annexed to the FAC[3], the Motion for a Preliminary Injunction or the Motion for a Temporary Restraining Order. The FAC goes on to assert that "(t)he parties again agreed that all titles and/or deeds for the invested properties would be transferred to 911 Realty for joint ownership," a company, to which by Plaintiff's own admission, he had no actual ownership. (FAC ¶¶53 and 64).

The Plaintiff thereafter alleges Defendant, "Arihay subsequently only transferred deeds to two (2) properties, but failed to transfer the deeds to other eight (8) properties to the 911 Realty, in violation of the agreement." (FAC ¶69) Nowhere in the Complaint does the Plaintiff identify the addresses of the two deeds which are alleged to have been transferred to 911 Realty, an entity Plaintiff did not own any portion of, nor the other eight properties which were not transferred. The only fact that is clear from the FAC is that all of the ten properties listed in paragraph 61 of the FAC were purchased by Arihay prior to the alleged November 2016 meeting between the parties. Although Plaintiff alleges facts with respect to each property in the Motion for a Preliminary Injunction, he fails to show any tangible interest in any of the properties identified.

---

[3] See FAC, generally

DH/D226596/FL2805

Notwithstanding Plaintiff's assertion that ten properties, which he claims were supposed to have been transferred to 911 Realty, the portion of the FAC entitled "The Frauds" lists, with specificity, only five properties for which the Plaintiff claims he provided funds for the purchases "pursuant to the joint venture agreement."[4] The FAC is devoid of any details as to the Plaintiff's alleged capital contribution for the other five properties articulated in paragraphs 61 and 128 of the FAC, outside of the assertion that Plaintiff "believes that Arihay will fraudulently divert monies from the sale".[5]  In addition to the omission of five of the ten properties to which the Plaintiff asserts some rights, it should be noted that the FAC utilized obtuse verbiage as it pertains to the alleged details of each property that actually are identified in the body of the FAC.

As to 406 East 94th Street, while claiming it was sold "with the knowledge and consent of the Plaintiff," Plaintiff alleges that Defendant, "Arihay failed to pay Plaintiff his full share of profit on the 406 East 94th Street Property." (FAC ¶81) The FAC does not articulate what Plaintiff's share of the profits were, especially after expenses and other costs were factored in. (FAC ¶140). Again, as with all of the properties, Plaintiff fails to show any tangible interest in any of the properties identified for an injunction or temporary restraining order to issue.

Allegations of Threats by Defendant Arihay

The FAC alleges that the Plaintiff "confronted Arihay regarding transferring the remaining eight (8) property titles to the 911 Realty or return of investment funds." (FAC ¶132) To which properties the Plaintiff is referring is undefined in the FAC.  According to the FAC, during this confrontation, Arihay, threatened Plaintiff. Specifically, Plaintiff first cites an alleged conditional threat made by Arihay via text message (not provided for context).  Specifically, the FAC in this

---

[4] FAC ¶¶71-129

[5] There is no nformation aside from the conclusory claim of partial ownership for 567 Jerome Avenue Brooklyn, NY 11207, 317 East 31st Street Brooklyn NY 11226, 188-36 220th Street Jamaica NY 11411, 280 West 127th Street, NY, NY 10027, 905 Mother Gaston Boulevard, Brooklyn, NY 11212.

DH/D226596/FL2805

regard reads as follows:

> If there is one more attempt to harm me I will get so scared that I will f* you up! Or will bar you entry to the USA. Or your eagles will be held up by my men. If my accounts are not unfrozen by Monday, then on Tuesday you will have to wire me $1,000,000. So prey <sic> to God that doesn't happen…(FAC ¶134)

In sum, it is alleged that if Plaintiff attempts to harm Arihay one more time, Arihay would retaliate. Further, it is worthy of note that this correspondence clearly addresses an occurrence not discussed in the FAC, i.e. the freezing of Defendants bank accounts.  Notwithstanding, the obvious fact that this text message relates to an occurrence outside the allegations in the FAC, Plaintiff nonetheless cites this as an example of a predicate act to support its claims for wire fraud and a Hobbs Act violation. (FAC ¶¶158 and 168)

Similarly, the FAC cites a "message to Plaintiff threatening if [Plaintiff] does not pay Arihay 10 million dollars, Arihay "will call his men in the Russian Police." Initially, even if true, this allegation on its face has nothing to do with the allegations in the FAC. Further, there is no indication that Plaintiff was damaged in any way as a result of this alleged threat.  Finally, and not inconsequentially, this threat is alleged to have been made on August 2, 2018, years after Plaintiff alleges he made his last payment to Defendant, Arihay. (FAC ¶68).  Nowhere does Plaintiff even try to link this with any of the allegations in the FAC.  This factual assertion is also cited as an example of a predicate act to support its claims for wire fraud and violation of the Hobbs Act.

Additionally, the FAC cites nine text messages (not provided for context) in which the Plaintiff alleges that expletives were used by Arihay.  Absent from the FAC in this regard is whether these text messages were in any way related to the allegations in the FAC; the impact same had on Plaintiff, or whether the messages were in response to communications from the Plaintiff, similar in tone and content.  These text messages are also cited as support its claims for wire fraud and violation of the Hobbs Act. (FAC ¶136)

Finally, the Plaintiff claims that Arihay sent a YouTube "video of an arrest by Russian

DH/D226596/FL2805

police of a suspect." (FAC ¶137) According to Plaintiff, this transmittal occurred on August 8, 2018, after Defendant, Arihay, had already "reneged on his promises." (FAC ¶133) Plaintiff goes on to claim that "upon information and belief, the video was sent as a threat in order to prevent [Plaintiff] to seek return of his invested funds." (FAC ¶137) The video and Plaintiff's speculation regarding same are the final facts cited in support of its claims for wire fraud and violation of the Hobbs Act.

In addition to the aforementioned "threats" and in particularly odd fashion, the Plaintiff attempts to bolster its claims of predicate acts constituting Wire Fraud, with the following allegations:

- On November 23, 2016, a wire transfer from Chalamo's bank account in Russia to Arihay's wife account in the U.S. in the amount of $500,000 representing Chalamo's investment funds wired in reliance on Arihay's fraudulent representations;

- On December 6, 2016, a wire from Khanan in the amount of $90,000 to deposit to 911 Realty Chase Bank account representing Chalamo's investment funds;

- On December 6, 2016, a wire from Khanan in the amount of $220,000 to deposit to 911 Realty Chase Bank account representing Chalamo's investment funds.[6]

The FAC fails to provide any articulation as to: (1) how monies paid by a third party constitute conduct actionable by the Plaintiff; (2) how monies paid to a third party (Arihay's wife) constitute conduct actionable by the Plaintiff; and (3) why Khanan Kaikov[7] was not named as a party herein, as he was alleged to be the President of 911 Realty, and whether what, if any property, these monies were utilized to purchase.

---

[6] FAC ¶159(c)

[7] The case should be dismissed pursuant to FRCP 19(a) since Khanan Kaikov is a necessary party, who was conveniently omitted from this action. *See Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 725 (2d Cir. 2000). The Deeds to all of the respective properties clearly show that Arihay is the true owner of the properties that are the subject of the instant motions.

DH/D226596/FL2805

Allegations of Bank Fraud

The FAC proffers three examples of actions which are purported to be predicate acts of Bank Fraud. Specifically, the FAC alleges the following:

> In June, 2018, Arihay, traveled to Florida, where he, without authorization, made a series of withdrawals from the business account of 911 Realty in Chase Bank, totaling $116,650 in funds, falsely representing to the bank that he was an authorized signatory on the account, when he was not…(FAC ¶139).

In regards to this allegation, the FAC does not, nor could it, allege that Plaintiff was a signatory to the "the business account of 911 Realty Chase Bank." Nor does the FAC in any way shape or manner claim that the alleged withdrawals from the Chase Bank account required two signatures, and if so, the identity of the second signature that was required. Finally, the FAC is devoid of even an intimation that the Plaintiff was named on the subject Chase Account. Aside from the conclusory assertions about the propriety of the alleged withdrawals, Plaintiff provides no indication how the alleged transactions are actionable by the Plaintiff aside from the assertion that "(t)hese monies belong to Plaintiff and represented partial profit from Plaintiff's investment in the 406 East 94th Street Property received at closing in April 2018." (FAC ¶140) This assertion is made notwithstanding the fact that (1) whose "authorization was required for the subject withdrawal; (2) that there is no written contract to which the Plaintiff is a signatory for this real estate transaction; (3) the Plaintiff does not even allege he was an actual or record owner of 911 Realty, and (4) how Plaintiff in good faith can allege that he knows that the withdrawn monies were from the closing of 206 East 94th Street since according to the FAC, NY Prime had title to 206 East 94th Street. (FAC ¶79) Finally, and not inconsequentially, Plaintiff specifically denies knowledge as to the expenses related to sales of the properties to which he claims some entitlement to monies. As such, the FAC does not address whether the aforementioned withdrawals were executed to satisfy legitimate expenses of 911 Realty, a company to which Plaintiff admits that he has not actual ownership.

DH/D226596/FL2805

Further, and blatantly out of sheer necessity, the FAC names Dustin Bowman (hereinafter "Bowman"), the lawfirm of ABZ and SBAGK[8], as additional RICO Defendants in an attempt to adequately plead a RICO enterprise. However, there are no specific allegations as to how these Defendants were part of a RICO enterprise aside from handling the legal aspects with respect to the buying and selling of properties and getting a commission for same. (FAC ¶¶82, 95, 96, 105, 106, 117, 118 and 124).

<u>Allegations of Regarding 905 Mother Gaston Blvd. Property</u>

Plaintiff, in an attempt to convince this Court that he has an interest in this property, alleges that Defendant Arihay fraudulently transferred the deed to this property out of 911 Realty and into Mother Gaston 905 Corp., which is owned and operated solely by Arihay. A clear view of the chain of ownership demonstrates that Plaintiff's claims ring hollow:

**A. The Real Chain of Ownership**

(1) The property in question is 905 Mother Gaston Blvd, Brooklyn, NY. The real owner of this property is Mother Gaston 905 Corp., which is owned solely by Arihay. *See* Hallak Decl., **Exhibit J**; Arihay Aff. ¶17.

(2) Before Mother Gaston 905 Corp owned the property, Royal A&K Realty Group Inc. owned the property, which is owned solely by Arhiay. *See* Hallak Decl., Exhibit J, Deed dated July 6, 2018; Arihay Aff. ¶17.

(3) Before Royal A&K Realty Group Inc. owned the property Alexandra Aurelien owned the property.) *See* Hallak Decl., Exhibit J, Deed dated April 8, 2013; Arihay Aff. ¶17.

(4) Deeds April 8, 2013 and July 6, 2018 are validly executed and proper.

**B. The Fraudulent Transfers/Fake Chain of Ownership**

(1) Plaintiff's son, Khanan Kaikov, recorded a false deed on December 9, 2016, putting a different company name and company address from what was the true and real owner of the property. The Deed says NY Prime Holding LLC transfer to 911

---

[8] SBAGK was not formed until June 4, 2018 and, therefore, the allegations in the FAC, which predate the firm's existence, fail to state a cause of action and is certainly probative of the baseless allegations lodged throughout the Complaint. *See* Hallak Decl., Exhibit "F".

DH/D226596/FL2805

Realty Corp, and the property address listed was 406 E. 94str, Brooklyn. *See* Hallak Decl., Exhibit K, Deed dated December 9, 2016. *See* Arihay Aff. ¶¶18-22.

(2) The Deed dated April 8, 2013 shows that the owner of 905 Mother Gaston Blvd, Brooklyn, New York was Royal A&K Realty. NY Prime never had an ownership interest in the property, properly acquired the property, or had any legal interest in the property. *See* Hallak Decl., Exhibit K, Deed dated July 19, 2018; *See* Arihay Aff. ¶¶18-22.

(3) On or about July 19, 2018, 911 Realty engaged in another deed to transfer from 911 Realty to Khanan Kaikov's new company 905 Mother Gaston LLC. *See* Hallak Decl., Exhibit K, Deed dated July 19, 2018; *See* Arihay Aff. ¶¶18-22.

(4) On or about August 1, 2018, Khanan Kaikov filed a "Correction Deed" to correct the false Deed dated December 9, 2016. Notably, in the middle of the document it says this is a correction deed to correct property address in transfer from Royal A&K Realty to 911 Realty. *See* Hallak Decl., Exhibit K, Deed dated July 19, 2018; *See* Arihay Aff. ¶¶18-22. Khanan Kaikov signed on behalf of 911 Realty. However, the only authorized signatory for the company for Royal A&K Realty is Arihay, and was never Khanan Kaikov. Arihay has always been the sole owner of Royal A&K Realty. *See* Hallak Decl., Exhibit L.

In total, Deeds dated December 9, 2016, July 19, 2018 and August 1, 2018 are all false and do not reflect the true chain of ownership. It is patently clear from the chain of ownership that the real owner of 905 Mother Gaston Blvd., Brooklyn, New York is Mother Gaston 905 Corp. In a scheme to defraud, and to deprive Arihay rental income from the property, Khanan engaged in fraudulent transfers so that he may receive the rent checks from the tenants. Unequivocally, Plaintiff's son's actions were intended to steal rental income from Arihay concerning the 905 Mother Gaston Property.

This Court need look no further than the deed for property 406 E 94th Street, Brooklyn, New York, from NY Prime to 911 Realty. A simple comparison evidences that the deed is exactly the same as Deed dated December 9, 2016.  *See* Hallak Decl., Exhibits I and K.

# ARGUMENT
## I.
## STANDARD OF REVIEW

"In general, '[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Mitsubishi Motors N. Am. Inc. v. Grand Auto., Inc.*, 2018 WL 2012875, at *13 (E.D.N.Y. Apr. 30, 2018) (Feuerstein, J.) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "As preliminary injunctive relief constitutes an 'extraordinary remedy,' a plaintiff is required to '"carry the burden of persuasion by a clear showing for each factor.'" *Id.* (quoting *Abbott Labs. v. Adelphia Supply USA*, 2015 WL 10906060, at *5 (E.D.N.Y. Nov. 6, 2015), *aff'd sub nom. Abbott Labs. v. H&H Wholesale Servs., Inc.*, 670 Fed. Appx. 6 (2d Cir. 2016)). "Where a preliminary injunction requires an affirmative act or mandates a specific course of conduct (as opposed to maintaining the status quo), the 'injunctive relief is understood to be mandatory' requiring the application of a 'clear' or 'substantial' likelihood of success on the merits." *Id.* at *13 n.5 (quoting *Chobani, LLC v. Dannon Co., Inc.*, 157 F. Supp. 3d 190, 200-01 (N.D.N.Y. 2016)).

## II.
## PLAINTIFF IS NOT LIKELY TO SUFFER IRREPARABLE HARM

"'[I]irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, and ... the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered.'" *Mitsubishi Motors N. Am. Inc. v. Grand Auto., Inc.*, 2018 WL 2012875, at *5 (E.D.N.Y. Apr. 30, 2018) (Feuerstein, J.) (quoting *T-Mobile Ne. LLC v. Water Auth. of W. Nassau Cty.*, 249 F. Supp. 3d 680, 683 (E.D.N.Y. 2017)). "In order to satisfy the irreparable harm requirement, '[p]laintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until

DH/D226596/FL2805

the end of trial to resolve the harm.'" *Id.* (quoting *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)).  An analysis of irreparable harm includes the "public interest" and "balance of hardships" elements of a preliminary injunction as well as "whether the plaintiff has shown that: (1) he is likely to suffer irreparable injury in the absence of an injunction; and (2) remedies at law, such as monetary damages, are inadequate to compensate for that injury." *Id.* (quoting *Brooklyn Heights Ass'n, Inc. v. Nat'l Park Serv.*, 777 F. Supp. 2d 424, 435 (E.D.N.Y. 2011) (internal quotation marks omitted)).  The Second Circuit has stated "that courts must not adopt a categorical or general rule or presume that the plaintiff will suffer irreparable harm." *Id.* (quoting *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010) (internal quotation marks omitted)).

### A.     The FAC Is Essentially a Claim for Money Damages

Plaintiff posits irreconcilable positions to argue anything that will ultimately achieve his goals, regardless of veracity.  On the one hand, the FAC expressly alleges that Plaintiff was seeking an interest in the property itself, not just the profits from their sale.[9] (FAC ¶¶53-55, 64, 128 and 132). Not to be deterred from contradicting himself, Plaintiff, in response to the Kaikov Defendants Motion to Dismiss the FAC, argues the opposite:

> Where, as here, "plaintiff is not seeking to acquire an interest in real property, but rather, is asserting an alleged interest in joint venture assets," the statute of frauds does not apply.

*See* Pltf. Mem. in Opposition to Def. Motion to Dismiss, p. 18 (DE No. 32). Plaintiff finds it convenient to argue that his interest was solely in the profits of the alleged venture on the one hand, while arguing that his interest was in the property itself, on the other, to obtain a preliminary injunction. Quite brazenly, Plaintiff now asks this Court to give him property rights to the Subject Properties without providing an iota of proof that he is entitled to same. Rather, the Deeds to the

---

[9] An interest in the property itself, and the alleged "agreements" to transfer the properties must be in writing to satisfy New York's Statute of Frauds. *See* Point II(A), *infra*.

DH/D226596/FL2805

properties Plaintiff seeks an injunction for are all solely owned by the Kaikov Defendants. *See* Hallak Decl. Exhibits B, D, F, G, and J.

It is well-settled that a Court "may not issue a preliminary injunction freezing Defendants' assets simply to ensure that Defendants will be able to satisfy a judgment in favor of Plaintiff on his contract claims." *See Dong v. Miller*, 2018 WL 1445573, at *1 (E.D.N.Y. Mar. 23, 2018) (citing *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund. Inc.*, 527 U.S. 308 (1999)). Assuming, *arguendo*, that this Court does believe Plaintiff has an interest in the Subject Properties, Plaintiff cannot demonstrate that he will be irreparably harmed absent an injunction because his claim is one for money damages sounding in law. Accordingly, Plaintiff cannot demonstrate that monetary damages would be an inadequate remedy if he were to ultimately succeed on the merits. *See Mitsubishi Motors N. Am. Inc.*, 2018 WL 2012875, at *7 ("[i]f an injury can be appropriately compensated by an award of monetary damages, then an adequate remedy at law exists, and no irreparable injury may be found to justify specific relief.") (quoting *Oracle Real Estate Holdings I LLC v. Adrian Holdings Co. I, LLC*, 582 F. Supp. 2d 616, 625 (S.D.N.Y. 2008)); *see also Mitsubishi Motors N. Am. Inc.*, 2018 WL 2012875, at *7 (holding that a preliminary injunction was appropriate "[b]ecause the losses of reputation and goodwill and resulting loss of customers are not precisely quantifiable, remedies at law cannot adequately compensate Plaintiff for its injuries.") (quoting *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 541 (S.D.N.Y. 2011), *aff'd*, 511 Fed.Appx. 81 (2d Cir. 2013)).

The FAC alleges that "(t)he parties entered into a <u>verbal agreement</u> wherein Arihay would also contribute 50% of monetary capital to the joint venture; will find investment properties in foreclosure for renovation; and will manage the venture." (FAC ¶39). Each property identified in the FAC alleges that Plaintiff was not paid his full share of the profits after their sale. Nowhere in the FAC does it allege that Plaintiff had any authority over the management of the venture, and

DH/D226596/FL2805

Plaintiff has utterly failed to provide this Court with any tangible evidence evincing the details of the arrangement, the amount of money that Plaintiff is owed from the sale of each property, or any tangible evidence regarding an agreement to transfer ownership of the properties, other than his uncorroborated word. As such, Plaintiff has failed to demonstrate that he has any interest that will be irreparably harmed if a preliminary injunction is not issued.

Rather, the FAC is clear that after each sale of property, Arihay failed to pay Plaintiff his full share of the profits. (FAC ¶¶81, 94, 104 and 116). Assuming, *arguendo*, that Arihay did pay Plaintiff his full share of the profits, no claim for relief would lie in this action. In essence, the FAC seeks purely monetary damages for breach of a <u>verbal agreement</u> and inadequately pleaded allegations of fraud and RICO. Here, Plaintiff only requests monetary damages in connection with each federal claim.[10] (FAC ¶¶ 173, 180 and 186). Plaintiff does not seek to have any of the alleged property sales invalidated or set aside. Rather, Plaintiff seeks an overly broad asset-freezing preliminary injunction for all of the Kaikov Defendants' assets subject to this litigation, for the express purpose of preventing the Kaikov Defendants from frustrating a potential judgment against them. As such, since Plaintiff's claims sound in law, to which he has an adequate remedy of monetary damages, the request for a preliminary injunction must be denied. *See Dong*, 2018 WL 1445573, at *10; *see also Robins v. Zwirner*, 713 F. Supp. 2d 367, 374 (S.D.N.Y. 2010) ("Irreparable harm is injury for which a monetary award cannot be adequate compensation, and is often found in the loss of a unique product or service.")(internal citations omitted)

---

[10] Plaintiff acknowledges that he is not entitled to a preliminary injunction on any of the RICO causes of action.

DH/D226596/FL2805

**B.      Plaintiff Has Failed to Show Even an Equitable Interest in the Subject Properties**

To the extent that Plaintiff is seeking remedies lying in equity, the FAC fails to show a significant nexus to those specified properties.[11] "The nexus between the assets sought to be frozen through an interim order and the ultimate relief requested in the lawsuit is essential to the authority of a district court in equity to enter a preliminary injunction freezing assets." *Id*. at *8 (quoting *United States ex rel. Rahman v. Oncology Assocs., P.C.*, 198 F.3d 489, 496-97 (4th Cir. 1999)). Plaintiff has utterly failed to show an equitable interest in the Subject Properties.

Under New York law, the court may impose "an equitable lien on property if there is an express or implied contract, meeting certain requirements, concerning the property." *Sec. Pac. Mortg. & Real Estate Servs., Inc. v. Republic of Philippines*, 962 F.2d 204, 208 (2d Cir. 1992). The contract must contain the following:

> The contract must identify the property directly, or describe the property in such a way as to make identification possible, and must clearly state the parties' intention that the identified property be held, given or transferred as security for an obligation. An equitable lien may be imposed on ... a certain fund, but a mere promise ... to satisfy a debt from a designated fund does not support creation of an equitable lien on that fund.

*See Dong*, 2018 WL 1445573, at *11-*12 (quoting *Sec. Pac. Mortg. & Real Estate Servs.*, 962 F.2d at 208-209 (internal quotation marks and citation omitted). Here, Plaintiff cannot point to a single contract or other piece of evidence that confers him a security interest in any of the Subject Properties and as such, his application for a preliminary injunction must be denied.

In *Dong*, the Court found that Plaintiff was entitled to a preliminary injunction on one of the equitable lien claims. In deciding to grant the preliminary injunction, the Court had actual evidence that Defendants, in that case, pledged a ten-percent interest in the property as security for

---

[11] The only cause of action that requests injunctive relief, aside from the Wherefore clause, is Cause of Action XI, which requests the imposition of a constructive trust and injunctive relief.

DH/D226596/FL2805

their acknowledged indebtedness in connection with a loan. *Id* at *12. In denying the preliminary injunction for Plaintiff's second equitable lien claim, the Court found as follows:

> Plaintiff does not point to any express or implied contract by which Defendants conferred to him a security interest in these properties or otherwise indicated that they intended those properties to be used to satisfy any debt they owed him. He therefore has not established that he is likely entitled to an equitable lien against these properties or that this claim presents a serious question going to the merits so as to warrant preliminary relief.

*Id.* Here, Plaintiff has not, and cannot, produce any tangible agreement to prove his claims that he was conveyed an equitable interest in the properties for a preliminary injunction to issue. Plaintiff's mere expectation of payment in this case is insufficient to establish an equitable lien for a preliminary injunction. *Id.* As such, Plaintiff has failed to show that he would be irreparably harmed if he were to prevail in the underlying suit.

**II.**
**PLAINTIFF CANNOT SUCCEED ON THE MERITS AS A MATTER OF LAW[12]**

**A.     Plaintiff's Claims Are Barred by the Statute of Frauds**

Plaintiff, through the Motions for a Preliminary Injunction and Temporary Restraining Order, ask this Court to essentially provide him with rights to the Subject Properties without submitting any evidence of same. Plaintiff, in his opposition to the Kaikov Defendants Motion to Dismiss the FAC, attempted to evade the Statute of Frauds by asserting that the <u>verbal agreement</u> between Plaintiff and Arihay was to create a joint venture wherein both parties would be responsible for capital contributions and the management of the Investment Properties. *See* Pltf. Mem. in Opposition to Kaikov Def's Motion to Dismiss, p. 17. (DE No. 32). To that end, Plaintiff argues that the interest in the property was personalty of the partnership, not realty. *Id.* at p. 18.

---

[12] The Kaikov Defendants respectfully refer this Court to their motion papers seeking dismissal of the FAC pursuant to FRCP 12(b)(6) which is incorporated herein by reference, for a complete a recitation as to why Plaintiff has failed to state a cause of action, entitling him to any relief in this action.

DH/D226596/FL2805

Plaintiff's arguments are unavailing. The FAC expressly alleges that Plaintiff was seeking an interest in the property itself, not just the profits from their sale, thereby requiring the arrangement to be in writing to satisfy New York's Statute of Frauds. (FAC ¶¶53-55, 64, 128 and 132).

The FAC alleges that the parties formed 911 Realty on April 29, 2014. (FAC ¶¶53-55). 911 Realty is listed as a domestic business corporation which, according to the FAC, was formed to "hold the titles [sic] and/or deeds for the invested properties and account for joint investments and expenses." (FAC ¶53). Plaintiff does not, and cannot, claim that he was an actual owner of 911 Realty but, rather, merely a "de facto owner" or "equity owner." (FAC ¶53); *See* Pltf. Mem. in Opposition to Kaikov Def's Motion to Dismiss, p. 24. (DE No. 32). Plaintiff alleges that there was an oral agreement to transfer the titles of the properties to 911 Realty, and that Arihay never transferred those titles in violation of that oral agreement. (FAC ¶¶ 64, 128 and 132); *See* Pltf. Mem. in Opposition to Kaikov Def's Motion to Dismiss, pp. 40-42. (DE No. 32). Accordingly, since Plaintiff is alleging an agreement that on its face refers to his alleged interest in the properties themselves and not just the profits thereof, the oral agreement violates the Statute of Frauds and demonstrates an unlikelihood to succeed on the merits. *See Yonofsky v. Wernick*, 362 F. Supp. 1005, 1026 (S.D.N.Y. 1973) (holding that the statute of frauds to joint venture agreements does not protect transactions between coadventurers…if in furtherance of the joint adventure one party to the agreement transfers real property to a coadventurer, the transaction is subject to the statute of frauds) (citing *Backus Plywood Corp. v. Commercial Decal, Inc.*, 317 F.2d 339, 342 (2d Cir.), *cert. denied*, 375 U.S. 879 (1963))("The fact that the contract is one for a land partnership or for a division of profits and losses does not take it out of the statute of frauds if there is a provision that requires a transfer of land from one of the contracting parties to another…[which] makes the entire oral contract unenforceable.")

DH/D226596/FL2805

**B.      Plaintiff's Common Law Claims Fail**

Plaintiff admits that his RICO causes of action are insufficient for a preliminary injunction to issue. *See* Pltf. Mem., p. 16 (DE No. 38). Instead, Plaintiff relies on his inadequately pleaded State law causes of action for common law fraud, unjust enrichment, imposition of a constructive trust and conversion to seek an injunction from this Court. Each of these causes of action will be discussed in turn.

1.      Plaintiff's Common Law Fraud Cause of Action

At the heart of all of Plaintiff's Causes of Action is a breach of an oral contract in which Plaintiff believes he did not receive his full share of the profits under the alleged venture. Plaintiff attempts to craft this breach as fraudulent conduct on behalf of the Kaikov Defendants. Plaintiff, however, has failed to plead any fraud with the requisite particularity, in addition to his failure to demonstrate <u>any</u> interest in the properties subject to the injunction. *See* Hallak Decl. Exhibits B, D, F, G, and J.

Notwithstanding Plaintiff's failure to produce any evidence of investment or interest in the properties, the FAC is replete with conclusory allegations that Plaintiff did not receive the "full share of his profits" from each sale. Nowhere in the FAC does it state what those profits were, what was received, and a factual statement particularizing why those profits tendered were insufficient. By admission, the FAC alleges that the parties had a meeting wherein notes were generated indicating "how much was already invested in each property, and what anticipated expenses and resale value would be, despite admittedly having that information. (FAC ¶62). As such, since Plaintiff failed to allege a finite amount of damages, the fraud causes of action should be dismissed by failing to provide same with the particularity. *See World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 504 (S.D.N.Y. 2007), aff'd, 328 F. App'x 695 (2d Cir. 2009)

DH/D226596/FL2805

("allegations that a plaintiff relied on a defendant's expertise in a particular field are insufficient by themselves to survive dismissal.").

    2.    <u>Plaintiff's Unjust Enrichment Cause of Action</u>

Failure to articulate a basis for the elements for unjust enrichment is a sufficient basis to dismiss a complaint pursuant to Fed. R. Civ. P. 12(b)(6) motion. *See Hidalgo v. Johnson & Johnson Consumer Companies, Inc.*, 148 F. Supp. 3d 285, 295 (S.D.N.Y. 2015). Here, Plaintiff fails to adequately allege a fiduciary relationship to support an unjust enrichment cause of action because Plaintiff has pleaded, at best, an arm's length business transaction. *See World Wrestling Entm't, Inc.*, 530 F. Supp. 2d at 504 (quoting *Better Benefits, Inc. v. Protective Life Ins. Co.*, 2004 WL 633730, at *3 (S.D.N.Y. Mar. 30, 2004) (even a "slightly dominant business position does not operate to turn a formal contractual relationship into a confidential or fiduciary relationship.")

Notwithstanding, Plaintiff's claim for unjust enrichment is duplicative of the RICO and fraud causes of action. "[A]n unjust enrichment claim cannot survive where it simply duplicates, or replaces, a conventional contract or tort claim." *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 524 (S.D.N.Y. 2015) (quoting *Koenig v. Boulder Brands, Inc.*, 995 F.Supp.2d 274, 290 (S.D.N.Y.2014). The FAC merely asserts that "Defendants have been enriched at the expense of the Plaintiff…" (FAC ¶198). There are no additional allegations that would separate Plaintiff's claims of fraud and RICO from his unjust enrichment claim, in addition to his failure to demonstrate <u>any</u> interest in the properties subject to the injunction. *See* Hallak Decl. Exhibits B, D, F, G, and J. As such, the unjust enrichment cause of action must be dismissed and Plaintiff cannot demonstrate a likelihood of success on this cause of action for a preliminary injunction to issue. *See Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790, 967 N.E.2d 1177, 1185 (2012) ("unjust enrichment is not a catchall cause of action to be used when others fail. It is available only in unusual situations when, though the defendant has not breached a contract nor committed a

recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff. Typical cases are those in which the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled.")

3.    Plaintiff's Imposition of a Constructive Trust Cause of Action

Given that there is no properly alleged fiduciary duty between the parties, the imposition of a constructive trust must also be denied. *See In re First Central Financial Corporation,* 377 F.3d 209, 212 (2d Cir. 2004). Plaintiff argues that the mere fact that he and Arihay are cousins, automatically provides for a fiduciary relationship. With respect to constructive trusts specifically, New York courts have clarified that "[a]s an equitable remedy, a constructive trust should not be imposed unless it is demonstrated that a legal remedy is inadequate." *Bertoni v. Catucci,* 117 A.D.2d 892, 498 N.Y.S.2d 902, 905 (1986); *see also Evans v. Winston & Strawn,* 303 A.D.2d 331, 757 N.Y.S.2d 532, 534 (2003) ("Plaintiffs' claim for a constructive trust was properly dismissed since plaintiffs do not claim that [defendant] is unable to repay plaintiffs' capital contributions, and it does not otherwise appear that the legal remedy of damages will be inadequate.") Notwithstanding, Plaintiff cannot demonstrate <u>any</u> interest in the properties subject to the injunction, mandating denial of same. *See Hallak Decl.* Exhibits B, D, F, G, and J.

4.    Plaintiff's Conversion Cause of Action

Plaintiff cannot sustain an action for conversion based upon the nonperformance of an alleged contract. *Citadel Mgmt., Inc. v. Telesis Tr., Inc.*, 123 F.Supp.2d 133, 148 (S.D.N.Y. 2000).[13] In addition, Plaintiff has failed to demonstrate <u>any</u> interest in the properties subject to the injunction to demonstrate a likelihood of success on the merits for an injunction. *See Hallak Decl.* Exhibits B, D, F, G, and J. Therefore, since Plaintiff is essentially suing for the benefit of his

---

[13] Likewise, Plaintiff's claim for unjust enrichment, based upon an alleged contractual agreement, fails to state a cause of action. *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790, 944 N.Y.S.2d 732, 967 N.E.2d 1177 (2012)

DH/D226596/FL2805

bargain, the conversion action must be dismissed. *In re Chateaugay Corp.*, 10 F.3d 944, 958 (2d Cir. 1993).

## III.
### THE BALANCE OF THE HARDSHIPS TIPS IN DEFENDANTS' FAVOR

The balance of the hardships clearly tips in Defendants favor. Plaintiff has utterly failed to establish any cognizable interests in the properties that are the subject of this lawsuit, despite at least three opportunities to do so. *See* Hallak Decl. Exhibits B, D, F, G, and J. A TRO would prevent Defendants from transacting business in the ordinary course and earning a livelihood, which could potentially cause him to lose the properties altogether. *See* Arihay Aff. ¶¶27-29. The Kaikov Defendants are engaged in the buying, selling and renting of real estate throughout New York. *Id*. Freezing these properties or assets would unduly burden the Kaikov Defendants ability to conduct its business, which may even cause the Subject Properties to be lost or further encumbered. *Id*. Plaintiff has not alleged that the Kaikov Defendants are transferring any assets to evade a final judgment in this case but, rather, relies on vague, conclusory allegations that are unsupported in fact.[14] Rather, Plaintiff is clearly asking this Court to provide him with post-judgment discovery through the instant application, without demonstrating any interest in the Subject Properties. *See* Hallak Decl. Exhibits B, D, F, G, and J.

## IV.
### ASSUMING THE TRUTH OF ALL THE ALLEGATIONS IN THE COMPLAINT, WITHIN THE INSTANT APPLICATION, PLAINTIFF ASKS THIS COURT TO CREATE RIGHTS THAT HE NEVER POSSESSED

Cutting through all of the conjecture and unsupported allegations of the Plaintiff, at its core in the instant applications, the Plaintiff is requesting that this Court (1) judicially enforce his "ownership rights" to the enumerated properties; (2) "freeze" the bank accounts of Arihay and his

---

[14] By way of example, Plaintiff alleges that Arihay lives in Florida, in an attempt to convince this Court that he will dissipate assets out of this Court's jurisdiction, which is false. *See* Arihay Aff. ¶5.

DH/D226596/FL2805

entities, and (3) compel Arihay to provide a complete accounting of his personal and corporate bank accounts.

### A. Suspension of the Defendants' Property Rights in the Enumerated Properties

As requested in Plaintiff applications, the enforcement of his property rights is to be effectuated by prohibiting defendant, Arihay, from exercising **any** of his and his entities ownership rights in the enumerated properties. Respectfully, in light of even the allegations, never mind the actual facts, the instant application is nonsensical and a grant of same would be tantamount to a judicial creation of contractual rights. The inane nature of the Plaintiff's is readily apparent by a simple review of his own allegations.

To begin this analysis, we must first start with the sole foundation of Plaintiff's requests for relief. Specifically, the Plaintiff requests that all of the defendant, Arihay's ownership rights in the subject properties be "frozen" based upon the defendant's failure to ensure that "all titles and/or deeds for the invested properties would be immediately transferred to 911 Realty for joint ownership." (FAC ¶ 64) However, if Plaintiff's own allegations are accepted as true (which they should not), the original bargain between the parties was for Airhay to purchase, renovate and sell the enumerated properties for money. (FAC ¶¶ 29,65) Notwithstanding same, the Plaintiff requests that this Court strip the defendant, Aihay of the very authority Plaintiff claims was bargained for by the parities. Further, taking into account the entirety of the Plaintiff's Complaint, nowhere does he ever allege that anyone other than Airhay was to purchase, sell transfer convey, mortgage, etc. any of the enumerated properties. (FAC ¶¶ 29,31,41) It must be noted that Plaintiff is not only requesting judicial fabrication of contractual rights, but submits his request without a scintilla of factual justification for same.

DH/D226596/FL2805

**B.  Plaintiff Requests to "Freeze" the Bank Accounts of Arihay and His Entities**

In support of this extreme relief, Plaintiff cites seven "facts" which he claims support a freezing

of all the Defendants, personal and corporate bank accounts. (Temkin Memo p.19)  The first fact

cited it that Plaintiff has an "equitable interest" in "the funds in the Kaikov Defendants' bank

accounts representing the profits earned by Plaintiff." (Temkin Memo p.19) This "fact" is asserted

notwithstanding the admission that "Plaintiff has no knowledge of the actual amount that Arihay

paid for the titles or, how in reality the Investment Funds were spent." (Temkin Memo p.11 FN 2)

The second "fact" cited for this relief was that allegedly "Aihay caused to sell an investment

property at 567 Jerome Street." (Temkin Memo p.19) Respectfully, Plaintiff's whole theory on

this case is that he is entitled to profits from the sale of the enumerated properties.

The third "fact" cited that it is Plaintiff's contention that the defendants "secretly transferred"

properties to which the Plaintiff is claimed to be owed money. (Temkin Memo p.19)  This

allegation recast as a "fact" it the basis of the vast majority of lawsuits, *i.e.* the allegation that

defendant owes plaintiff money.  In no realty is this "fact" a basis to freeze the personal and

corporate bank accounts of defendants.

The fourth "fact" is that "Arihay has previously withdrawn $116,650… from the joint ventures

corporate account." (Temkin Memo p.19) Presumably, Plaintiff is referencing the 911 Realty bank

account with this allegation.  However, Plaintiff has consistently taken the position that the

defendants were buying, renovating, managing and selling properties without notifying Plaintiff

or even how Plaintiff's investment money was spent.  (Temkin Memo p.11 FN 2) Yet, in the same

breath, Plaintiff alleges that this $116,650 withdrawal was for some nefarious intent.

The fifth "fact" cited is it that upon information and belief the defendants are seeking new

investors to continue the "house-flipping scheme."  How the alleged possible infusion of new

capital from third parties supports the freezing of the defendants' personal and corporate accounts

DH/D226596/FL2805

is incomprehensible.  But this is not the only fact that the Plaintiff proffered without any evidence beyond the unsupported claim that the allegation is proffered upon undisclosed information and belief.  Specifically, upon information and belief the Plaintiff alleges that "Airhay moved to Florida and boasts leading a lavish lifestyle."  This allegation may come as a surprise to the wife of Airhay with whom he resides in 204 Centre Island Road Oyster Bay NY.  (Aihay Aff. ¶5)

Plaintiff concludes his recitation of "facts" supporting the freezing of the defendants' accounts by saying that the Plaintiff threatened him.  As noted above, assuming the truth of these threats, the timing and content of the utterances reveal them to be utterly unrelated to the instant action before the Court.

### C. Compelling Defendants to Provide Plaintiff a Complete Accounting of His Personal and Corporate Bank Accounts

Notwithstanding the request for this pre-discovery accounting of all the defendants personal and corporate bank accounts, the Plaintiff is quite obtuse in his papers as to the rationale behind this request for relief.  Further, according to the Plaintiff all of the enumerated properties were purchased by and through the corporate defendants, as such the basis for demanding the personal bank accounts of Arihay, remains a mystery.

DH/D226596/FL2805

## CONCLUSION

For all the foregoing reasons and those stated within Kaikov Defendants' Motion to Dismiss the FAC, Plaintiff's Motion for a Preliminary Injunction and Temporary Restraining Order against the Kaikov Defendants must be denied; together with such other and further relief as to this Court seems just and proper.

Dated:  Lake Success, New York
        January 16, 2020

                                  Respectfully submitted,
                                  **THE RUSSELL FRIEDMAN LAW GROUP, LLP**

By:   /s/*Charles Horn*
        Charles Horn

DH/D226596/FL2805