**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

**CHALAMO KAIKOV,**                                           19-cv-2521-LDH-RER

**Plaintiff,**

　-against-

**ARIHAY KAIKOV, DUSTIN BOWMAN,**
**ANDERSON, BOWMAN & ZALEWSKI PLLC,**
**SHIRYAK BOWMAN, ANDERSON, GILL &**
**KADOCHNIKOV LLP, PACIFIC 2340 CORP.,**
**ROYAL A&K REALTY GROUP INC., A&E.R.E.**
**MANAGEMENT CORP., NY PRIME HOLDING**
**LLC, AG REALTY BRONX CORP., JOHN and**
**JANE DOE 1-19 and XYZ CORPORATION 1-10,**

**Defendants,**
-------------------------------------------------------------------X


**PLAINTIFF CHALAMO KAIKOV'S OBJECTIONS**
**TO MAGISTRATE JUDGE RAMON E. REYES, JR' S**
**OCTOBER 5, 2020 REPORT AND RECOMMENDATIONS**
**ON DISPOSITION OF DEFENDANTS ARIHAY KAIKOV AND CORPORATE**
**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**



Dated: <u>October 19, 2020</u>              TEMKIN & ASSOCIATES, LLC
                                          Maria Temkin, Esq. (*pro hac vice*)
                                          1700 Market Street, Suite 1005
                                          Philadelphia, PA 19103
                                          Tel.  (215) 939-4181
                                          maria@temkinlegal.com

                                          *Attorneys for Plaintiff Chalamo Kaikov*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... iii

STANDARD OF REVIEW OF MAGISTRATE JUDGE'S  RECOMMENDATIONS ................1

PERTINENT FACTUAL ALLEGATIONS IN THE FIRST AMENDED COMPLAINT ...........1

      A.      Arihay Entices Chalamo To Enter Into A Joint Real Estate Venture ......................1

      B.      Discussions Between Chalamo And Arihay In April 2014 .....................................3

      C.      Chalamo's Visit To New York In November 2016 .................................................4

      D.      The Kaikov Defendants' Fraudulent Conduct Between December 2016 and 2018  .........................................................................................................5

      E.      Continuation of Defendants' Fraudulent Scheme.................................................6

      F.      Predicate Acts of Racketeering .............................................................................7

STANDARD OF REVIEW ON MOTIONS TO DISMISS ........................................................10

OBJECTIONS...........................................................................................................................12

    I.      OBJECTION TO MAGISTRATE JUDGE'S RECOMMENDATION TO DISMISS CIVIL RICO CLAIMS ..............................................................................12

    II.      OBJECTION TO MAGISTRATE JUDGE'S FINDING THAT STATUTE OF FRAUDS APPLIES ........................................................................................................16

    III.      OBJECTION TO MAGISTRATE JUDGE'S RECOMMENDATION TO DISMISS A CLAIM FOR IMPOSITION OF CONSTRUCTIVE TRUST...............18

    IV.      OBJECTION TO MAGISTRATE JUDGE'S RECOMMENDATION TO DISMISS A CLAIM A COMMON LAW FRAUD CLAIM ......................................19

    V.      OBJECTION TO MAGISTRATE JUDGE'S RECOMMENDATION TO DISMISS A CONVERSION CLAIM ........................................................................23

    VI.      OBJECTION TO MAGISTRATE JUDGE'S RECOMMENDATION TO DISMISS A CLAIM TO PIERCE CORPORATE VEIL ............................................24

CONCLUSION.........................................................................................................................25

CERTIFICATE OF SERVICE ........................................................................................................27

Plaintiff Chalamo Kaikov hereby files the foregoing Objections to the United States Magistrate Judge Hon. Ramon E. Reyes, Jr.'s Recommendations on the disposition of the Defendants' Arihay Kaikov ("Arihay") and Pacific 2340 Corp., Royal A & K Realty Group Inc., A&E.R.E. Management Corp., NY Prime Holding LLC, and AG Realty Bronx Corp.'s (collectively, "Corporate Defendants") Motion to Dismiss Plaintiff's Amended Complaint.

On October 5, 2020, Magistrate Judge Reyes filed a Report and Recommendation recommending that this Court deny Defendants' Motion to Dismiss Plaintiff's unjust enrichment claim but grant Defendants' Motion with respect to (1) Civil RICO claims; (2) common law fraud claim; (3) conversion claim; (4) request to impose constructive trust; and (5) claim to pierce Corporate Defendants' corporate veil. As set forth in detail below, Plaintiff respectfully submits that this Court should deny Defendants' Motion to Dismiss in its entirety.

## STANDARD OF REVIEW OF MAGISTRATE JUDGE'S RECOMMENDATIONS

With respect to dispositive motions, this Court may "accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). A district court must "determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3).

## PERTINENT FACTUAL ALLEGATIONS IN THE FIRST AMENDED COMPLAINT

A.     **Arihay Entices Chalamo to Enter into a Joint Real Estate Venture**

Plaintiff Chalamo Kaikov is a native and lifelong resident of Russia. Defendant Arihay Kaikov is Chalamo's cousin and lives in New York.

In December of 2012, Chalamo was visiting his son Khanan in New York when Arihay approached Chalamo to discuss a potential business venture. Arihay represented that he had significant experience in purchasing foreclosed properties in Brooklyn and renovating, managing,

and selling them for profit. Arihay told Chalamo that he had been successful in his previous real estate projects and had a trusted team of contractors and lawyers. Arihay represented by using his team of lawyers and contractors, the joint venture will save on renovation expenses and legal fees.

Arihay promised that he would personally manage the business venture, would locate and acquire the properties, but would keep Chalamo appraised about the properties which would be purchased, the renovation progress, and account for all expenditures. Arihay represented to Chalamo that they would be equally responsible for all capital obligations to acquire and manage the investment properties and share equally in any profits from the sale of the renovated properties.

Arihay further represented that their joint venture would be extremely beneficial to Chalamo and would turn up quick profits of at least 200% to 300%. Arihay surmised that an ownership interest in an informal joint venture would be more enticing to Chalamo and suggest higher illusory profits than a loan with set terms which would have to be set in writing and repaid by Arihay. Arihay did not want to put anything in writing as he never intended to return any "investments" to Chalamo.

Arihay told Chalamo that Chalamo had to decide quickly, as Arihay purportedly had other interested investors. Chalamo found Arihay's proposal attractive because of its promised high returns, because Chalamo perceived investment in real estate to be safe, and because it would not require his involvement in locating investment properties, day-to-day management of renovations, or handling lengthy legal wranglings. Arihay's representations and the fact that he was his cousin, convinced Chalamo that Arihay could be trusted to deal fairly and honestly in the proposed joint venture.

Relying on Arihay's representation, Chalamo invested $100,000 in the joint venture on the terms proposed by Arihay (the "Initial Investment"). Sometime in 2013, Arihay informed

Chalamo that the Initial investment returned a profit of $100,000 and that Chalamo should re-invest it in order to continue making profit. Although Arihay promised to identify specific properties purchased with the Initial Investment, as well as itemize expenses and costs, he did not do that at the time. Arihay did not want to put anything in writing because he never intended to return money to Chalamo.

In October 2013, Arihay traveled to Moscow where he met with Chalamo. There, he told Chalamo that the Initial Investment had returned additional profit of $100,000, making a total profit of $200,000. Arihay did not disclose which properties returned profit but requested that Chalamo make an additional capital contribution of $200,000 to purchase more properties, promising returns in excess of $500,000 when the properties are sold. Arihay disclosed purported profits to Chalamo in order to fraudulently induce Chalamo to make further investments. Based on Arihay's representations at the Moscow meeting, Chalamo invested additional $200,000 to the joint venture on the same terms, *i.e.* Arihay would identify investment opportunities and handle all necessary arrangements, the parties would contribute equally to renovation expenses, and will split any profits equally.

## B. Discussions between Chalamo and Arihay in April 2014

In the beginning of 2014, Chalamo and Arihay had numerous telephone conversations where Chalamo requested Arihay to identify properties in which money were invested and explain when profits can be distributed. Arihay continued to refuse to provide any information related to the properties or alleged profits Arihay claimed were generated in 2013.

As Chalamo no longer felt comfortable operating on an informal verbal agreement, he requested that some formal relationship be established. In order to fraudulently induce Chalamo to make additional investments and delay repayment of existing investments, Arihay agreed to

form a joint corporation with Chalamo, where they would be *de facto* 50-50 % owners, and which would hold the tiles and/or deeds for the Investment Properties and account for joint investments and expenses. It was also agreed that Chalamo's son Khanan, who lives in New York, would hold a position of the corporation's president and at all times act as Chalamo's agent and on Chalamo's behalf. The corporation, called 911 Realty Corp., was opened on April 29, 2014.

In May 2015, in reliance on Arihay's promises, Chalamo provided another $100,000 to Arihay as a further investment into the joint venture. However, for the next two years Arihay refused to transfer any titles to the investment properties to 911 Realty claiming that the properties were subject to ongoing litigations to clear titles. As Chalamo found out later, the titles and/or deeds for the properties purchased with Chalamo's investments were owned by Defendants Pacific 2340 Corp., Royal A&K Realty Group Inc., A&E.R.E. Management Corp., NY Prime Holding LLC, AG Realty Bronx Corp. (the "Corporate Defendants") and possibly other entities, which were solely under control and management of Arihay.

**C. Chalamo's Visit to New York in November 2016**

In November of 2016, Chalamo came to New York and met with Arihay to discuss the return of his investment. In order to delay payment of the invested funds, Arihay finally agreed to provide a list of Investment Properties subject to the joint agreement. The following properties were identified by Arihay:

- 567 Jerome Street, Brooklyn, New York 11207;

- 317 East 31st Street, Brooklyn 11226;

- 118-36 219th Street, Jamaica, New York 11411;

- 118-26 220th Street, Jamaica, New York 11411;

- 909 Elton Street, Brooklyn, New York 11208;

- 280 West 127th Street, New York, New York 10027;

- 844 Herkimer Street, Brooklyn, New York 11233;

- 243 Buttrick Avenue, Bronx, New York 10465;

- 905 Mother Gaston Boulevard, Brooklyn, New York 11212;

- 406 East 94th Street, Brooklyn, New York 11212.

During the meeting, also attended by Chalamo's sons Khanan and Ariel, brother Rakhmine, and sister-in-law Elena, the parties made notes reflecting Arihay's representations of how much was already invested in each property, and what anticipated expenses and resale value would be. Arihay also confirmed the addresses of properties in a series of texts sent to Khanan on November 10 and 11, 2016. The parties even visited some of the properties. The parties again agreed that all titles and/or deeds for the invested properties would be immediately transferred to 911 Realty for joint ownership.

The parties then opened a bank account for 911 Realty, which was used by Arihay to pay sometimes inflated expenses for renovating properties. Khanan was to be a signatory on the account on behalf of Chalamo. Arihay also explained that further investment was needed in order to pay for renovation of the Investment Properties.

In reliance on Arihay's representations and convinced that he was now a 50% owner of ten identified Investment Properties, Chalamo agreed to invest additional funds in the joint venture. On November 23, 2016, Chalamo made a wire transfer from his bank in Russia in the amount of $500,000. The funds were intended to be invested in 911 Realty to cover expenses for, inter alia, renovation of the ten identified Investment Properties.

**D.     Defendants' Fraudulent Conduct between December 2016 and 2018.**

From December 2016 through part of 2018, Arihay used 911 Realty's bank account to pay

renovation expenses for the Investment Properties. Most of the funds required for renovations were provided on "as needed" basis by Chalamo. Khanan managed day-to-day operations of 911 Realty, its bank account and kept accounting of Chalamo's investments on Chalamo's behalf.

With regard to the Investment Properties, the First Amended Complaints ("FAC") details specific frauds as to each of the Properties. Ultimately, Arihay transferred deeds for only two out of ten Investment Properties to 911 Realty, in violation of the agreement. Arihay used Chalamo's money, but never intended to return the invested money to Chalamo or share profits from the sale of the Investment Properties. *See* FAC, ¶¶ 74-131.

**E.     Continuation of Defendants' Fraudulent Scheme**

Sometime in May of 2018, Chalamo confronted Arihay regarding transferring the remaining property titles to 911 Realty or returning investment funds. When confronted by Plaintiff, Arihay reneged on his promises and made threats to Plaintiff and his sons, including threatening putting his sons in jail. For example, during the summer of 2018, Arihay made numerous phone calls and sent numerous text messages via WhatsApp to Plaintiff in Moscow, including a message on July 3, 2018, stating as follows:

> If there is one more attempt to harm me I will get so scared that I will f* you up! Or will bar you entry to the USA. Or your eagles will be held up by my men. If my accounts are not unfrozen by Monday, then on Tuesday you will have to wire me $1,000,000. So prey to God that doesn't happen…

On August 3, 2018, Arihay sent a message to Plaintiff threatening that if Chalamo does not pay Arihay $10 million, Arihay "will call his men in Russian police." Arihay also left numerous threatening voicemails with expletives and sent other text messages with threats to Plaintiff in Moscow, including messages on June 9, July 3, July 12, July 27, July 28, August 3, August 5, August 6, and August 7, 2018.

On August 8, 2018, Arihay sent Chalamo in Moscow a YouTube video depicting of a suspect by Russian police. The video was sent as a threat in order to prevent Chalamo from seeking return of his invested funds. Arihay also opened an account in the name of 911 Realty in TD Bank, where he was a sole signatory, in order to fraudulently conceal any profits obtained from the joint investments. In June, 2018, Arihay traveled to Florida, where he made a series of unauthorized withdrawals from the business account of 911 Realty in Chase Bank totaling $116,650, falsely representing to the bank that he was an authorized signatory on the account, when he was not, as follows:

- Fraudulent withdrawal of $110,000 in the form of Cashier's check for the benefit of Defendant A&E.R.E. Management on June 29, 2018;

- Fraudulent withdrawal of $3,000 falsely holding himself as representative of 911 Realty on June 29, 2018;

- Fraudulent withdrawal of $650 falsely holding himself as representative of 911 Realty on July 2, 2018.

These monies belong to Plaintiff and represented partial profit from Plaintiff's investment in the 406 East 94th Street Property received at closing in April 2018.

On July 3, 2018, Arihay caused to incorporate a company Mother Gaston Corp. and proceeded to fraudulently transfer the deed to the Mother Gaston Property from 911 Realty, without authorization or authority to do so. On September 12, 2018, in order to further deter Plaintiff from claiming return of the investment, Arihay filed a fraudulent lawsuit against Khanan, falsely accusing him of diverting money from sale of the 406 East 94th Street Property to his own personal accounts, all while knowing that these allegedly stolen money belonged to Plaintiff.

## F.    Predicate Acts of Racketeering

Defendants' fraudulent scheme was effected by a pattern of related acts of wire fraud, money laundering, illegal transactions in monetary instruments, and interstate and foreign travel in aid of racketeering (collectively, the "Predicate Acts") which were agreed upon and coordinated among the Defendants as part of the conspiracy among Defendants to effect the fraudulent scheme. Each of the Defendants knowingly participated in the formation of the fraudulent scheme with one or more defendants and willingly participated by knowingly and intelligently carrying out the Predicate Acts. Based on the nature of the fraudulent scheme, some of the details of the Defendants' wrongdoing are exclusively within the possession of the Defendants, preventing Plaintiff from pleading certain acts with greater particularity in the Amended Complaint.

**Wire Fraud**. Each of the below acts was done in furtherance of the scheme to receive money from Plaintiff and used, or caused the use of, the United States wires:

a.     Numerous phone calls between Arihay in U.S. and Chalamo in Moscow between 2012 and 2018;

b.     Numerous text messages between Arihay and Chalamo between 2012 and 2018, including:

   (1)     July 3, 2018 text message from Arihay to Chalamo stating:

   If there is one more attempt to harm me I will get so scared that I will f* you up! Or will bar you entry to the USA. Or your eagles will be held up by my men. If my accounts are not unfrozen by Monday, then on Tuesday you will have to wire me $1,000,000. So prey to God that doesn't happen…

   (2)     August 3, 2018, text message from Arihay to Plaintiff threatening that if Chalamo does not pay Arihay 10 million dollars, Arihay "will call his men in Russian police."

   (3)     Numerous threatening voicemail with expletives and sent other text messages with threats to Plaintiff and his sons in June – August 2018;

   (4)     Numerous other text messages with threats to Plaintiff in Moscow, including messages on June 9, July 3, July 12, July 27, July 28, August 3, August 5, August 6, and August 7, 2018;

          (5)      an August 8, 2018 message from Arihay to Chalamo where Arihay sent Chalamo in Moscow a YouTube video of an arrest by Russian police of a suspect.

    c.     Numerous wires sent in furtherance of the fraudulent scheme, including:

          (1)      On November 23, 2016, a wire transfer from Chalamo's bank account in Russia to Arihay's wife account in the U.S. in the amount of $500,000 representing Chalamo's investment funds wired in reliance on Arihay's fraudulent representations;

          (2)      On December 6, 2016, a wire from Khanan in the amount of $90,000 to deposit to 911 Realty Chase Bank account representing Chalamo's investment funds;

          (3)      On December 6, 2016, a wire from Khanan in the amount of $220,000 to deposit to 911 Realty Chase Bank account representing Chalamo's investment funds.

**Bank Fraud**. In June 2018, Arihay, traveled to Florida, where he, without authorization, made a series of withdrawals from the business account of 911 Realty in Chase Bank, totaling $116,650, falsely representing to the bank that he was an authorized signatory on the account, when he was not, as follows:

    a.     Fraudulent withdrawal of $110,000 in the form of Cashier's check for the benefit of Defendant A&E.R.E. Management on June 29, 2018;

    b.     Fraudulent withdrawal of $3,000 falsely holding himself as representative of 911 Realty on June 29, 2018;

    c.     Fraudulent withdrawal of $650 falsely holding himself as representative of 911 Realty on July 2, 2018.

**Money Laundering.** During the relevant times Arihay used the proceeds derived from defrauding Plaintiff and other investors to invest in Corporate Defendants and other businesses and to wire funds to places unknown with intent to conceal and disguise the nature and control of the money.

**Transactions Involving Criminally-Derived Property.** In furtherance of the scheme to

receive money from investors and engaging in financial transactions in criminally derived property of a value greater than $10,000, Arihay used the funds in the amount greater than $10,000 obtained by defrauding investors to invest in real estate and other businesses, to make personal withdrawals from the businesses. The Law Firm Defendants profited from proceeds of the managing legal affairs of the Realty Companies Enterprise, including assisting with recording fraudulent deeds and receiving fraudulent commissions on the sale of the investment properties.

**Interstate and foreign Travel**. The fraudulent scheme included interstate and foreign travel by Arihay in furtherance of fraud, including Arihay travelling from outside the United State to Russia in 2013 and between states in the United States, including a trip to Florida in June 2018.

**Interference with commerce by threats or violence**. The fraudulent scheme included acts in furtherance of the fraudulent scheme to defraud investors, affecting commerce, including numerous threats by Arihay to Chalamo and his sons, as described above.

## STANDARD OF REVIEW ON MOTIONS TO DISMISS

"To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must state factual allegations sufficient to 'to raise a right to relief above the speculative level.'" *Tejada v. Little City Realty LLC*, 308 F. Supp. 3d 724, 729 (E.D.N.Y. 2018) (Weinstein, J.), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (internal citations omitted). "Whether a complaint states a plausible claim for relief is 'a context-specific [task], requiring the reviewing court to draw on its experience and common sense.'" *Id*., quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

In reviewing averments made in a complaint, a court should first assume the "veracity" of well-pled allegations "and then determine whether they plausibly give rise to an entitlement to

relief." *Id.*, quoting *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt.*, 712 F.3d 705 (2d Cir. 2013) (citing *Iqbal*, 556 U.S. at 679). In doing so, the court should draw all reasonable inferences in favor of the non-moving party. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

Furthermore, "[t]he *Twombly* plausibility standard, which applies to all civil actions, does not prevent a plaintiff from pleading facts alleged 'upon information and belief' where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." *Arista Records Ltd. Liab. Co. v. Doe*, 604 F.3d 110, 120 (2d Cir. 2010) (internal citations and quotation marks omitted); *see also Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Although allegations of fraud are subject to the heightened pleading requirements of Rule 9(b), it does not call for plaintiff to plead every conceivable fact about the claims they allege were fraudulent, or to prove [their] claims at the pleading stage." *Marino v. Coach, Inc.*, 264 F. Supp. 3d 558, 568 (S.D.N.Y. 2017). Rather, it "must be read in conjunction with Rule 8's requirement of a 'short and plain statement' of the claim." *Clark v. Advanced Composites Grp.*, 2019 U.S. Dist. LEXIS 80639, at *52 (S.D.N.Y. May 9, 2019), quoting *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987).

Furthermore, the particularity requirements of Rule 9(b) are relaxed where "plaintiff lacks access to all facts necessary to detail claim." *Rotella v. Wood*, 528 U.S. 549, 560 (2000), citing *Corley v. Rosewood Care Center, Inc. of Peoria*, 142 F.3d 1041, 1050-1051 (7th Cir. 1998). "[A]llegations [of fraud] may be based on information and belief when facts are peculiarly within

the opposing party's knowledge." *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990); *accord Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008); *Rombach v. Chang*, 355 F.3d 164, 175 fn.10 (2d Cir. 2004); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1057 (2d Cir. 1993).

## OBJECTIONS

## I.   OBJECTION TO MAGISTRATE JUDGE'S RECOMMENDATION TO DISMISS CIVIL RICO CLAIMS

Plaintiff respectfully submits that in finding that Plaintiff does not have standing under RICO because he did not sustain domestic injury, the Magistrate Judge incorrectly applied the leading Second Circuit precedent to the full set of facts set forth in the FAC.

As the Second Circuit set forth in *Bascuñán v. Elsaca*, 874 F.3d 806, 809 (2d Cir. 2017) (*Bascuñán I*), "where the injury is to tangible property[], the injury is domestic if the plaintiff's property was located in the United States when it was stolen or harmed, even if plaintiff himself resides abroad." *Id*. at 820-821.[1]

Second Circuit made a clear distinction, explaining that on one hand,

a defendant's use of the U.S. financial system to conceal or effectuate his tort does not, on its own, turn an otherwise foreign injury into a domestic one. We thus hold that the use of bank accounts located within the United States to facilitate or conceal the theft of property located outside of the United States does not, on its own, establish a domestic injury.

*Id*. at 819.

However, where defendant "misappropriated funds [of his Chilean cousin] held in a New

[1] In that case, the plaintiff, a resident of Chile, brought an action against his cousin who had a power of attorney over plaintiff's finances, and stole millions of dollars from plaintiff through several fraudulent financial schemes.  The district court characterized plaintiff's injury as an "economic loss" and concluded that because individual plaintiffs suffer economic injuries at their place of residence, and because plaintiff was a resident of Chile, he alleged only foreign injuries. *Id*. at 809-810.

York bank account,", the Second Circuit found that the stolen money can be treated as tangible property physically located in the United States and concluded that "the injury is domestic if the plaintiff's property was located in the United States when it was stolen or harmed, even if the plaintiff himself resides abroad...." *Id*. at 821.

In a subsequent appeal in the same case, *Bascuñán v. Elsaca*, 927 F.3d 108, 118 (2d Cir. 2019) (*Bascuñán II*), the Second Circuit further explained that where funds are stolen in the United States *after* an authorized transfer from a foreign country, a foreign plaintiff sustains a *domestic* RICO injury. For example, *Bascuñán II* reasoned that when defendant opened a New York-based Morgan Stanley bank account in Fintair's name (company owned by Plaintiff) and transferred $37,850,000 from Plaintiff into the account and <u>then</u> sent money from Fintair's New York bank account to himself and others in approximately 500 separate transfers and check deposits, then the injury was domestic. As the Second Circuit explained:

> [D]efendant's] transfers of [Plaintiff's] money into Fintair's New York bank account were simply transfers from one Bascuñán account to another, made by an individual who had the colorable authority to order these transfers under his broad power of attorney. The alleged theft or misappropriation occurred when the funds left [Plaintiff], at which time they were located in a Morgan Stanley bank account in New York.

*Bascunan v. Elsaca*, 927 F.3d 108, 117-18 (2d Cir. 2019)

Contrary to the Magistrate Judge's finding, the set of facts instantly squarely falls under the situation described in *Bascuñán.*

The Report, ignoring the allegation of the FAC as a whole, concentrated on specific paragraphs only, and stated that

> the Amended Complaint is almost entirely devoid of a description of the ownership and location of the accounts involved in the transfers of Plaintiff's investment funds, which allegedly were "misappropriated." (Am. Compl. ¶¶ 47, 56, 74, 97, 107, 120). Plaintiff's failure to identify the location of and who owned the accounts involved in the transfers is fatal to his claim that he suffered a domestic injury.

*Id*. at 15. The Magistrate Judge ultimately concluded that

> Plaintiff does not identify any account in the United States over which he had custody
> and control and from which his investment funds were misappropriated. Accordingly,
> Plaintiff fails to establish standing based on the alleged misappropriation of his
> investment funds "after they were transferred to the United States.

*Id*. at 16.

In doing so, the Report completely disregarded the allegations in the Amended Complaint

that clearly identified the bank accounts and overall domestic scheme as follows:

- In order to further fraudulently induce Chalamo to make additional investments and delay repayment of investments already made, Arihay agreed to open a joint corporation in order to hold titles and own the properties in which he claimed he invested Chalamo's money (the "**Investment Properties**") and to account for joint investments and expenses. FAC, ¶ 52.

- The parties decided to form a joint corporation 911 Realty Corp., ("**911 Realty**") where Chalamo and Arihay would be *de facto* 50-50 % owners and which would hold the tiles and/or deeds for the invested properties and account for joint investments and expenses. FAC, ¶ 53.[2]

- It was also agreed that Chalamo's son Khanan, who resides in New York and could expediently "on location" handle any operations of 911 Realty, if needed, would hold a position of president of the 911 Realty and at all times act as Chalamo's agent and on Chalamo's behalf. FAC, ¶ 54.

- The parties then opened a bank account for 911 Realty, which was used by Arihay to pay real and, upon information and belief, inflated expenses for renovating properties. Khanan was to be a signatory on the account on behalf of Chalamo. FAC, ¶ 65.

- On November 23, 2016, Chalamo made a wire transfer from his bank in Russia in the amount of $500,000 to Arihay's wife's U.S. bank account. The money were intended to be invested in 911 Realty to cover expenses for, *inter alia*, renovation of the ten (10) Investment Properties. FAC, ¶ 68.

- From December 2016 through part of 2018, Arihay used 911 Realty's bank account to pay renovation expenses for the Investment Properties. FAC, ¶ 72.

- Most of the funds required for renovations were provided on "as needed" basis by Chalamo. FAC ¶ 73, including December 6, 2016 wire from Khanan in the amount of

---

[2] The question of ownership is a fact question and could not be decided on a motion to dismiss.

$90,000 to deposit to 911 Realty Chase Bank account representing Chalamo's investment funds and December 6, 2016 wire from Khanan in the amount of $220,000 to deposit to 911 Realty Chase Bank account representing Chalamo's investment funds. FAC, ¶ 159(c).

Furthermore, the FAC alleges that Arihay stole $116,650 of Chalamo's money from 911 Realty's Chase Bank account, Florida branch. The stolen monies "belong to Plaintiff and represented partial profit from Plaintiff's investment in the 406 East 94th Street Property received at closing in April 2018." FAC, ¶¶139-140.

The above allegations clearly describe that while initially Plaintiff transferred money to United States from Russia, once the monies were deposited in the Chase Bank account – business account of 911 Realty, a N.Y. corporation in which Plaintiff had 50% interest, Arihay's use of this domestic account "from December 2016 through part of 2018 …" to pay for the Investment Properties and then selling the Investment Properties and misappropriating the profits constituted use of Plaintiff's property in the United States causing domestic injury to Plaintiff pursuant to the holdings and reasoning in *Bascuñán I* and *Bascuñán II*. [3]

In addition, the parties were supposed to deposit profits from sale of the Investment Properties in the 911 Realty's Chase Account. FAC alleges throughout that Arihay fraudulently diverted such profits, causing injury to Plaintiff. The allegation that Arihay, while in Florida, fraudulently withdrew money from Chase Bank representing $116,650 of Plaintiff's profits from

---

[3] Chase Bank is a NY bank and it does not operate outside the U.S. To the extent that this was not clearly and specifically stated in the FAC or to the extent that the account number was not specifically stated, Plaintiff respectfully submits that this is a technical deficiency and he should be allowed to file an amended complaint. *See Bascunan v. Elsaca*, 927 F.3d 108, 120 (2d Cir. 2019) ("should Bascuñán learn additional facts during discovery indicating that these injuries were domestic, the court in its discretion may allow him to allege these facts in an amended complaint.")

the sale of one of the investment properties is clearly "tangible property[] that was located in the United States when it was stolen or harmed, even if plaintiff himself resides abroad." Under holding in *Bascuñán I* such injury is domestic. *Id*. at 820-821.

At the motion to dismiss stage, the above is enough to plausibly allege an injury to tangible property within the United States, and thus a "domestic injury" within the meaning of the civil RICO statute.

## II.     OBJECTION TO MAGISTRATE JUDGE'S FINDING THAT STATUTE OF FRAUDS APPLIES

Plaintiff objects to the Magistrate Judge's finding that New York Stature of Frauds, N.Y. Gen. Obligations Law § 5-703 applies to the oral agreement between Arihay and Chalamo.

The Statute of Frauds generally provides that "an interest in real property cannot be created except by a writing expressing the consideration, signed by the party against whom enforcement is sought." *Knapp v. Maron*, 2015 U.S. Dist. LEXIS 67372, at *6 (S.D.N.Y. May 22, 2015).   "The statute of frauds does not render void oral joint venture agreements to deal in real property because the interest of each partner in a partnership is deemed personalty."  *Plumitallo v. Hudson Atl. Land Co*., 74 A.D.3d 1038, 1039, 903 N.Y.S.2d 127, 128 (2010), citing *Mattikow v Sudarsky*, 248 NY 404, 406-407, 162 NE 296 (1928); *Fairchild v. Fairchild*, 64 NY 471, 479 (1876); *Walsh v. Rechler*, 151 A.D.2d 473, 542 N.Y.S.2d 262 (1989); *Johnson v Johnson*, 111 A.D.2d 1005, 1006, 490 N.Y.S.2d 324 (1985); *Elias v Serota*, 103 A.D.2d 410, 413, 480 N.Y.S.2d 344 (1984).

Where "plaintiff is not seeking to acquire an interest in real property, but rather, is asserting an alleged interest in joint venture assets," the statute of frauds does not apply.  *Id*., citing *Pisciotto v Dries*, 306 A.D.2d 262, 263, 760 N.Y.S.2d 526 (2003); *Johnson*, 111 A.D.2d at 1006; *Liffiton v DiBlasi*, 170 A.D.2d 994, 566 N.Y.S.2d 148 (1991); *see also Foster v. Kovner*, 44 A.D.3d 23, 27,

840 N.Y.S.2d 328, 331 (App. Div. 2007) ("the statute of frauds is generally inapplicable to an agreement to create a joint venture.").

"A joint venture pursuant to New York law requires five elements: (1) two or more persons must enter into a specific agreement to carry on an enterprise for profit; (2) their agreement must evidence their intent to be joint venturers; (3) each must make a contribution of property, financing, skill, knowledge, or effort; (4) each must have some degree of joint control over the venture; and (5) there must be a provision for the sharing of both profits and losses." *Dinaco, Inc. v. Time Warner, Inc*., 346 F.3d 64, 67-68 (2d Cir. 2003).

The Magistrate Judge erroneously concluded that Plaintiff failed to plead the element of joint control and therefore failed to allege the existence of a joint venture. The Amended Complaint alleges that the agreement between Chalamo and Arihay was to create a joint venture where "they would be equal partners, each equally responsible for all capital obligations to acquire and manage the investment properties, and sharing equally any profits from the sale of the renovated properties." *See* Am. Cmpl. at ¶ 32 (emphasis added). Although Arihay was supposed to manage day-to-day operations of the venture, he was also required to "timely inform Chalamo about the properties which would be purchased, the details of renovation progress, and detail all expenditures of the invested money." *Id*. at ¶ 31. As their dealings progressed, Chalamo sought to exercise his control over the joint venture in the course of numerous meetings and conversations with Arihay, by insisting on establishing an entity to hold titles and own the investment properties, and by designating his son Khanan as his "on location" agent in New York. *Id*. at ¶¶ 44-65.

Admittedly, Plaintiff, who lived in Moscow, did not, and could not, have the same degree of control over management of the joint venture operations as Arihay. However, "to require complete equality among members of a joint venture with respect to each of its required elements

would be taking a significant legal step backward by depriving this business form of its raison d'etre, *i.e.*, flexibility as partnership for a limited purpose." *Richbell Info. Servs. v. Jupiter Partners, L.P.*, 309 A.D.2d 288, 298, 765 N.Y.S.2d 575, 584 (App. Div. 2003). Making all reasonable inferences in favor of Plaintiff on Motion to Dismiss, the allegations in the Amended Complaint are sufficient to establish that Arihay had "some degree" of control sufficient to plead a joint venture under New York law.

For the foregoing reasons, Plaintiff respectfully submits that the Statute of Frauds does not apply in this case and that this Court should reject the Magistrate Judge's recommendation in that regard.

## III.     OBJECTION TO MAGISTRATE JUDGE'S RECOMMENDATION TO DISMISS A CLAIM FOR IMPOSITION OF CONSTRUCTIVE TRUST

Plaintiff objects to the Magistrate Judge's recommendation to dismiss his claim for imposition of constructive trust on all monies transferred to the Defendant's accounts.

Under New York law, "[t]he plaintiff's status as an alleged partner in a joint venture gives rise to a fiduciary relationship which allows the imposition of a constructive trust." *Plumitallo v. Hudson Atl. Land Co.*, 74 A.D.3d 1038, 1039-40, 903 N.Y.S.2d 127, 129 (App. Div. 2010); *accord Parr v. Ronkonkoma Realty Venture I, LLC*, 65 A.D.3d 1199, 1201, 885 N.Y.S.2d 522 (App. Div. 2009); *A.G. Homes, LLC v Gerstein*, 52 A.D.3d 546, 548, 860 N.Y.S.2d 582 (App. Div. 2008). The existence of a fiduciary relationship is particularly pronounced where the joint venture is between family members. *See Braddock v. Braddock,* 60 A.D.3d 84, 88, 871 N.Y.S.2d 68, 72 (App. Div. 1st Dept.), ("family members stand in a fiduciary relationship toward one another in a co-owned business venture."); *Venizelos v. Oceania Mar. Agency*, 268 A.D.2d 291, 702 N.Y.S.2d 17 (App. Div. 2000) (shareholders in family business owe fiduciary duty to each other independent of any duty owed to the company).

"Elements of a constructive trust are (1) a fiduciary relationship, (2) a promise, (3) a transfer in reliance thereon, and (4) unjust enrichment." *Plumitallo, supra.* "However, these requirements are not rigidly applied. The purpose of a constructive trust is to prevent unjust enrichment." *A.G. Homes*, 860 N.Y.S.2d at 583 (internal citations omitted).

The Magistrate Judge recommended dismissal of the constructive trust claim based on his conclusion that Plaintiff failed to plead the existence of a joint venture with Arihay, and therefore failed to allege the existence of a fiduciary relationship. However, as we explain above, the Amended Complaint sufficiently alleges the existence of a joint venture. Therefore, Plaintiff alleged a fiduciary relationship with Arihay by virtue of their status as a partners in a joint venture.

Furthermore, Plaintiff's allegations of contributions towards the acquiring and developing the properties sufficiently alleged the "transfer in reliance" and "unjust enrichment" elements of the cause of action for constructive trust.

Accordingly, Plaintiff submits that he stated a claim for imposition of constructive trust and that this Court should reject the Magistrate Judge's recommendation to dismiss this claim.

## IV.  OBJECTION TO MAGISTRATE JUDGE'S RECOMMENDATION TO DISMISS A CLAIM A COMMON LAW FRAUD CLAIM

Plaintiff objects to the Magistrate Judge's recommendation to dismiss his claim for common law fraud under New York law.

To state a claim for common law fraud under New York law, plaintiff must allege that: "(1) defendant made a representation as to a material fact; (2) such representation was false; (3) defendant intended to deceive plaintiff; (4) plaintiff believed and justifiably relied upon the statement and was induced by it to engage in a certain course of conduct; and (5) as a result of such reliance plaintiff sustained pecuniary loss." *Ross v. Louise Wise Servs., Inc.*, 8 N.Y.3d 478, 488, 836 N.Y.S.2d 509, 515, 868 N.E.2d 189, 195 (2007) (internal citations omitted).

"Where the gravamen of the alleged fraud . . . arises from a promisor's successful attempts to induce a promisee to enter into a contractual relationship despite the fact that the promisor harbored an undisclosed intention not to perform under the contract, a proper cause of action sounding in fraud may be stated" under New York law. *Neckles Builders, Inc. v. Turner*, 117 A.D.3d 923, 925, 986 N.Y.S.2d 494, 497 (App. Div. 2nd Dept. 2014); *Tribune Print. Co. v. 263 Ninth Ave. Realty*, 57 NY2d 1038, 1041, 444 NE2d 35, 457 NYS2d 785 (1982), quoting *Deyo v. Hudson*, 225 NY 602, 612, 122 NE 635 (1919) ("[A] false statement, promissory in nature, 'may be deemed the statement of a material existing fact, because it falsely represents the [declarant's] state of mind and the state of his [or her] mind is a fact'"); *Rudman v Cowles Communications*, 30 NY2d 1, 9, 280 NE2d 867, 330 NYS2d 33 (1972) ("There is no doubt that a misrepresented intention to perform a contract may constitute actionable fraud").

Viewing the Amended Complaint in light most favorable to Plaintiff, this Court should sustain the fraud claim. The Amended Complaint alleges that Arihay made false representations to Plaintiff in December of 2012 intended to deceive Plaintiff into investing into a purported joint real estate venture with Arihay. FAC, ¶¶ 28-35. Specifically, Arihay falsely alleged that he and Chalamo would be equal partners in the venture, he would be equally responsible for all capital obligations, and that he would share equally profits from the sale of renovated properties. *Id*. Plaintiff believed and justifiably relied on these representations – as they appeared credible and Plaintiff trusted that Arihay, his cousin, would deal honestly with Plaintiff – and agreed to invest the initial $100,000 in a joint venture. *Id*. at ¶¶ 36-38. *See Braddock*, 60 A.D.3d at 88, 871 N.Y.S.2d at 72 (App. Div. 2009) (holding that where parties in a joint venture were cousins, "[plaintiff's] reliance on [defendant's] good faith may be found to be reasonable even where it might not be reasonable in the context of an arm's length transaction with a stranger.")

Arihay's representations to Plaintiff about the purported success of the joint venture and the need for additional investment at their meeting in Moscow in October of 2013 induced Plaintiff to give Arihay an additional $200,000. FAC, ¶¶ 43-48.  Arihay's representations about the joint venture were false as he never intended to repay Plaintiff or to equally share in the venture's profits. *Id*.,¶¶ 71-143.

In April of 2014, in order to induce Plaintiff to make additional investments and delay repaying the investments already made, Arihay falsely promised Plaintiff that he would transfer titles and deeds for the investment properties to 911 Realty – a corporation where Plaintiff had a 50% equitable interest.  *Id*., ¶¶ 52-53.  In justifiable reliance on these promises, Plaintiff gave another $100,000 to Arihay. *Id*., ¶ 56.  As Plaintiff found out later, the titles and/or deeds for the properties purchased with his funds were owned by the Corporate Defendants which were solely under control and management of Arihay.  *Id*.,¶¶ 58, 71-143.

In November of 2016, Arihay once again falsely promised to transfer titles to ten identified investment properties to 911 Realty and induced Plaintiff to give him additional $500,000 for purported renovations.  *Id*., ¶¶ 59 - 70.  As detailed in the Amended Complaint, the Defendants' scheme continued well into 2018 when Arihay made unauthorized withdrawals from the 911 Realty's bank account, fraudulently transferred title to one the investment properties, and filed a fraudulent lawsuit against Plaintiff's son.  *Id*., ¶¶ 132-143.

The Magistrate Judge concluded that Plaintiff did not set forth specific facts indicating that Arihay never intended to honor his obligations to Plaintiff.  However, this fraudulent intent may be inferred from facts in the Amended Complaint describing the duplicitous pattern of Arihay's conduct throughout his dealings with Plaintiff.  *See Krimstock v. Kelly*, 306 F.3d 40, 47-48 (2d Cir. 2002) (on Rule 12(b)(6) Motion, the Court should "construe all factual allegations in the

complaint in favor of the non-moving party").  Also, the Magistrate Judge himself pointed to allegations that Arihay asked Plaintiff for an investment instead of a loan, which would have required setting the arrangement in writing, as evidencing "intent to defraud" Plaintiff. Furthermore, federal pleading requirements do not obligate "plaintiff to plead every conceivable fact about the claims they allege were fraudulent, or to prove [their] claims at the pleading stage." *Marino*, 264 F. Supp. 3d at 568 (S.D.N.Y. 2017).[4]  The facts alleged in the Amended Complaint and reasonable inferences from those facts sufficiently establish a claim for fraudulent inducement under New York law.

In addition, the Magistrate Judge concluded that Plaintiff could not establish that his reliance on Arihay's representations was justifiable. The element of justifiable reliance, however, is "generally one of fact" and therefore not suitable for resolution on a motion to dismiss. *See* Braddock, 60 A.D.3d at 88, 871 N.Y.S.2d at 72.  "In ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6),  the duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010), quoting *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998).  In assessing the justifiability of Plaintiff's reliance, the Magistrate Judge went beyond the scope of the District Court's review on a motion to dismiss.

For the foregoing reasons, Plaintiff submits that he stated a claim for common law fraud and that this Court should reject the Magistrate Judge's recommendation to dismiss that claim.

---

[4] To the extent that the Magistrate Judge expected Plaintiff to detail his allegation with more precision, then Plaintiff should be allowed leave to amend the Complaint.  If plaintiff has "at least colorable grounds for relief," justice requires granting leave to amend. *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc*., 748 F.2d 774, 783 (2d Cir. 1984) (citation omitted); Fed. R. Civ. P. 15(a) ("[L]eave to amend shall be freely given when justice so requires."). Plaintiff stated a colorable claim and discovery that the parties are engaged in now is providing additional evidence in support of Plaintiff's claims.

## V. OBJECTION TO MAGISTRATE JUDGE'S RECOMMENDATION TO DISMISS A CONVERSION CLAIM

Plaintiff objects to the Magistrate Judge's recommendation to dismiss his claim for conversion under New York law.

"Conversion is the unauthorized exercise of dominion or control over specifically identified property which interferes with the owner's rights." *Hoffman v. Unterberg*, 9 A.D.3d 386, 388, 780 N.Y.S.2d 617, 619 (App. Div. 2004); *Gilman v Abagnale*, 235 A.D.2d 989, 991, 653 N.Y.S.2d 176 (App. Div. 1997); *Republic of Haiti v Duvalier*, 211 A.D.2d 379, 384, 626 N.Y.S.2d 472 (App. Div. 1995).

"When funds are provided for a particular purpose, the use of those funds for an unauthorized purpose constitutes conversion." *Hoffman,* 780 N.Y.S.2d at 619; *Meese v Miller*, 79 A.D.2d 237, 243, 436 N.Y.S.2d 496 (App. Dv. 1981). "Further, where possession of the property is initially lawful, conversion occurs when there is a refusal to return the property after a demand." *Hoffman*, 780 N.Y.S.2d at 619., citing *Matter of White v City of Mount Vernon*, 221 A.D.2d 345, 346, 633 N.Y.S.2d 369 (1995).

The Amended Complaint alleges that Plaintiff provided funds to Arihay for investment in a joint real estate venture. FAC, ¶¶38, 47, 56, 68. Arihay misappropriated these funds and used them to purchase properties in the name of the companies he owned and controlled and refused to share in the profits when the properties were sold. Arihay and the Corporate Defendants unlawfully retained funds and/or properties that legally and/or equitably belong to Plaintiff. *Id*., ¶¶ 71-131. Accordingly, Plaintiff stated a claim for conversion under New York law.

The Magistrate Judge recommended dismissing the conversion claim because he concluded that Plaintiff's investment funds were not specifically identified in the Amended Complaint and because Plaintiff "does not allege where the money he gave to Arihay went." *See*

Report and Recommendation at p. 26. Plaintiff respectfully submits that the Magistrate Judged erred in his recommendations. "[T]he requirement of a specifically identifiable fund serves the purpose of ensuring that plaintiffs can recover for conversion only when they claim interference with a property right, as opposed to a mere failure to pay money owed." *Grgurev v. Licul*, 229 F. Supp. 3d 267, 289 n.14 (S.D.N.Y. 2017). The Amended Complaint identifies specific funds that Plaintiff transferred to Arihay for a specific purpose of purchasing and rehabbing the investment properties. *See* FAC, ¶¶ 38, 47, 56, 68. Not specifying whether these funds were transferred by cash, check, or wire does not warrant dismissal of the claim. Furthermore, at the time of filing of the Amended Compliant, Plaintiff could not know where the funds went other than that the funds were gone. Plaintiff never received his funds back, nor has he received the purported profits from the investment of these funds. Whether any of these funds were invested in the real estate as promised by Arihay is subject to the ongoing discovery in this case.

For the foregoing reasons, Plaintiff respectfully submits that he stated a claim for conversion under New York law and that this Court should reject the Magistrate Judge's recommendation to dismiss this claim.

## VI. OBJECTION TO MAGISTRATE JUDGE'S RECOMMENDATION TO DISMISS A CLAIM TO PIERCE CORPORATE VEIL

Plaintiff objects to the Magistrate Judge's recommendation to dismiss a claim to pierce corporate veil of the Corporate Defendants.

Under New York law, a court may pierce the corporate veil where 1) the owner exercised complete domination over the corporation with respect to the transaction at issue and 2) such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil. *MAG Portfolio Consultant, GMBH v. Merlin Biomed Group LLC*, 268 F.3d 58, 63 (2d Cir. 2001). "The party seeking to pierce the corporate veil must establish that the owners, through their

domination, abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice against that party such that a court in equity will intervene." *GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*, 667 F. Supp. 2d 308, 325 (S.D.N.Y. 2009), citing *Morris v. N.Y. State Dep't of Taxation and Fin.*, 82 N.Y.2d 135, 141, 623 N.E.2d 1157, 603 N.Y.S.2d 807 (1993).

The Amended Complaint alleges that Arihay established the Corporate Defendants for the sole purpose of concealing sales of the investment properties and converting the resulting profits for his own benefit. Furthermore, Arihay exercised complete dominion over the transactions involving the Corporate Defendants. FAC, ¶¶ 58, 74-126, 209-212.

Plaintiff respectfully submits that he stated a claim for piercing corporate veil against the Corporate Defendants and should be permitted to take discovery to establish additional facts in support of these allegations. Accordingly, this Court should reject the Magistrate Judge's recommendation to dismiss this claim as well.

## CONCLUSION

For the foregoing reasons, this Court should reject the Magistrate Judge's recommendations to dismiss Plaintiffs' Civil RICO claims, common law fraud claim, conversion claim, request to impose constructive trust, and claim to pierce Corporate Defendants' corporate veil and deny the Defendants' Motion to Dismiss in its entirety. The Court should also allow Plaintiff to amend the complaint.

Respectfully submitted,

Dated: October 19, 2020

TEMKIN & ASSOCIATES, LLC

Maria Temkin, Esq. (*pro hac vice*)
1700 Market Street, Suite 1005

Philadelphia, PA 19103
Tel.  (215) 939-4181
maria@temkinlegal.com

*Attorneys for Plaintiff Chalamo Kaikov*

## CERTIFICATE OF SERVICE

I certify that on this 19th day of October, 2020, I served a copy of Plaintiff's Objections To Magistrate Judge's Recommendations On Disposition Of Defendants Arihay Kaikov And Corporate Defendants' Motion To Dismiss Amended Complaint via ECF filing on all parties of record as follows:

Alex Kadochnikov, Esq.
SHIRYAK, BOWMAN, ANDERSON, GILL & KADOCHNIKOV, LLP
80-02 Kew Gardens Road, Suite 600
Kew Gardens, NY 11415
akadochnikov@sbagk.com

*Attorneys for Defendants Arihay Kaikov, Pacific*
*2340 Corp., Royal A&K Realty Group, Inc.,*
*A&E.R.E. Management Corp., NY Prime Holding,*
*LLC and AG Realty Bronx Corp.*

Dated: October 19, 2020

TEMKIN & ASSOCIATES, LLC

Maria Temkin, Esq. (*pro hac vice*)
1700 Market Street, Suite 1005
Philadelphia, PA 19103
Tel. (215) 939-4181
maria@temkinlegal.com

*Attorneys for Plaintiff Chalamo Kaikov*