UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X
CHALAMO KAIKOV,

                                             Docket No.: 19-CV-2521

                  Plaintiff,

       -against-

ARIHAY KAIKOV, PACIFIC 2340 CORP.,
ROYAL A&K REALTY GROUP INC., A&E.R.E.
MANAGEMENT CORP., NY PRIME HOLDING LLC,
AG REALTY BRONX CORP., JOHN and JANE DOE 1-19,
AND XYZ CORPORATION 1-10,

                  Defendants.
------------------------------------------------------------------------ X

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS ARIHAY KAIKOV, PACIFIC 2340 CORP., ROYAL A&K REALTY GROUP INC., A&E.R.E. MANAGEMENT CORP., NY PRIME HOLDING LLC, AG REALTY BRONX CORP.'S OPPOSITION TO PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE RAMON E. REYES, JR.'S REPORT AND RECOMMENDATIONS**

Alexander Kadochnikov, Esq.
Shiryak, Bowman, Anderson, Gill & Kadochnikov, LLP
80-02 Kew Gardens Road, Suite 600
Kew Gardens, NY 11415
(718) 263-6800

## PRELIMINARY STATEMENT

Chalamo Kaikov (hereinafter "Plaintiff") commenced this action by the filing of a Complaint on April 24, 2019. The Complaint was later amended and a First Amended Complaint (hereinafter "FAC") was filed on September 6, 2019.

Defendants, Arihay Kaikov (hereinafter "Arihay"), Pacific 2340 Corp. (hereinafter "Pacific Corp."), Royal A&K Realty Group, Inc. (hereinafter "Royal A&K"), A&E.R.E. Management Corp. (hereinafter "A&E.R.E."), NY Prime Holding, LLC (hereinafter "NY Prime"), and AG Realty Bronx Corp. (hereinafter "AG Realty") (collectively the "Defendants") filed a Motion to Dismiss Plaintiff's First Amended Complaint on October 7, 2019.

Magistrate Judge Ramon E. Reyes, Jr. (hereinafter "Magistrate Judge Reyes") filed his Report and Recommendation (hereinafter "Report") and the Motion to Dismiss was granted on October 5, 2020 in reference to the following claims: (1) civil RICO claims; (2) common law fraud claims; (3) conversion claims; and (4) an attempt to reverse pierce the corporate veil. The Motion to Dismiss was denied in reference to Plaintiff's unjust enrichment claim. Plaintiff subsequently filed his Objections to the Report on October 19, 2020. The instant matter is before the Court on Defendants' Opposition to Plaintiff's Objections to Magistrate Judge Reyes's Report.

## STATEMENT OF FACTS

In December 2012, Arihay allegedly approached his cousin, Plaintiff, with a business proposal. (Am. Compl. ¶ 28). Arihay allegedly explained that he would purchase real estate properties in foreclosure, renovate them, and resell the properties for profit. (Am. Compl. ¶ 3). This according to the Amended Complaint would turn up profits of at least 200%-300% on their joint investment. (Am. Compl. ¶ 33). Plaintiff allegedly accepted the proposal and provided

Arihay with an initial investment of $100,000 and the parties entered into an oral agreement. (Am. Compl. ¶¶ 38-39). Made a part of this alleged agreement was that Arihay would contribute 50% of the monetary capital to the alleged "joint venture," would find investment properties in foreclosure for renovation, and manage the venture." (Am. Compl. ¶ 39). The FAC acknowledges that there was no writing between the parties to solidify the oral agreement or terms agreed to between the parties.

In October 2013, Arihay allegedly visited Plaintiff in Moscow and informed him that his initial investment had turned a large profit and asked Plaintiff to contribute another $200,000. (Am. Compl. ¶ 45). Plaintiff admits that at the time of this meeting, there was no discussion between the parties, which identified a single piece of real estate that would be purchased with the capital contributions. (Am. Compl. ¶ 45). Nevertheless, Plaintiff made the additional $200,000 investment to Arihay. (Am. Compl. ¶ 47). Throughout the beginning of 2014, Plaintiff and Arihay had numerous telephone conversations where Plaintiff asked for details in reference to the properties and when the profits would be distributed. (Am. Compl. ¶ 50). Arihay provided no information in reference to the properties bought or alleged profits made. (Am. Compl. ¶ 50).

The supposed lack of transparency in these real estate transactions lead to a lack of trust on Plaintiff's end and so, he "no longer felt comfortable" working with Arihay on an oral agreement and as early as April 2014, he requested a formal relationship be made. (Am. Compl. ¶ 51). In April 2014, Plaintiff and Arihay agreed to form 911 Realty Corporation (hereinafter "911 Realty"), where they would both be de facto 50-50% owners. (Am. Compl. ¶¶ 53, 55). 911 Realty would hold the titles and/or deeds for the properties and account for joint investments and expenses related to the investment properties. (Am. Compl. ¶ 53). Plaintiff's son, Khanan,

would hold the position of president of 911 Realty to handle any on site operations and would act as Plaintiff's agent and on his behalf since he resides in New York and Plaintiff in Moscow. (Am. Compl. ¶ 54).

Over the next two years following the formation of 911 Realty, Arihay did not transfer any deeds from the investment properties to 911 Realty. (Am. Compl. ¶ 57). Further, the FAC fails to provide any information as to which investment properties Plaintiff claims were supposed to be transferred to 911 Realty. In May 2015, Plaintiff gave Arihay another $100,000 investment. (Am. Compl. ¶ 56). Thereafter, the FAC alleges that a meeting took place between Plaintiff and Arihay in November of 2016 where Arihay identified previously purchased properties, which Arihay allegedly agreed to transfer to 911 Realty, a company to which by Plaintiff's own admission, he had no actual ownership. (Am. Compl. ¶ 64). Once again, there is no writing to support any such allegation made against Arihay.

After this meeting, the parties opened a bank account for 911 Realty where Khanan, Plaintiff's son and President of 911 Realty, was to be a signatory on Plaintiff's behalf. (Am. Compl. ¶ 65). During this time, Arihay requested an additional contribution from Plaintiff. (Am. Compl. ¶ 66). Plaintiff consented and wired $500,000 to Arihay's wife's bank account to be used for 911 Realty's expenses. (Am. Compl. ¶¶ 67-68). Plaintiff thereafter alleges that Arihay transferred deeds to two properties to 911 Realty but failed to transfer deeds to eight other properties. (Am. Compl. ¶ 69). Nowhere in the FAC does Plaintiff identify which properties were allegedly transferred to 911 Realty, an entity Plaintiff has no ownership in, nor the other eight properties which were not transferred. The only fact clear from the FAC is that all ten of the properties listed in paragraph 61 of the FAC were purchased by Arihay prior to the alleged meeting between the two parties in November 2016.

From December 2016 through part of 2018, Arihay used 911 Realty's bank account to pay renovation expenses for the investment properties. (Am. Compl. ¶ 71). Plaintiff alleges that in regard to at least four properties, Arihay allegedly used his own contractors for renovations to fraudulently claim renovation expenses were higher than actually spent to extract more funds from Plaintiff to then convert for his own profit. (Am. Compl. ¶¶ 77, 88, 110, 122). Plaintiff's entire fraud section of the FAC is devoid of any details as to Plaintiff's capital contributions for the other five properties articulated in the FAC outside of the assertion that Plaintiff believes that Arihay will divert monies from the sale.

In January 2017, Arihay sold one of the properties that Plaintiff invested in – a property that was never transferred to 911 Realty. (Am. Compl. ¶¶ 87, 89, 92). Plaintiff claims that Arihay failed to pay him his share of the proceeds of the sale. (Am. Compl. ¶¶ 93, 94). The FAC once again does not articulate what Plaintiff's shares of the profits were, after expenses and costs were factored in. (Am. Compl. ¶ 140). A little more than a year later in April 2018, one of the ten properties held by 911 Realty was sold with the knowledge and consent of Plaintiff. (Am. Compl. ¶ 80). Plaintiff alleges that he did not receive his share of the profits, and once again fails to articulate what those profits were. (Am. Compl. ¶¶ 80, 81). At the same time, Arihay sold another one of the ten properties that were allegedly supposed to be transferred to 911 Realty without the knowledge or consent of Plaintiff. (Am. Compl. ¶ 101-02). Plaintiff claims that he did not receive profits for this property either but fails to mention that he is not entitled to any proceeds of the property since it was never transferred to 911 Realty. (Am. Compl. ¶¶ 103-04). Even if the properties were transferred to 911 Realty, Plaintiff would still not be entitled to any profits since he holds no actual ownership in the entity.

In May 2018, Plaintiff requested that Arihay return his investment funds. (Am. Compl. ¶ 132). When Arihay refused, Plaintiff alleges that Arihay threatened Plaintiff and his sons. (Am. Compl. ¶¶ 133-38). These alleged threats relate to occurrences outside the allegations in the FAC and therefore, are irrelevant to any claims made in this case.

In June 2018, Arihay withdrew $116,650 from the business account of 911 Realty at Chase Bank. (Am. Compl. ¶ 139). Plaintiff claims that these withdrawals were unauthorized because Arihay was not a signatory on the account. (Am. Compl. ¶ 139). In reference to this allegation, the FAC does not allege that Plaintiff was a signatory on this account, nor does it allege that withdrawals from the account required two signatures, and if so, the identity of the second signature that was required. Further, the FAC does not address whether the withdrawals were executed to satisfy legitimate expenses of 911 Realty, a company to which Plaintiff admits he has no actual ownership.

In August 2018, Arihay allegedly sold another of the ten properties without Plaintiff's knowledge or consent and allegedly failed to provide Plaintiff with any profits from the sale. (Am. Compl. ¶¶ 115-16). This suit was commenced by the filing of a summons and complaint by Plaintiff on April 24, 2019.

## STANDARD OF REVIEW

In reviewing a motion to dismiss brought under Rule 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994). To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Allegations must be

"more than labels and conclusions, and a formulaic recitation of the elements of a cause action will not do." *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Furthermore, plaintiffs who raise allegations involving fraud must meet the heightened pleading standard set forth in FRCP 9(b), which states that "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." This standard applies to civil RICO claims, alleging predicate acts of mail fraud, wire fraud, and bank fraud. *Morrow v. Black*, 742 F. Supp 1199, 1203 (E.D.N.Y. 1990).

In order to satisfy the particularity standard of FRCP 9(b), a complaint must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent. *Anatian v. Coutts Bank (Switz) Ltd.*, 193 F.3d 85, 88 (2d Cir. 1999). Allegations of fraud that do not meet this standard must be dismissed. *Id.* at 88-89.

## DISCUSSION

**I. PLAINTIFF'S CIVIL RICO CLAIMS MUST BE DISMISSED BECAUSE PLAINTIFF DID NOT SUFFER A DOMESTIC INJURY NEEDED TO ESTABLISH STANDING.**

Defendants' Motion to Dismiss advances five arguments in support of dismissing Plaintiff's RICO claims: (1) The claims are time-barred by a four-year statute of limitations; (2) Plaintiff lacks standing; (3) the fraud allegations are not plead with particularity; (4) Plaintiff does not plead RICO continuity; and (5) the RICO allegations do not state a claim under 18 U.S.C. 1962(a), (b), (c), or (d). (Defs.' Mem. in Supp. at 12-23). Magistrate Judge Reyes correctly states that the FAC fails to establish that Plaintiff suffered a domestic injury under RICO and he therefore lacks standing to bring a civil RICO claim against Defendants.

A plaintiff's standing to bring a civil RICO claim comes from 18 U.S.C. 1964(c), which provides a private right of action for damages to any person injured in his business because of a RICO violation. To show such an injury, the plaintiff must be able to show that the defendant's violations were a proximate cause of the plaintiff's injury. *DeFalco v. Bernas*, 244 F.3d 286, 329 (2d Cir. 2001). The plaintiff must possess a direct stake in the outcome of the case. *Hollingsworth v. Perry*, 570 U.S. 693 (2013). 18 U.S.C. 1964(c) further requires that a civil RICO plaintiff must prove a domestic injury to his business or property and does not provide relief for foreign injuries. *RJR Nabisco Inc. v. European Cmty.*, 136 S. Ct. 2090 (2016).

Plaintiff's Objections state that Magistrate Judge Reyes incorrectly applied the second circuit precedent to the facts set forth in the FAC. (Pl.'s Obj. at 12). Magistrate Judge Reyes's Report goes in depth into two cases listed as Buscunan I and II to provide some guidance to resolve the question as to whether a particular injury is domestic or foreign. *Buscunan v. Elsaca*, 874 F.3d. 806 (2d Cir. 2017) (hereinafter "Buscunan I"); *Buscunan v. Elsaca*, 927 F.3d 108 (2d Cir. 2019) (hereinafter "Buscunan II"). The guiding principles to help determine if an injury is domestic or foreign from these two cases as listed in the Report are as follows:

(1) whether an injury is foreign or domestic depends on the facts and specific type of injury alleged; Buscunan I, 874 F.3d at 817-18;

(2) when a plaintiff alleges multiple RICO claims, each claim must be examined separately to determine standing; *Id.* at 818;

(3) the location of the injury is not the location of the defendant's conduct, but the location of the property that was harmed; *Id.* at 820-21;

(4) a defendant's use of bank accounts located in the United States in reference to theft of property does not establish a domestic injury; *Id.* at 819; and

(5) where a RICO plaintiff fails to allege the location and ownership of the accounts where the property was harmed, the plaintiff has failed to allege any domestic injury,; Buscunan II, 927 F.3d at 120.

Plaintiff and Arihay allegedly had an understanding that Plaintiff would be a passive investor in the business with a right to receive future profits, if any. Once 911 Realty was created, Arihay and Plaintiff became "de facto" 50-50 owners and so, Plaintiff had no real ownership interest in 911 Realty. In his opposition to Defendants' Motion, Plaintiff attempted to establish he has standing by alleging his business or property suffered a domestic injury. He claims that: (1) Defendants misappropriated his investment funds after they were transferred to the United States; (2) Defendants misappropriated funds from the sale of investment properties located in the United States; and (3) 911 Realty, where Plaintiff holds no equitable interest, is a domestic corporation. (Pl.'s Mem. in Opp'n at 24). These allegations do not establish a domestic injury.

### A. Misappropriation of Plaintiff's Investment Funds

Plaintiff's Objections start off by quoting Buscunan I: "where the injury is to tangible property, the injury is domestic if the plaintiff's property was located in the United States when it was stolen or harmed, even if plaintiff himself resides abroad." (Pls. Obj. at 12). Therefore, the Defendants' conduct, even if occurred in the United States, is not enough to establish that Plaintiff suffered a domestic injury. Plaintiff attempts to use the two cases to try to explain that he suffered a domestic injury, but he himself admits in the FAC that he holds no ownership in 911 Realty, and he had no proprietary interest in the properties or the profits from the sale of such properties. Khanan is the President of 911 Realty and Plaintiff is neither a shareholder or an agent of the entity and so, he holds no ownership to any property located in the United States to allege a domestic injury to any such business or property. (Am. Compl. ¶ 54).

Further, Plaintiff fails to allege the location and ownership of the accounts where the property was harmed. His failure to do so is fatal to his claim that he suffered a domestic injury.

Plaintiff's Objections go into a lengthy explanation of what he believes was an adequate description of the location and ownership of the accounts. (Pl.'s Obj. at 14-15). He once again mentions 911 Realty, a corporation in which he holds no ownership or any interest thereof. (Pl.'s Obj. at 14). He also mentions a bank account for 911 realty, which he claims was used by Arihay to pay for expenses and renovations for various properties, but he fails to provide information as to who the owner of the account is. (Pl.'s Obj. at 14).

In addition, he speaks of a wire transfer made from Russia to Arihay's wife's U.S. bank account, which was allegedly intended to be invested in 911 Realty to cover expenses for ten investment properties. (Pl.'s Obj. at 14-15). Plaintiff alleges that the misappropriation of these funds occurred after transferring the funds from his account in Russia to Arihay's wife's account in the United States. (Pl.'s Obj. at 15). Under these circumstances, the RICO injury occurs once the plaintiff relinquishes control over the property. *Martin Hilti Family Tr. v. Knoedler Gallery*, LLC, 386 F. Supp. 3d 319, 347 (S.D.N.Y. 2019). In this case, the relinquishment occurred in Russia and not the United States. The FAC ultimately fails to identify the RICO injuries of which Plaintiff complains because he fails to allege any misappropriation of funds that were directly from his accounts in the United States. Thus, Plaintiff fails to establish that he suffered a domestic injury.

Ultimately, Plaintiff fails to identify any account in the United States where he had any form of custody or control in which his investment funds were misappropriated. Because of this, Plaintiff fails to establish standing based on the alleged misappropriation of his investment funds after they were transferred to the United States.

**B. Misappropriation of Profits**

Plaintiff's sole allegation in support of misappropriation of profits is that Arihay's use of the Chase business bank account for 911 Realty from December 2016 through 2018 to pay for renovation and other expenses related to the investment properties and later on selling these properties is a misappropriation of these funds, which caused damage to Plaintiff's alleged properties located in the United States. (Pl.'s Obj. at 18). As stated earlier, the domestic injury depends on the location of the plaintiff's property when it was harmed, not on the location where the defendant's misconduct took place. *Martin Hilti Farm Tr. v. Knoedler Gallery, LLC*, 386 F.Supp.3d 319, 347 (S.D.N.Y 2019) (citing Buscunan I, 874 F.3d at 819). Since Plaintiff does not have any proprietary interest in the investment properties or the profits derived therefrom, he has no tangible property in the United States over which he holds any custody or control.

It is clear from the alleged agreement between the parties that there was no expectation that Plaintiff would directly own the properties. (Am. Compl. ¶¶ 31-40). Plaintiff only expected to receive 50% of the profits from the sale of these properties. Even if Plaintiff was entitled to these profits, the injury occurred in Russia where he resided and expected would be paid. *Armada (Singapore) PTE Ltd. v. Amcol Int'l Corp.,* 885 F.3d 1090, 1094 (7th Cir. 2018). While the residence of the RICO plaintiff is not the only factor to determine whether a domestic injury has occurred, it is relevant in determining whether certain business or property injuries establish a domestic injury. *Buscunan I*, 874 F. 3d at 824. As stated throughout, since Plaintiff has no ownership interest in the properties or the profits derived therefrom, Plaintiff's residence in reference to his RICO claims is Russia and therefore, he lacks standing to bring a civil RICO claim because he has not suffered a direct injury to his business or property in the United States.

## II. PLAINTIFF'S COMPLAINT MUST BE DISMISSED BECAUSE THE ALLEGED CONTRACT IS IN VIOLATION OF THE STATUTE OF FRAUDS.

The alleged contract in dispute is an oral contract between Plaintiff and Arihay where Plaintiff would provide Arihay with investment funds to purchase, renovate, and sell real property and they would eventually split the profits of the sale of the properties. (Am. Compl. ¶¶ 29, 32, 38-40). As a threshold matter, under New York law, the Statute of Frauds applies to all transactions that deal with conveyances and contracts concerning real property. *Messner Vetere Berger McNamee Scmetterer EURO RSCG Inc. v. Aegis Grp. PLC*, 974 F. Supp. 270, 273 (S.D.N.Y. 1997). "An interest in real property cannot be created or transferred except by a writing expressing the consideration, signed by the party against whom enforcement is sought." *Id.* While the Plaintiff concedes that the parties operated on an oral agreement, he alleges that the Statute of Frauds does not apply because the agreement was to create a joint venture. (Pl.'s Mem. In Opp'n at 17-18). Although the Statute of Frauds does not apply to a joint venture, Plaintiff fails to establish that a joint venture existed.

Under New York law, five elements are required to establish a joint venture: "(1) two or more persons must enter into a specific agreement to carry on an enterprise for profit; (2) their agreement must evidence their intent to be joint venturers; (3) each must make a contribution of property, financing, skill, knowledge, or effort; (4) each must have some degree of control over the venture; and (5) there must be a provision for the sharing of both profits and losses." *Dinaco, Inc v. Time Warner, Inc.*, 346 F.3d 64, 67-68 (2d Cir. 2003). Plaintiff failed to prove all five elements because he did not have any degree of control over the alleged venture.

Arihay had full control of the business. Arihay was responsible for 50% of the monetary capital to the alleged "joint venture," was responsible for finding investment properties in

foreclosure for renovation, and was responsible for managing the venture." (Am. Compl. ¶ 39).

Plaintiff alleges that although he and Arihay agreed that Arihay would manage the business,

Plaintiff maintained some control because Arihay was to inform Plaintiff about the properties

being purchased, the details of renovation progress, and details regarding all expenditures of the

invested money. (Am. Compl. ¶¶ 31, 39). Plaintiff, however, concedes that one of the reasons

he was so drawn to Arihay's proposal was the opportunity to turn a profit without being too

involved in the management of the business. (Am. Compl. ¶¶ 36). Plaintiff was more of a

passive investor, responsible for only providing investment funds, while Arihay maintained

control of all other business affairs. (Am. Compl. ¶¶ 32, 40). In addition, Plaintiff admits that

the reason why his son, Khanan, was named the president of 911 Realty was because Plaintiff

lived in Moscow and would not be able to maintain the same degree of management over the

alleged "joint venture." (Am. Compl. ¶ 54; Pl.'s Obj. at 17).

Because Plaintiff fails to establish a joint venture existed, the Statute of Fraud applies to

the oral agreement, which deems the agreement null and void.

### III.   PLAINTIFF'S COMPLAINT MUST BE DISMISSED BECAUSE HE FAILS TO ESTABLISH HE IS ENTITLED TO A CONSTRUCTIVE TRUST.

Plaintiff seeks to impose "a constructive trust on all monies transferred to the

Defendants' account." (Am. Compl. ¶ 225). In order to establish a constructive trust, five

elements need to be met: (1) a fiduciary relationship; (2) a promise; (3) a transfer in reliance of

the promise; and (4) unjust enrichment. *Kaprov v. Stalinsky*, 145 A.D.3d 869, 871 (N.Y. App.

Div. 2016).

Plaintiff claims that a fiduciary duty exists between him and Arihay because of an alleged

joint venture between the two parties. (Pl.'s Mem. in Opp'n at 45). Plaintiff's sole argument

stems from the idea that a joint venture existed between the two parties and so, Arihay owes

Plaintiff a fiduciary duty. (Pl.'s Obj. at 22). As discussed earlier, Plaintiff failed to establish a joint venture existed because he exercised no control over the business. Since there is no existing joint venture between the parties, there is no fiduciary relationship that exists between the two parties. Courts have often found that the failure to allege a fiduciary relationship is fatal to a constructive trust claim. *Speedfit LLC v. Woodway USA, Inc.*, 432 F. Supp. 3d 183, 220–21 (E.D.N.Y. 2020). Since no fiduciary relationship exists, Plaintiff fails to state a cause of action for a constructive trust.

IV. **PLAINTIFF'S COMPLAINT MUST BE DISMISSED BECAUSE HE FAILS TO PLEAD HIS COMMON LAW FRAUD CLAIM WITH PARTICULARITY AS IS REQUIRED UNDER FRCP 9(b).**

The FAC contains a long list of alleged frauds against Defendants. (Am. Compl. ¶¶ 71-149). "On a motion to dismiss, a complaint pleading a claim of fraud must allege each of the elements of the claim as defined by state law and must also meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)." *Dessert Beauty, Inc. v. Platinum Funding Corp.*, No. 06 Civ. 2279 (SAS), 2006 WL 3780902, at *5 (S.D.N.Y. Dec. 26, 2006). To state a claim for common law fraud pursuant to New York law, the plaintiff must meet the following elements: "(1) a material misrepresentation or omission of fact, (2) made by defendant with knowledge of its falsity, (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." *Travelex Currency Servs., Inc. v. Puente Enters., Inc.*, 449 F. Supp. 3d 385, 395 (S.D.N.Y. 2020). In order to satisfy the particularity standard of FRCP 9(b), a complaint must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent. *Anatian,* 193 F.3d at 88.

### A.  Initial Investment in December 2012

Plaintiff starts off by stating that Arihay made false representations to Plaintiff in December 2012 to get Plaintiff to invest in the alleged "joint venture" by telling Plaintiff that he and Arihay would be equal partners and be equally responsible for all capital obligations and equally share all profits from the sale of the renovated properties.  (Am. Compl. ¶¶ 28-32).  Plaintiff fails to identify which of these statements were false, which fails to meet the first element needed to establish fraud.  Plaintiff then states that Arihay did not want to give Plaintiff a loan to avoid getting anything in writing, but fails to establish how this constitutes fraud in any way, shape or form.  (Am. Compl. ¶ 42).

Plaintiff alleges that Arihay never intended to return any money to Plaintiff.  (Am. Compl. ¶ 42).  This claim fails because "false statements indicating an intent to perform under a contract are insufficient to support a claim of fraud."  *PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 491 (S.D.N.Y. 2017) (citing *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19–20 (2d Cir. 1996)).  Plaintiffs are not permitted to avoid the statute of frauds by calling a breach of contract claim a fraud claim.  *Massey v. Byrne*, 977 N.Y.S.2d 242, 243 (N.Y. Sup. Ct. 2013).  In the rare case that a breach of a promise is a fraud, the party alleging fraud must plead specific facts indicating a preconceived notion not to honor the promise.  *Beter v. Murdoch*, No. 17 Civ. 10247 (GBD), 2018 WL 3323162, at *8 (S.D.N.Y. June 22, 2018).  Here, Plaintiff fails to allege any preconceived notion that Arihay intended not to provide Plaintiff any profits.  In addition, the FAC does not make clear whether Arihay failed to distribute any profits and so, Plaintiff fails to plead his fraud claim with particularity.

### B.  October 2013 Investment

Further, Plaintiff argues that in October 2013, during his meeting with Arihay in Moscow, Arihay induced Plaintiff to invest an additional $200,000, with Arihay allegedly stating that the "joint venture" was a success. (Am. Compl. ¶ 46). Once again, Plaintiff fails to establish which of these statements were false. Even if Plaintiff plead this adequately, there are no facts that support Plaintiff's claim because the reliance would not have been reasonable. As discussed earlier, Plaintiff made several inquiries regarding which profits returned a profit on his investment and Arihay failed to provide any information. (Am. Compl. ¶ 45). Despite this, Plaintiff still gave Arihay the $200,000 investment. (Am. Compl. ¶ 47). It is clear from the FAC that Plaintiff was skeptical about continuing business with Arihay and yet, he still invested further in the "joint venture." This establishes that there was no justifiable reliance to establish a claim for fraud.

### C. April 2014 Promise

In April 2014, Plaintiff argues that Arihay falsely promised Plaintiff that he would transfer titles and deeds of the investment properties to 911 Realty. (Am. Compl. ¶¶ 52-53). In reliance on these promises, Plaintiff invested another $100,000 over a year later in May 2015. (Am. Compl. ¶¶ 51, 56). Plaintiff then alleges that he eventually found out that the titles and/or deeds for the properties were under the control and management of Arihay. (Am. Compl. ¶¶ 58, 71-143). Here, Plaintiff once again attempts to disguise a breach of contract claim as a claim for fraud. Plaintiff fails to allege that Arihay had any intention not to honor his promise. In addition, Plaintiff states that his investment was in justifiable reliance on Arihay's promises, but he did not make this additional investment until a year later. (Am. Compl. ¶ 56). In the months leading up to April 2014, Plaintiff once again made inquiries regarding the identity of the investment properties and he once again received no information. (Am. Compl. ¶¶ 49, 50).

Plaintiff admits that in April 2014, he no longer felt comfortable continuing with the "joint venture" on an oral agreement and requested that a formal relationship be made. (Am. Compl. ¶ 51). Despite receiving no information, Plaintiff still made the additional investment and so, there was no justifiable reliance to establish a claim for fraud.

### D. November 2016 Promise

In November 2016, Plaintiff argues that Defendant Arihay told Plaintiff that he would transfer titles to ten investment properties to 911 Realty, which allegedly induced Plaintiff to invest an additional $500,000. (Pl.'s Memo. in Opp'n at 41). As discussed earlier, this is a breach of a promise and a breach of a promise does not constitute fraud. In the rare case that it does, Plaintiff would have to plead specific facts indicating an intent not to honor the promise. Plaintiff fails to allege that Arihay held a present intent not to perform. In addition, between the years of 2014 and 2016, the FAC makes clear that Plaintiff did not fully trust Arihay, which is why he asked a formal relationship be made and asked for additional information regarding the investment properties. Nevertheless, Plaintiff still provided Arihay with an additional $500,000 investment. This shows that any reliance, even if found, was not reasonable under the circumstances to sustain a claim for fraud.

### E. Miscellaneous Frauds

Finally, Plaintiff alleges various other fraud claims throughout the FAC that do not rise to the level of fraud. For example, Plaintiff claims that Arihay used his own contractors for renovations and inflated the costs to induce Plaintiff to provide additional funds that Arihay would then convert for his own profit. (Am. Compl. ¶¶ 77, 88, 119, 122). Here, Plaintiff fails to meet any of the FRCP 9(b) requirements because he does not describe any specific statements made, who Arihay gave this information to, or where and when he provided the information.

Based on the foregoing, Plaintiff fails to adequately plead any fraud allegations and so, Plaintiff's fraud claims must be dismissed.

## V. PLAINTIFF'S COMPLAINT MUST BE DISMISSED BECAUSE HE FAILS TO STATE A CAUSE OF ACTION FOR CONVERSION.

Plaintiff argues that Defendants converted his investments, the investment properties, and the profits he is allegedly entitled to from the sale of these investment properties. (Pl.'s Mem. in Opp'n at 43-44; Am. Compl. ¶¶ 204-07). Plaintiff fails to plead a cause of action for conversion because he is not entitled to any of these investment properties or the profits derived therefrom. Plaintiff is attempting to sustain an action for conversion based on the nonperformance of an alleged contract, which has already been established to be void. Further, Plaintiff fails to establish both elements needed to sustain a cause of action for conversion.

To plead a claim for conversion pursuant to New York law, the following elements needs to be met: "(1) legal ownership or immediate superior right of possession to a specific identifiable thing and (2) that the defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." *Wells Fargo Bank, N.A. v. Nat'l Gasoline, Inc.*, No. 10-CV-1762 (RER), 2013 WL 696651, at *5 (E.D.N.Y. Feb. 26, 2013).

### A. Conversion of Investments

Plaintiff fails to plead that the investment funds he provided to Defendants were specifically identifiable and therefore, fails to establish the first element for conversion. If money is said to be converted, "that money must be specifically identifiable and be subject to an obligation to be returned or to be otherwise treated in a particular manner." *James v. Arango*, No. 05-CV-2593 (TCP) (AKT), 2011 WL 1594832, at *6 (E.D.N.Y. Mar. 28, 2011). The

investment funds here are not specifically identifiable because although Plaintiff does describe specific investment funds made to Arihay, he does not state where the money went. Plaintiff also fails to allege whether the money was given to Arihay by way of cash, check, wire, etc., with the exception of the funds sent to Arihay's wife's bank account through a wire transfer. (Am. Compl. ¶¶ 38, 47, 56, 68). Plaintiff also fails to allege that he expected that the funds be returned to him.

Further, even if Plaintiff had sufficiently plead that the funds were specifically identifiable, he fails to allege that the funds were used in a way different than agreed upon. "Conversion occurs when funds designated for a particular purpose are used for an unauthorized purpose." *East Schodack Fire Co., Inc. v. Milkewicz*, 140 A.D.3d 1255, 1256 (N.Y. App. Div. 2016). Here, Plaintiff provided investment funds to Arihay for the purpose of renovating certain investment properties that were later to be sold to make a profit. The FAC alleges that the money Plaintiff invested was used for this exact purpose. (Am. Compl. ¶¶ 59-62, 74, 87, 97, 107, 119-120). Therefore, Plaintiff failed to establish that there was an unauthorized use of these funds by Arihay.

### B. Conversion of the Investment Properties and Resulting Profits

Plaintiff alleges that Defendants converted real property and his share of the profits that he feels he is entitled to. Here, Plaintiff fails to state a cause of action because "conversion does not apply to real property." *James*, 2011 WL 1594832, at *6. In the alternative, even if it did, Plaintiff does not have any sort of interest in the investment properties or any profits from the sale of the properties because the oral agreement is subject to the Statute of Frauds and so, he fails to establish the first element of conversion. In addition, Plaintiff disguises a breach of contract claim as a conversion claim, similar to how he plead his claims of fraud. "An action for

conversion cannot lie where damages are merely sought for breach of contract. *Melwani v. Lipton*, No. 17 Civ. 8308 (PGG), 2019 WL 4572789, at *6 (S.D.N.Y. Sept. 20, 2019).

Plaintiff fails to plead a cause of action for conversion because the funds are not specifically identifiable, and the funds were not used in an unauthorized way. Further, Plaintiff fails to plead a cause of action for conversion because he has no right to the investment properties or profits because the oral agreement is subject to the Statute of Frauds.

VI.     **PLAINTIFF'S COMPLAINT MUST BE DISMISSED BECAUSE HE FAILS TO STATE A CAUSE OF ACTION FOR REVERSE PIERCING THE CORPORATE VEIL.**

Plaintiff seeks to hold Defendants liable for Arihay's individual actions through reverse piercing the corporate veil. (Am. Compl. ¶¶ 209-12). To establish a claim for reverse piercing the corporate veil, Plaintiff must allege the following: (1) the owner exercised complete domination over the corporation with respect to the transaction at issue and (2) the domination was used to a commit a fraud or wrong that injured the party seeking to pierce the veil. *MAG Portfolio Consultant, GMBH v. Merlin Biomed Group LLC*, 268 F.3d 58, 63 (2d Cir. 2001). Plaintiff fails to allege any factual basis to establish the first element that Arihay exercised complete control over the Defendants. The only allegations in the FAC are generic allegations against Defendants, but none referencing each Defendant by name. (Am. Compl. ¶¶ 23, 58, 209–12).

Because Plaintiff fails to establish the first element of reverse piercing the corporate veil, he fails to state a cause of action for this claim.

## CONCLUSION

For the reasons set forth above, I respectfully request that Plaintiff's Complaint in

reference to his Civil RICO claims, constructive trust claim, common law fraud claim, conversion claim, and reverse piercing the corporate veil claim be dismissed.

/s/ Kadochnikov
_____
Alexander Kadochnikov